UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

LINDSAY LOHAN,

Plaintiff,

—against—

ARMANDO CHRISTIAN PEREZ *a/k/a* PITBULL,
SHAFFER CHIMERE SMITH, JR., *a/k/a* NE-YO,
NICK VAN DE WALL *a/k/a* AFROJACK,
J RECORDS, SONY MUSIC ENTERTAINMENT,
SONY MUSIC HOLDINGS INC., RCA MUSIC
GROUP,  POLO GROUNDS MUSIC, POLO
GROUNDS MUSIC PUBLISHING, INC., POLO
GROUNDS MUSIC, INC., MR. 305, INC.,
MR. 305 ENTERPRISE, INC., and JOE JOHN AND
JANE JOHN, 1 THROUGH X,

Defendants.
------------------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ NOV 04 2011 ★
BROOKLYN OFFICE

**CV11-5413**

NOTICE OF REMOVAL

HURLEY J

LINDSAY, M.J.

Defendants, Armando Christian Perez *p/k/a* Pitbull, Shaffer Chimere Smith, Jr. *p/k/a* Ne-

Yo, Nick Van De Wall *p/k/a* Afrojack, J Records, Sony Music Entertainment, Sony Music

Holdings Inc., RCA Music Group, Polo Grounds Music, Polo Grounds Music Publishing, Inc.

and Polo Grounds Music, Inc., (collectively, "Defendants"),[1] pursuant to 28 U.S.C. §§ 1332,

1441 and 1446, hereby remove this action (the "Action") from the Supreme Court of the State of

New York, County of Nassau  (the "Nassau County Court"), where it is currently pending, to the

United States District Court for the Eastern District of New York (the "District Court").

Defendants' appearance is expressly limited for the sole purpose of removal, and they reserve all

defenses and rights available to them.

---

[1] At present, defendants Mr. 305, Inc. and Mr. 305 Enterprises, Inc. have not been served; thus, their consent to removal is not required. *See Carnes v. Cathers & Dembrosky*, 2003 U.S. Dist. LEXIS 22223, at *2 (S.D.N.Y. Dec. 10, 2003) ("it is well-settled that a defendant who has not yet been served is not required to join in the notice of removal.").

Pursuant to 28 U.S.C. § 1446(a), true and complete copies of the record in the Action, the Summons and Verified Complaint and Defendants' Stipulation of Service of Process, together with exhibits, are respectively attached hereto as **Exhibits 1 and 2**. No other pleadings have been filed in the action. The removal of this action is predicated upon the following:

## INTRODUCTION

This Court has diversity jurisdiction based on Plaintiff Lindsay Lohan's California citizenship. Defendants are citizens of Florida, Georgia, New York, and the Netherlands for diversity purposes.

Plaintiff Lohan has falsely attested in the Verified Complaint that she is a "resident" of Nassau County, New York. Ms. Lohan's claim of New York residence flies in the face of objective indicia establishing that she: (a) is a citizen of California where she has been domiciled since at least 2004;[2] and (b) owes continuing legal obligations to the state of California, [3] which will keep Ms. Lohan in California for the foreseeable future. Further, Ms. Lohan's assertion that she resides in Nassau County contradicts her own assertions in a federal case in Florida and was rejected by the New York court (Nassau County) in yet another recent matter.

The totality of the evidence makes clear that, her sworn declaration to the contrary notwithstanding, Ms. Lohan is a citizen of California and, that consequently, complete diversity of citizenship exists in this case. Additionally, the Verified Complaint, together with indisputable success of the song at issue, *Give Me Everything*, establishes that the amount in controversy requirement is met. Therefore, this action is removable and properly before this Court.

---

[2] *See* http://www.notablebiographies.com/newsmakers2/2005-La-Pr/Lohan-Lindsay.html. The Declaration of Courtney Caprio attaching the various websites cited herein is attached hereto as **Exhibit 3**.

[3] Ms. Lohan was recently escorted out of a Los Angeles courtroom, in handcuffs, after the Honorable Stephanie Sautner revoked her probation stemming from a 2007 drunk driving incident and a 2011 theft charge.

## FACTUAL BACKGROUND

1.      On or about August 19, 2011, Ms. Lohan filed the Verified Complaint in Nassau County, New York, against Defendants, Mr. 305, Inc. and Mr. 305 Enterprises, Inc. *Lohan v. Perez, et al.*, Index No: 12185/11. The Verified Complaint is based on one line of the song *Give Me Everything* and asserts four (4) claims:  (a) injunctive relief under Section 51 of the New York Civil Rights Law, (b) monetary damages under Section 51, (c) injunctive relief for alleged violation of Ms. Lohan's "common law rights," and (d) monetary damages for alleged intentional infliction of emotional distress.

2.      On or around October 13, 2011, service was effectuated on Defendants when counsel for Defendants and Ms. Lohan executed a Stipulation of Service of Process for the Verified Complaint.  Thus, in accordance with the requirements of 28 U.S.C. § 1446(b), this Notice of Removal is filed within thirty days after service of the Verified Complaint on the Defendants.

3.      Ms. Lohan is not a "resident" of Nassau County, New York.  Ms. Lohan is a citizen of the State of California.  (*See* Ex. 1 at ¶ 1).

4.      Defendant, Armando Christian Perez *p/k/a* Pitbull ("Pitbull"), is a citizen of Florida.

5.      Defendant, Shaffer Chimere Smith, Jr. *p/k/a* Ne-Yo ("Ne-Yo"), is a citizen of Georgia.  (*See* Ex. 1 at p. 2).

6.      Defendant, Nick Van de Wall *p/k/a* Afrojack ("Afrojack"), is a citizen of the Netherlands, as evidenced by the declaration attached hereto as **Exhibit 4**.

7.      Defendant, Sony Music Holdings Inc. ("Sony Music Holdings"), is a New York corporation with a principal place of business at 550 Madison Avenue, New York, New York

10022.

8.      Defendant, Sony Music Entertainment is registered under defendant Sony Music Holdings as a New York corporation and has a principal place of business at 550 Madison Avenue, New York, New York 10022.

9.      Defendants, J Records and RCA Music Group, are owned and operated by defendant Sony Music Entertainment under Sony Music Holdings (collectively, the "Sony Defendants"), and have their principal place of business at 550 Madison Avenue, New York, New York 10022.

10.     Defendant, Polo Grounds Music, Inc., is a New York corporation with a principal place of business at 62 Pyngym Road, Stony Point, New York.

11.     Defendant, Polo Grounds Music Publishing, Inc., is a New York corporation with a principal place of business at 62 Pyngym Road, Stony Point, New York 10980.

12.     Defendant, Polo Grounds Music, is owned and operated by Polo Grounds Music Publishing, Inc. and Polo Grounds Music, Inc. (collectively, the "Polo Grounds Defendants") and has its principal place of business at 62 Pyngym Road, Stony Point, New York 10980.

13.     Defendant, Mr. 305 Enterprises, Inc., is a New York corporation with a principal place of business located at 331 West 57th Street, Suite 358, New York, New York 10019.

14.     Defendant, Mr. 305, is registered under Mr. 305 Enterprises, Inc. (collectively, the "Mr. 305 Defendants") with a principal place of business at 331 West 57th Street, Suite 538, New York, New York 10019.

15.     Defendants have filed herewith the Civil Cover Sheet and paid the required filing fee. No previous application for the relief sought through this Notice has been made to this or any other court.

16.     Upon the filing of this Notice of Removal, written notice of the filing will be given to Ms. Lohan's attorneys, as provided by law, and copies of this Notice will be filed with the Clerk of the Nassau County Court pursuant to 28 U.S.C. § 1446(d).

17.     Venue for removal purposes is proper in this District under 28 U.S.C. § 1441(a) because this District encompasses the Nassau County Court.

### JURISDICTIONAL BASIS

A state court action may be removed if "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a).  This Court has original jurisdiction based on diversity of the parties pursuant to 28 U.S.C. § 1332.  Pursuant to 28 U.S.C. § 1332(a), the federal district courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds $75,000.00.  *See* 28 U.S.C. § 1332(a).  In the instant case, both the complete diversity and amount in controversy requirements for diversity jurisdiction are satisfied.

**A.      The Complete Diversity Requirement is Satisfied**.

Complete diversity exists in this case as Ms. Lohan's citizenship differs from that of each defendant.  *See* 28 U.S.C. § 1332(a)(2)-(3) (diversity jurisdiction present when action is between "citizens of different States in which citizens or subjects of a foreign state are additional parties"); *Owen Equip. & Erection Co. v.* Kroger 437 U.S. 365, 373-374 (1978); *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 580-81 (2d Cir. 2002) (same).  For purposes of diversity jurisdiction, the citizenship of an individual is equivalent to her domicile.  *See Palazzo v. Corio,* 232 F.3d 38, 42 (2d Cir. 2000).  Domicile is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning."  *Id.*  A person has but one domicile at any give time.  *See id.*  A

corporation has two citizenships: its principal place of business and state of incorporation. *See, e.g., Linardos v. Fortuna*, 157 F. 3d 945, 948 (2d Cir. 1998); 28 U.S.C. § 1332(c)(1).

It is undisputed that none of the Defendants are citizens of California – the state in which, as demonstrated below, Ms. Lohan is domiciled. Pitbull is a citizen of Florida. Ne-Yo is a citizen of Georgia. The Sony, Polo Grounds and Mr. 305 Defendants are all citizens of New York. (*See* Ex. 3). Afrojack is a citizen of the Netherlands.[4] Further, the citizenship of the fictitious defendants, Joe John and Jane John I through X, in inconsequential and is properly excluded from a diversity jurisdiction analysis. *See* 28 U.S.C. § 1441; *see, e.g., Lederman v. Marriott Corp.*, 834 F. Supp. 112, 113 (S.D.N.Y.) (Broderick, J.) ("So-called 'Doe' defendants are disregarded for purposes of determining diversity of citizenship jurisdiction under 28 U.S.C. § 1332 in cases removed to United States district courts pursuant to 28 U.S.C. §1441.").

When, as is the case here, the domicile of one of the parties lies in dispute, "the district court may gather the evidence necessary to make a determination either by live testimony or by deposition and affidavit[.]" *Nat'l Artists Mgmt Co., Inc. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991) (Conboy, J.); *King's Gym Complex, Inc. v. Phila. Indemn. Ins. Co.*, 2008 WL 4222524, at * 1 (2d Cir. Sept. 15, 2008) (courts can consider evidence which includes "sworn affidavits from both parties, correspondence between the parties and other relevant documents."). *See also, APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (where jurisdictional facts lie in dispute "[a] district court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction.").

To determine a person's domicile, the court must examine two factors: first, the nature and extent of that person's physical presence in the state alleged to be her domicile; and second,

---

[4] The Complaint fails to make any allegations as to Afrojack's citizenship, but he is a citizen of the Netherlands. (*See* Ex. 4).

the individual's intent to remain in that state indefinitely." *Id.* at 1227 (citing *Miss. Band of Choctow Indians v. Holyfield*, 490 U.S. 30 (1989); *Texas v. Florida*, 306 U.S. 398, 424 (1939)). A party's domicile is judged at the time the action is brought. *See Universal Licensing Corp. v. Paola del Lungo, S.P.A.*, 293 F.3d 579, 581 (2d Cir. 2002). In examining these two factors, the court is to consider the totality of evidence regarding the individual's contacts with a state and her intent to remain there. *See District of Columbia v. Murphy*, 314 U.S. 441, 455 (1941); *see Weber v. Paduano*, 2003 WL 2280177, at *6-7 (S.D.N.Y. Nov. 25, 2003) (Lynch, J.) (citing *Miss. Band of Choctow Indians*, 490 U.S. at 48 and *Texas*, 306 U.S. at 424).[5]

Significantly, "courts in this District have repeatedly held that a general intention of moving back to a place of residence, or a self-serving statement of intent, is insufficient to establish domicile." *Herzberg v. Megaspirea Productions SAS*, 2009 WL 702234, at *8-9 (S.D.N.Y. Mar. 10, 2009) (collecting cases). *See Farrell v. Ashton*, 1991 WL 29261, at *1 (S.D.N.Y. Feb. 21, 1999) ("Although intent is crucial to domicile, mere subjective statements of affiliation with a particular state or of intent to make it one's home cannot suffice for a finding a state citizenship if such statements are belied by objective indicia of actual residence and intent."); *Willis v. Westin Hotel Co.*, 651 F. Supp. 598, 601 (S.D.N.Y. 1986) (same). Consequently, a party's statements concerning her intent are "relevant, but they are of ***slight weight*** when they come into conflict with other facts that tend to disclose a contrary intent." *Id.* (quoting *Bevilacqua v. Bernstein*, 642 F. Supp. 1072, 1074 (S.D.N.Y. 1986)) (emphasis added).

---

[5] Factors indicative of physical presence and the intent to remain in a state indefinitely include: the individual's current residence; the location of her personal and real property; where the individual keeps her personal belongings; the location of brokerage and bank accounts; memberships in unions and other associations; place of employment or business; the state in which the individual holds a driver's license and registers her automobile; the state where she pays taxes, her tax return address; and where she employs physicians, attorneys, and accountants. *See, e.g., Weber*, 2003 WL 22801777, at *6; *Nat'l Artists*, 769 F. Supp. at 1228. These factors are non-exhaustive, and courts are to balance and comprehensively examine all relevant considerations, as the ultimate determination rests on the "totality of the evidence." *See Weber*, 2003 WL 22801777, at *6; *Aldinger v. Segler*, 2005 WL 2591958, at *3 (S.D.N.Y. Oct. 13, 2005).

The objective indicia demonstrate that Ms. Lohan is domiciled in California.[6]   She possesses a California driver's license;[7] currently leases a home in Venice Beach, California; was incarcerated in a California prison prior to being placed under house arrest from May to June of 2011;[8] spends the majority of her time in California, and generally employs California professionals to attend to her legal and professional affairs.[9]  By itself, this evidence is sufficient to establish Ms. Lohan's California domicile. *See, e.g., Weber*, 2003 WL 22801777, at *21 (holding that plaintiff who had two residences in New York was nonetheless domiciled in Florida because she voted in Florida, maintained and operated her business there, possessed other residences as well as a farm in Florida; spent four (4) months of the year in Florida, registered her car in Florida, and paid taxes in that state).[10]

In fact, given her frequent legal troubles, Ms. Lohan possesses irrevocable ties to California that are likely to keep her there for the foreseeable future.  Since 2007, Ms. Lohan has twice been charged with driving under the influence, as well as with felony possession of cocaine.[11]  These offenses, combined with her subsequent parole violations, have resulted in Ms. Lohan being incarcerated in California jails at least three (3) times over the past four (4) years.[12] More recently, on May 11, 2011, Ms. Lohan pled no contest to charges of misdemeanor theft for stealing a necklace worth approximately $2,500.00 from a store near her home in Venice Beach,

---

[6]  *See* http://www.notablebiographies.com/newsmakers2/2005-La-Pr/Lohan-Lindsay.html.

[7]  *See* http://www.tmz.com/2010/11/22/lindsay-lohan-drivers-license-car-betty-ford-probation/.

[8]  *See* http://www.dailymail.co.uk/tvshowbiz/article-1391202/Lindsay-Lohan-house-arrest-begins-necklace-theft.html.

[9]  *See, e.g.;* http://articles.cnn.com/2011-07-21/entertainment/lindsay.lohan.hearing_1_court-judge-stephanie-sautner-shawn-holley-probation?_s=PM:SHOWBIZ; http://www.kwikalaw.com/sholley..

[10]  It is believed that Ms. Lohan pays income and property taxes to the State of California, and that she employs other professionals, such as an agent, physicians and accountants in California.

[11]  *See* http://en.wikipedia.org/wiki/Lindsay_Lohan.

[12]  *See* http://abcnews.go.com/Entertainment/lindsay-lohan-arrives-court-felony-grand-theft-hearing/story?id=12874980.

California. This incident resulted in a 120-day incarceration and 480 community service hours sentence.[13] Due to prison overcrowding in Los Angeles County, California, Ms. Lohan completed her jail sentence by serving a thirty-five (35) day house arrest in her Venice Beach, California apartment.[14] Ms. Lohan's house arrest ended on June 29, 2011.[15]

Ms. Lohan, however, failed to comply with her community service obligations,[16] resulting in the California Superior Court's revocation of her parole on October 19, 2011.[17] On November 2, 2011, the California Superior Court sentenced Ms. Lohan to 30 days in jail, commencing November 7, 2011,[18] due to her failure to make meaningful progress toward completing her 360 hours of community service at the Los Angeles Downtown Women's Center and 120 hours at the Los Angeles County Morgue, which were supposed to be completed in California by approximately June 2012.[19] Ms. Lohan can avoid serving an additional 270 days in jail if she completes additional community service hours.[20] Thus, in light of Ms. Lohan's continuing obligations to the State of California, as well as the foregoing facts, Ms. Lohan is a citizen of California, not New York.

Even before Ms. Lohan's most recent run-in with California authorities, her house arrest in California and her upcoming jail sentence, the Honorable James A. Yates recently ruled in another New York action that Ms. Lohan was incapable of establishing residency in Nassau

---

[13] *See* http://articles.nydailynews.com/2011-05-11/gossip/29550190_1_necklace-theft-kamofie-substance-abuse.

[14] *See* http://www.dailymail.co.uk/tvshowbiz/article-1391202/Lindsay-Lohan-house-arrest-begins-necklace-theft.html.

[15] *See* http://www.cbsnews.com/8301-31749_162-20075475-10391698.html.

[16] In connection with failing to comply with her community service obligations, Lohan tweeted on October 14, 2011: "If I travel, its [sic] for work and its [sic] been approved. As is anything I do when I leave the state [of California]." *See* http://www.hollywoodlife.com/2011/10/17/lindsay-lohan-jail-time-rumors-twitter/.

[17] *See* http://www.tmz.com/2011/10/19/lindsay-lohan-livestream-showdown-in-court-probation-violation/.

[18] *See* http://www.huffingtonpost.com/2011/11/02/lindsay-lohan-court-jail_n_1071804.html.

[19] *See* http://www.huffingtonpost.com/2011/09/06/lindsay-lohan-taking-shoplifting-classes_n_950393.html.

[20] *See* http://www.huffingtonpost.com/2011/11/02/lindsay-lohan-court-jail_n_1071804.html.

County, resulting in a change in venue from Nassau to New York County.  On June 30, 2010, Justice Yates concluded:

> ***[Lohan] has not proven actual residence in Nassau County.*** In fact, the home located in Nassau County is actually owned by plaintiff's mother, Dina Lohan. [Lohan] has solely relied on the fact that the home in Nassau County belongs to her mother, and has not submitted any additional proofs that although she does not own the home, that she has stayed there for any length of time.

(*See* Decision and Order, Index No. 601016-2010, attached hereto as **Exhibit 5**) (emphasis added).  As a result of Ms. Lohan's subsequent California 2011 jail sentence and revocation of parole, her ties to California have only increased since Justice Yates' ruling.

Furthermore, Ms. Lohan has recently sworn that she is a citizen of California for diversity jurisdiction purposes.  Approximately one (1) year ago, Ms. Lohan provided a sworn affidavit attesting to her California residency in *White Wave International Labs, Inc. v. Lohan*, 2010 WL 3835873 (M.D. Fla. July 7, 2011), pending in the United States District Court for the Middle District of Florida.

There, White Wave International Labs, Inc. alleged that Ms. Lohan was a "citizen" of California in an attempt to establish diversity jurisdiction.  (*See* Complaint, attached hereto as **Exhibit 6**).  Ms. Lohan did not contest this allegation.  To the contrary, she confirmed its accuracy in a declaration executed in Los Angeles, California on September 25, 2010.  (*See* Lohan Declaration, attached hereto as **Exhibit 7**).  In reliance on Ms. Lohan's sworn verification that she was a citizen of California, the Middle District of Florida retained subject matter jurisdiction and granted Ms. Lohan's motion to dismiss for lack of personal jurisdiction on July 7, 2011. *See White Wave International Labs, Inc.*, 2010 WL 3835873, at *3-4.  At no point in time between September 25, 2010 (the date of her affidavit) and July 7, 2011 (the date of the Court's order of dismissal) did Ms. Lohan apprise the Middle District of Florida of any domicile

change.

Given her residency in and ongoing obligations to the State of California, Ms. Lohan was not domiciled in New York at the time she commenced this action. *See Katz v. Goodyear Tire and Rubber Co.*, 737 F.2d 238, 243 (2d Cir. 1984) (under New York law, a party asserting a change in domicile has the burden of proving such a change by clear and convincing evidence). The totality of the evidence demonstrates that Ms. Lohan did not reside in Nassau County, New York and did not possess the requisite intent to remain in New York indefinitely at the commencement of this action. Ms. Lohan was a citizen of California at that time.[21] Complete diversity therefore exists because no Defendant is a citizen of California.

## 2. The Amount in Controversy Exceeds the Minimum Requirement for Federal Jurisdiction.

The amount in controversy in this case exceeds $75,000.00, despite the Verified Complaint's failure to explicitly specify such amount. The Second Circuit has explained the approach a district court should adopt in evaluating the amount in controversy in a case that has been removed from state court. "In determining whether the amount in controversy requirement is satisfied, courts "look first to the [plaintiff's] complaint and then to the [defendants'] petition for removal." *Mehlenbacher v. Azko Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000). Where the pleadings are inconclusive as to the amount in controversy "federal courts may look outside those pleadings to other evidence in the record." *United Food & Commercial Workers Union, Local 919, AFL-CIO v. Centermark Properties Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994). Accordingly, if damages are uncertain because the plaintiff fails to plead the amount in controversy, the removing defendant "has the burden of proving to a reasonable probability that

---

[21] To the extent that the Court requires additional evidence as to Lohan's true domicile, an evidentiary hearing would be appropriate to resolve the issue. *See, e.g., United Food*, 30 F.3d at 302 (remanding for to allow parties to supplement record on diversity of citizenship); *Linardos*, 157 F.3d at 948 (remanding for evidentiary hearing on issue of citizenship); *see also Weber*, 2003 WL 22801777, at *21.

the claim is in excess of the statutory jurisdictional amount." *Id.* (quotations omitted). *See also,* *Nickel v. Nike, Inc.,* 2011 WL 434852, (S.D.N.Y. Aug. 18, 2011) (Castel, J.) (noting the "reasonable probability" standard).

Here, the Verified Complaint merely provides that "the amount of damages sought in this action exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction."[22] (*See* Ex. 1 at ¶¶ 32, 44). Yet, the face of the Verified Complaint, together with the irrefutable success of the song at issue, "Give Me Everything" (the "Song"), establish that there is a "reasonable probability" that over $75,000.00 is at stake in this Action. According to the Verified Complaint, Ms. Lohan seeks a "substantial sum of money" in compensatory damages for the Defendants' alleged "unwarranted, unauthorized, and unfavorable mention of plaintiff's name and personality, and allusions to plaintiff's physical and mental character." (*See* Ex. 1, ¶¶ 18, 31, 40, 43). According to the Verified Complaint, the Song "greatly injured the plaintiff in her profession as an entertainer,[23] and caused her great mental anguish and pain." (*Id.* at ¶ 41).

Ms. Lohan further alleges that the song at issue "was and is a popular song of an international reputation and exerts a great influence throughout the United States, and other countries, in the television, entertainment business and filed of communication as well." (*Id.* at ¶ 16). *See generally, Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Electronics, Inc.,* 120 F.3d 216, 220 (11th Cir. 1997) ("The amount in controversy is measured by determining the value of the litigation from the plaintiff's perspective."). The Song has indeed been very successful: hitting number one on the Billboard Hot 100; spending over 28

---

[22] The Nassau County Court has jurisdiction over civil disputes where the amount in controversy is greater than $25,000.00.

[23] In 2005, Ms. Lohan's annual earnings were approximately £11,000,000.00, or approximately $13,750,000.00. *See http://www.thisismoney.co.uk/money/article-1699560/Lindsay-Lohan-Rise-fall-of-a-top-earner.html.*

weeks on the Billboard Hot 100;[24] and selling over 3,000,000 digital downloads in the United States alone as of August 2011.[25] Thus – and irrespective of the actual merits of her claim – from Ms. Lohan's vantage and by virtue of the Song's indisputable popularity, the claimed damages exceed $75,000.00 and satisfy the jurisdictional requirement diversity jurisdiction.

**WHEREFORE**, for the foregoing reasons, the Defendants respectfully request that this Action proceed in its entirety in this Court as an action properly removed thereto.

Dated:  November 4, 2011
New York, New York

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

By: _____
Marcos Daniel Jiménez, Esq.[26]
(*pro hac vice* admission pending)
James G. Sammataro, Esq.
Courtney Caprio, Esq.
(*pro hac vice* admission pending)
1441 Brickell Avenue, Suite 1420
Miami, Florida 33131
(305) 377-1666

Sarah Gibbs Leivick, Esq.
1633 Broadway
New York, New York 10019
(212) 506-1700
*Attorneys for Defendants*

To:
Ovadia Law Firm, P.A.
Stephanie G. Ovadia, Esq.
Anand Ahuja, Esq.
2160 Hempstead Turnpike
East Meadow, New York 11554

---

[24]  *See* http://www.billboard.com/charts/hot-100#/song/pitbull-featuring-ne-yo-afrojack-nayer/give-me-everything/25385307.

[25]  *See* http://en.wikipedia.org/wiki/Give_Me_Everything_(Pitbull_song). Currently, a digital download of this song on Amazon.com costs $1.29. *See http://www.amazon.com/Give-Me-Everything/dp/B004TMH64S.*

[26]  Though Mr. Jiménez is admitted to the Bar of the State of New York, he is not presently admitted to practice in this Court and will file an application seeking *pro hac vice* admission.

Exhibit 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

————————————————————X

LINDSAY LOHAN,

Plaintiff(s),

-against-

ARMANDO CHRISTIAN PEREZ a/k/a PITBULL,
SHAFFER CHIMERE SMITH JR. a/k/a NE-YO,
NICK VAN DE WALL a/k/a AFROJACK,
J RECORDS,
SONY MUSIC ENTERTAINMENT,
SONY MUSIC HOLDINGS INC.,
RCA MUSIC GROUP,
POLO GROUNDS MUSIC,
POLO GROUNDS MUSIC PUBLISHING, INC.,
POLO GROUNDS MUSIC, INC.,
MR. 305 INC., MR. 305 ENTERPRISE, INC., and
JOE JOHN and JANE JOHN, 1 THROUGH X.

Defendant(s),

————————————————————X

Index No.: 012185/11
Date Purchased: 8/19/11

**SUMMONS**

Plaintiff designates Nassau
County as the place of trial

The basis of venue is:
NASSAU

Plaintiff resides at:
1749 Old Mill Road
Merrick, NY 11566
County of Nassau

# RECEIVED

AUG 1 9 2011

NASSAU COUNTY
COUNTY CLERK'S OFFICE

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiffs attorneys within twenty days after the service of this summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or, within 30 days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:     East Meadow, New York
           August 13, 2011

STEPHANIE G. OVADIA, ESQ.
*Attorney for Plaintiff*
2160 Hempstead Turnpike
East Meadow, NY 11554
(516)542-2133

1

_Anand Ahuja_

ANAND AHUJA, ESQ.
*Attorney for Plaintiff*
2160 Hempstead Turnpike
East Meadow, NY 11554
(516)542-2133


**DEFENDANT'S ADDRESSES:**

ARMANDO CHRISTIAN PEREZ
2100 Salzedo Street, Suite 202
Coral Gables, FL 33134-4319

SHAFFER CHIMERE SMITH JR.
3319 Regent Place SW
Atlanta, GA 30311-3093

WILLIAM MORRIS
c/o: NICK VAN DE WALL
1 William Morris Place
Beverly Hills, CA 90212

J RECORDS
550 Madison Avenue
New York, NY 10022

SONY MUSIC ENTERTAINMENT,
550 Madison Avenue
New York, NY 10022

SONY MUSIC HOLDINGS INC.
550 Madison Avenue
New York, NY 10022

RCA MUSIC GROUP
550 Madison Avenue
New York, NY 10022

POLO GROUNDS MUSIC
62 Pyngyp Road
Stony Point, NY 10980

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

-------------------------------------------------------------------X        Index No.:

LINDSAY LOHAN,                                                             **VERIFIED**
                                                                          **COMPLAINT**
                                    Plaintiff,

         -against-

ARMANDO CHRISTIAN PEREZ a/k/a PITBULL,
SHAFFER CHIMERE SMITH JR. a/k/a NE-YO,
NICK VAN DE WALL  a/k/a  AFROJACK,
J RECORDS,
SONY MUSIC ENTERTAINMENT,                                     **RECEIVED**
SONY MUSIC HOLDINGS INC.,
RCA MUSIC GROUP,                                                 AUG 1 9 2011
POLO GROUNDS MUSIC,
POLO GROUNDS MUSIC PUBLISHING, INC.,                     **NASSAU COUNTY**
POLO GROUNDS MUSIC, INC.,                               **COUNTY CLERK'S OFFICE**
MR. 305, Inc., MR. 305 ENTERPRISE, INC., and
JOE JOHN and JANE JOHN, 1 THROUGH X.

                                    Defendant(s),

-------------------------------------------------------------------X

         Plaintiff, LINDSAY LOHAN, by and through her attorneys, STEPHANIE G. OVADIA,

ESQ. and ANAND AHUJA, ESQ., hereby complaining of the defendants herein, respectfully

alleges, upon information and belief, as follows:

                           **AND AS FOR A FIRST CAUSE OF ACTION**

         1.      That plaintiff, LINDSAY LOHAN, is a resident of the State of New York, County

of Nassau, residing at 1749 Old Mill Road, Merrick, New York.

         2.      That at all the times mentioned herein, and for many years prior thereto the

plaintiff was and still is a professional actor of good repute and standing in the Screen Actors

Guild.

                                                    1

3. That at all the times mentioned herein defendant, ARMANDO CHRISTIAN PEREZ a/k/a PITBULL, is serving, or has served in the capacity of creator, writer, lyric writer, artist, and singer of the song "Give Me Everything" (hereinafter, "SONG").

4. That at all the times mentioned herein defendant, SHAFFER CHIMERE SMITH JR. a/k/a NE-YO, is serving, or has served in the capacity of creator, writer, lyric writer, artist, and singer of the song "Give Me Everything" (hereinafter, "SONG").

5. That at all the times mentioned herein defendant, NICK VAN DE WALL a/k/a AFROJACK is serving, or has served in the capacity of creator, writer, lyric writer, and producer of the song "Give Me Everything" (hereinafter, "SONG").

6. That at all the times mentioned herein the defendant, J RECORDS is an American record label owned and operated by SONY MUSIC ENTERTAINMENT under SONY MUSIC HOLDINGS, INC.

7. That at all the times mentioned herein the defendant, SONY MUSIC ENTERTAINMENT, was and is registered under SONY MUSIC HOLDINGS, INC., as a corporation under the laws of the State of New York, and maintains its office at 550 Madison Avenue, New York, NY 10022.

8. That at all the times mentioned herein the defendant, J RECORDS, SONY MUSIC ENTERTAINMENT, under SONY MUSIC HOLDINGS, INC., was and now is engaged, directly or indirectly, creation, publishing, management, marketing, and promotions of the "SONG" including but not limited to, writing, acting, producing, distributing, broadcasting, and assisting in any of the aforementioned or similar processes, for the named "SONG".

9. That at all the times mentioned herein the defendant, RCA MUSIC GROUP was

2

and is owned by SONY MUSIC ENTERTAINMENT, under SONY MUSIC HOLDINGS with an office within the State of New York.

10.     That at all the times mentioned herein the defendant, RCA MUSIC GROUP, through SONY MUSIC ENTERTAINMENT, under SONY MUSIC HOLDINGS was and now is engaged, directly or indirectly, in the creation, publishing, management, marketing, and promotions of the "SONG" including but not limited to, writing, acting, producing, distributing, broadcasting, and assisting in any of the aforementioned or similar processes, for the named "SONG".

11.     That at all the times mentioned herein defendant POLO GROUNDS MUSIC is a record label, a hip hop and full service entertainment company, owned and registered as a corporation under POLO GROUNDS MUSIC PUBLISHING, INC., and also under POLO GROUNDS MUSIC, INC., under the laws of the State of New York, and maintains office located at 243 west 30th Street, Suite #302 New York, NY10001 for POLO GROUNDS MUSIC PUBLISHING, INC., and  office located at 62 Pyngyp Road Stony Point, NY 10980 for POLO GROUNDS MUSIC, INC.

12.     That at all the times mentioned herein POLO GROUNDS MUSIC, POLO GROUNDS MUSIC PUBLISHING, INC. and POLO GROUNDS MUSIC, INC., is a full service entertainment company with a focus in the creation, publishing, management, marketing, and promotions of the "SONG" including but not limited to, writing, acting, producing, distributing, broadcasting, and assisting in any of the aforementioned or similar processes, for the named "SONG".

3

13.      That at all the times mentioned herein defendant MR. 305 is a record label registered under MR. 305 ENTERPRISES , INC., a New York State incorporated entity with office located at 331 West 57th Street, Suite 358, New York, NY 10019.

14.      MR. 305 is a record label registered under MR. 305 ENTERPRISES , INC., is a full service entertainment company with a focus in the creation, publishing, management, marketing, and promotions of the "SONG" including but not limited to, writing, acting, producing, distributing, broadcasting, and assisting in any of the aforementioned or similar processes, for the named "SONG".

15.      That defendants, JOE JOHN and JANE JOHN, 1 THROUGH X are individuals, partnerships or corporations, whose existence plaintiff asserts on information and belief but whose exact identity she has been unable to discover.  JOE JOHN and JANE JOHN 1 through X have themselves and/or through their agents, or others, in their individual capacities or collectively, engaged directly or indirectly, in any and/or all aspects of the processes leading to the creation, publishing, management, marketing, and promotions of the "SONG" including but not limited to, writing, acting, producing, distributing, broadcasting, and assisting in any of the aforementioned or similar processes, for the named "SONG".

16.      That at all the times mentioned herein "SONG" was and is a popular song of an international reputation and exerts a great influence throughout United States, and other countries, and in the television, entertainment business and field of communication as well. By virtue of its wide appeal, condemnation, excoriation, disparaging or defamatory statements by the defendants' about the plaintiff are destined to do irreparable harm to the plaintiff.

17.      That at all the times mentioned herein, defendants were, themselves, and/or through their agents, or others, in their individual capacities or collectively, engaged directly or

4

indirectly, in any and/or all aspects of the processes leading to the creation, publishing, management, marketing, and promotions of the "SONG" including but not limited to, writing, acting, producing, distributing, broadcasting, and assisting in any of the aforementioned or similar processes, for the named "SONG" that was aired, through internet, TV, blogs, and various websites, such as www.youtube.com, and radio broadcasts, sale of albums etc., in the State of New York, and that by their such acts, defendants were in their individual capacities or collectively, actually engaged in the conduct of their business in the State of New York, to subject themselves to the jurisdiction of the courts of the State of New York.

18.     That on or about March 18, 2011, defendants were, themselves, and/or through their agents, or others, in their individual capacities or collectively, engaged directly or indirectly, in any and/or all aspects of the processes leading to the creation, publishing, management, marketing, and promotions of the "SONG" including but not limited to, writing, acting, producing, distributing, broadcasting, and assisting in any of the aforementioned or similar processes, for the named "SONG" that includes an unwarranted, unauthorized, and unfavorable mention of plaintiff's name and personality, and allusions to plaintiff's physical and mental character in named "SONG".

19.     That on or about March 18, 2011, the aforementioned "SONG" was released and aired, through internet, TV, blogs, and various websites, such as www.youtube.com, and radio broadcasts etc., in the State of New York, and elsewhere since named date, and continues into the present. That appearance of plaintiff's name and characterization in "SONG" causes the plaintiff to be associated and identified in connection with defendants.

20.    That on or about June 21, 2011, the aforementioned "SONG" was incorporated and released on defendant ARMANDO CHRISTIAN PEREZ a/k/a PITBULL's album known as "PLANET PIT".

21.    The plaintiff has not given her consent to, or in any way authorized the use of her name and characterization in the "SONG".

22.    The defendants took the plaintiff's name and characterization, and used in "SONG" without plaintiff's consent and authorization.

23.    Defendants have knowingly participated, aided, and conspired with, to violate plaintiff s right of privacy.

24.    The use by defendants of plaintiff's name, characterization, and personality for advertising purposes, and for purposes of trade and commercial benefits, was without the consent, written or oral, of plaintiff or anyone authorized by her to give such consent, was entirely unauthorized, and constitutes a violation of Section 50 of the Civil Rights Law of the State of New York.

25.    Defendants have acted knowingly, willfully and in bad faith.

26.    Defendants, and their agents, have committed tortuous acts within the State of New York, which and are causing injury to plaintiff.

27.    By reason of the foregoing and pursuant to Section 51 of the Civil Rights Law of the State of New York, plaintiff demands that (a) an injunction enjoining defendants from any further unauthorized reproduction, publication, distribution, or other use or exploitation of the "SONG", and of any other advertisement containing plaintiff's name or characterization or personality, (b) an injunction directing defendants to recall, assemble, and turn over to plaintiff all copies of the "SONG", and of any other advertisement containing plaintiff's name or

6

characterization or personality, including all prints, negatives, and other paraphernalia from which the "SONG" or any portion thereof, that includes a plaintiff's name or characterization or personality be produced; and the defendants are also jointly and severally liable to plaintiff for compensatory and exemplary damages.

**AND AS FOR A SECOND CAUSE OF ACTION**

28.    That at all times herein mentioned, plaintiff repeats, reiterates, and re-alleges each and every allegation as herein set before in paragraphs 1 through 27 both inclusive as set forth at length herein.

29.    That when defendants maliciously, wickedly, and contriving to injure the plaintiff, made unwarranted, unauthorized, and unjustified statements about plaintiff in the aforementioned "SONG", defendants advanced their commercial and publicity interests, at the cost of plaintiff's name.

30.    That as a result of defendants' unwarranted, unauthorized, and unjustified use of plaintiff name and commercial use of plaintiff's name in the aforementioned "SONG", defendants have been unjustly enriched, at the cost of plaintiff's name.

31    That as a result of defendants' failure to pay plaintiff for defendants' unwarranted, unauthorized, and unjustified commercial use of plaintiff's name and said characterization in the aforementioned "SONG", plaintiff has been damaged in a substantial sum of money, to be determined a court and jury.

32.    That the amount of damages sought in this action exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

**AND AS FOR A THIRD CAUSE OF ACTION**

33.    That at all times herein mentioned, plaintiff repeats, reiterates, and re-alleges each

7

and every allegation as herein set before in paragraphs 1 through 32 both inclusive as set forth at length herein.

34      The defendants' violations of plaintiff's common law rights have been ongoing, at since on or about March 18, 2011, and are causing and threaten to cause immediate and irreparable injury to the plaintiff.

35.     That plaintiff cannot be adequately compensated for defendants' violation of plaintiff's common law rights, by monetary damages. The plaintiff has no adequate remedy at law.

36.     That by reason of the foregoing, the plaintiff is entitled to:

a.   an injunction enjoining defendants and their agents, from any further unauthorized reproduction, distribution, assignment, transmission, or other use or exploitation of the named "SONG", and of any other song or filmed content, containing plaintiff's name or characterization or personality, by any present or future methods or means, and enjoining defendants against licensing others to do the same;

b.   an injunction directing defendants and their agents to recall and turn over to plaintiff all past and present recordings of named "SONG" and of any other song or filmed content containing plaintiff's name or characterization or personality, including all shots and other associated media and paraphernalia from which the "SONG" or any portion thereof, that includes plaintiff's name or characterization or personality, be produced, by any present or future methods;

c.   an injunction directing defendants and their agents to cease the broadcasting, transmissions, and availability of named "SONG", in video, television, online websites, online

8

downloads, etc. and in any and all other present and future forms in which named "SONG" is available;

     d.  that the defendants are also jointly and severally liable to plaintiff for compensatory and exemplary damages.

### AND AS FOR A FOURTH CAUSE OF ACTION

37.    That at all times herein mentioned, plaintiff repeats, reiterates, and re-alleges each and every allegation as herein set before in paragraphs 1 through 36 both inclusive as set forth at length herein.

38.    That defendants took the plaintiff's name and characterization, and used it in the "SONG" entirely in a distasteful manner to defendants' commercial advantage and purposes, and to the disadvantage of plaintiff, without plaintiff's consent and authorization.

39.    That, in addition to, the unwarranted mentioned of plaintiff's name and personality in named "SONG", defendants have portrayed plaintiff in an offensive and disparaging manner in named "SONG".

40.    That at all times herein mentioned, plaintiff has undergone tremendous emotional distress that has been intentionally inflicted upon plaintiff by defendants' unwarranted, unauthorized, and unjustified use of plaintiff's name and characterization in an offensive and disparaging manner in named "SONG".

41.    That because of defendants' visibility in the entertainment industry, their defamatory statements greatly injured the plaintiff in her profession as an entertainer, and caused her great mental anguish and pain.

42.    That plaintiff has been deprived and damaged in plaintiff's reputation, and

profession etc., by defendants' aforementioned conduct. That plaintiff has suffered monetary loss together with great pain, and attendant anxiety.

43.    That plaintiff has been damaged in a substantial sum of money, to be determined by a court.

44.    That the amount of damages sought in this action exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

**WHEREFORE**, plaintiffs demand judgment against defendants, jointly and severally, on the aforesaid causes, namely; First Cause of Action, Second Cause of Action, Third Cause of Action, Fourth Cause of Action, and Fifth Cause of Action, in a substantial amount to be determined by a court and jury, for defendants' unwarranted, unauthorized, and unjustified defamation and commercial use of plaintiff's name and characterization in the aforementioned "SONG" and granting the following relief:

(a)    A permanent injunction enjoining the defendants, individually or collectively, and each of them, their respective officers, agents, servants, employees and attorneys, and all other persons in concert or participation with them, from the reproduction, distribution, assignment, transmission, or other use or exploitation of the named "SONG", and of any other "SONG" or recorded or filmed content, containing plaintiff's name or characterization or personality, by any present or future methods or means, and permanently enjoining defendants against licensing others to do the same;

(b)    A permanent injunction directing defendants and their agents to recall and turn over to plaintiff all past and present recordings of named "SONG", and of any other "SONG" or recorded or filmed content containing plaintiff's name or characterization or personality, including all masters and other associated media and paraphernalia from which the "SONG" or

10

any portion thereof, that includes plaintiff's name or characterization or personality, be produced, by any present or future methods;

     (c)    A permanent injunction directing defendants and their agents to cease the broadcasting, transmissions, playing, and availability of named "SONG", in video, television, radio, online websites, online downloads, etc. and in any and all other present and future forms in which named "SONG" is available;

     (d)    Requiring defendants to account to plaintiffs for all proceeds derived from their wrongful conduct.

     (e)    That plaintiff be awarded against all defendants, jointly and severally compensatory damages in an amount to be determined by the Court.

     (f)    That plaintiff be awarded interest, the costs and disbursements, and attorneys' fee of this action, and such other and further relief, as the Court may seem just and proper.

Dated:     August 13, 2011
           East Meadow, New York

Yours, etc.,

STEPHANIE G. OVADIA, ESQ.
*Attorney for Plaintiff*
2160 Hempstead Turnpike
East Meadow, NY 11554
(516)542-2133

ANAND AHUJA, ESQ.
*Attorney for Plaintiff*
101-70 Lefferts Boulevard, Suite #2
Richmond Hill, NY 11419
(718)850-1952

11

## VERIFICATION

STATE OF NEW YORK
COUNTY OF NASSAU

I, **LINDSAY LOHAN,** being duly sworn, deposes, under the penalty of perjury, and says:

That I am the plaintiff herein and as such am fully familiar with all of the facts and circumstances relating hereto.

I have read the annexed Complaint; know the contents thereof and the same are true to the best of my knowledge, except those matters therein which are stated to be alleged upon information and belief and as to those matters, I believe them to be true.

My belief as to those matters therein not stated upon knowledge, is based upon the books and records as kept in its ordinary business.

_____
LINDSAY LOHAN, Plaintiff

Sworn to before me on this
13 day of August, 2011

_____
Notary Public

KRISTIN CHIN
Notary Public - State of New York
No. 01CH6222860
Qualified in Nassau County
Commission Expires June 1, 2014

1

Exhibit 2

10/11/2011 18:09 FAX   305 377 1664        Kasowitz Benson                                    ☑002/003

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
--------------------------------------------------- X
LINDSAY LOHAN,

                   Plaintiff,

     - against –

ARMANDO CHRISTIAN PEREZ a/k/a PITBULL,
SHAFFER CHIMERE SMITH, JR., a/k/a/ NE-YO,
NICK VAN DE WALL a/k/a AFROJACK,
J RECORDS,
SONY MUSIC ENTERTAINMENT,
SONY MUSIC HOLDINGS, INC.,
RCA MUSIC GROUP,
POLO GROUNDS MUSIC,
POLO GROUNDS MUSIC PUBLISHING, INC.,
POLO GROUNDS MUSIC, INC.,
MR. 305, INC., MR. 305 ENTERPRISE, INC., and
JOE JOHN AND JANE JOHN, 1 THROUGH X,

                   Defendants.

Index No. 012185/11

**STIPULATION OF SERVICE OF PROCESS**

RECEIVED
OCT 14 2011
NASSAU COUNTY
COUNTY CLERK'S OFFICE

     IT IS HEREBY STIPULATED by and between counsel for plaintiff, Lindsay Lohan ("Plaintiff") and counsel for defendants, Armando Christian Perez a/k/a Pitbull, Shaffer Chimere Smith, Jr., a/k/a Ne-Yo, Nick Van De Wall a/k/a Afrojack, J Records, Sony Music Entertainment, Sony Music Holdings, Inc., RCA Music Group, Polo Grounds Music, Polo Grounds Music Publishing, Inc., and Polo Grounds Music, Inc. (collectively, the "Defendants") that:

     1.     Counsel for the Defendants hereby agrees, and is authorized, to accept service via electronic mail of the Summons and Complaint in the above-captioned action on behalf of the Defendants.

Page | 1

2.      Counsel for the Defendants' agreement to accept such service does not waive Defendants' right to raise all defenses, including but not limited to lack of personal jurisdiction and improper venue.

3.      The Defendants shall have thirty (30) days from the date this Stipulation is fully executed to respond to the Complaint.

IT IS FURTHER STIPULATED that facsimile signatures or electronically transmitted signatures in PDF format may be used in place of originals and, in the aggregate, shall constitute counterpart originals hereof.

Dated: October 13, 2011
       New York, New York

OVADIA LAW FIRM

By: _____
    Stephanie G. Ovadia, Esq.
    Anand Ahuja, Esq.
    2160 Hempstead Turnpike
    East Meadow, New York 11554
    *Attorneys for Plaintiff*

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

By: _____
    Marcos Daniel Jiménez, Esq.
    James G. Sammataro, Esq.
    Courtney Caprio, Esq. (pending admission
    *pro hac vice*)
    1441 Brickell Avenue, Suite 1420
    Miami, Florida 33131
    (305) 377-1666

    Sarah Gibbs Leivick, Esq.
    1633 Broadway
    New York, New York 10019
    (212) 506-1700
    *Attorneys for Defendants*

Exhibit 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

LINDSAY LOHAN,

                    Plaintiff,

    - against –

ARMANDO CHRISTIAN PEREZ *a/k/a* PITBULL,
SHAFFER CHIMERE SMITH, JR., *a/k/a* NE-YO,
NICK VAN DE WALL *a/k/a* AFROJACK,
J RECORDS, SONY MUSIC ENTERTAINMENT,
SONY MUSIC HOLDINGS, INC.,
RCA MUSIC GROUP, POLO GROUNDS MUSIC,
POLO GROUNDS MUSIC PUBLISHING, INC.,
POLO GROUNDS MUSIC, INC., MR. 305, INC.,
MR. 305 ENTERPRISE, INC., and
JOE JOHN AND JANE JOHN, 1 THROUGH X,

                    Defendants.
-----------------------------------------------------------------------X

## <u>DECLARATION OF COURTNEY CAPRIO</u>

       I, Courtney Caprio, under the penalty of perjury, swear pursuant to 28 U.S.C. § 1746, that

the following is true and correct:

       1.     This Declaration is being filed in support of Defendants Armando Christian Perez

*p/k/a* Pitbull, Shaffer Chimere Smith, Jr., *p/k/a* Ne-Yo, Nick Van De Wall *p/k/a* Afrojack, J

Records, Sony Music Entertainment, Sony Music Holdings, Inc., RCA Music Group, Polo

Grounds Music, Polo Grounds Music Publishing, Inc. and Polo Grounds Music, Inc.'s

(collectively, "Defendants") Notice of Removal ("Notice of Removal").

       2.     I am an associate at the law firm of Kasowitz Benson Torres & Friedman, LLP

and represent the Defendants in this action. I have been admitted to the Florida Bar in good

standing since 2004 and will seek *pro hac vice* admission to appear before this Court.

3.      Attached hereto as **Composite Exhibit A** are true and correct copies of the articles linked to the websites as of November 3, 2011, which are referenced in the Notice of Removal.

_Courtney Caprio_
Printed Name

Courtney Caprio, Esq.
Kasowitz Benson Torres & Friedman
1441 Brickell Avenue Suite 1420
Miami, Florida 33131

_11-3-11_
Date of Declaration/Execution