UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

LINDSAY LOHAN,                                    CASE NO.: 2:11-cv-05413-DRH-ARL

        Plaintiff,

vs.

ARMANDO CHRISTIAN PEREZ *p/k/a* PITBULL,
SHAFFER CHIMERE SMITH, JR., *p/k/a* NE-YO, NICK
VAN DE WALL *p/k/a* AFROJACK, J RECORDS, SONY
MUSIC ENTERTAINMENT, SONY MUSIC HOLDINGS
INC., RCA MUSIC GROUP, POLO GROUNDS MUSIC,
POLO GROUNDS MUSIC PUBLISHING, INC., POLO
GROUNDS MUSIC, INC., MR. 305, INC., MR. 305
ENTERPRISE, INC., and JOE JOHN AND JANE JOHN,
1 THROUGH X,

        Defendants.

_____/

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**<u>PLAINTIFF LINDSAY LOHAN'S VERIFIED COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   LEGAL MEMORANDUM .................................................................... 3

    A.   Legal Standard .................................................................... 3

    B.   Ms. Lohan's Section 51 Claims Are Untenable as a Matter of Law ..................... 3

        1.   The First Amendment Precludes Ms. Lohan's Claims Because the Song is Protected Artistic Expression ........................................... 5

        2.   The First Amendment Further Precludes Liability Under the Newsworthiness Exception .................................................. 7

        3.   Defendants' Use of Ms. Lohan's Name Was *Not* for Advertising or Trade Purposes .......................................................... 9

        4.   The Use of Ms. Lohan's Name in the Song Is *De Minimis* ..................... 10

    C.   The Intentional Infliction of Emotional Distress Claim Fails as a Matter of Law ........................................................................ 11

    D.   The Unjust Enrichment Claim Is Preempted by the New York Civil Rights Law ........................................................................ 13

    E.   The Court Must Dismiss Ms. Lohan's Claims for an Injunction ........................ 14

        1.   Ms. Lohan Cannot Establish that She Is Entitled to an Injunction .......... 14

        2.   Ms. Lohan's Request for Monetary Relief is Fatal to Her Claim for Injunctive Relief for Violation of Her Common Law Rights .................. 15

    F.   Ms. Lohan's Requests for an Accounting and Attorneys' Fees Are Meritless .................................................................... 16

III.  CONCLUSION .......................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Altbach v. Kulon,*
302 A.D.2d 655 (3d Dep't 2003) ..................................................................6

*AmBase Corp. v. City Investing Co. Liquidating Trust,*
2002 U.S. Dist. LEXIS 15198, at *2 (S.D.N.Y. Aug. 15, 2002) ...........................13

*Ann-Margret v. High Soc'y Magazine, Inc.,*
498 F. Supp. 401 (S.D.N.Y. 1980) ...........................................................5, 8

*Arrington v. New York Times Co.,*
55 N.Y. 2d 433 (N.Y. 1982) ...................................................................4, 5

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S.Ct. 1937 (2009) ...........................................................3

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...........................................................................3

*Bongat v. Fairview Nursing Care Ctr., Inc.,*
341 F. Supp. 2d 181 (E.D.N.Y. 2004) ..........................................................13

*Clougher v. Home Depot U.S.A. Inc.,*
696 F. Supp. 2d 285 (E.D.N.Y. 2010) ..........................................................13

*Costlow v. Cusimano,*
34 A.D.2d 196 (4th Dep't 1970) ................................................................3

*D'Andrea v. Rafla-Demetrious,*
972 F. Supp. 154 (E.D.N.Y. 1997) .............................................................10

*Delan v. CBS, Inc.,*
91 A.D.2d 255 (2d Dep't 1983) .................................................................9

*Finger v. Omni Publ'ns Intl., Ltd.,*
77 N.Y.2d 138 (1990) ....................................................................3, 4, 5, 9

*Fishman v. The Cnty. of Nassau,*
2011 U.S. Dist. LEXIS 100255 (E.D.N.Y. Sept. 7, 2011) .................................11, 12

*Freihofer v. Hearst Corp.,*
65 N.Y. 2d 135 (N.Y. 1985) .................................................................8, 12

*Goelet v. Confidential, Inc.*,
  5 A.D.2d 226 (1st Dep't 1958) ..................................................................8

*Great Earth Int'l Franchising Corp. v. Milks Devs., Inc.*,
  302 F. Supp. 2d 248 (S.D.N.Y. 2004) ......................................................14

*Grossman v. Handprints-N.J., Inc.*,
  90 A.D.2d 95 (2d Dep't 1982) ................................................................16

*Hampton v. Guare*,
  195 A.D.2d 366 (1st Dep't 1993) ............................................................14

*Hicks v. Casablanca Records*,
  464 F. Supp. 426 (S.D.N.Y. 1978) ...........................................................3

*Hoepker v. Dabney*,
  200 F. Supp. 2d 340 (S.D.N.Y. 2002)................................................3, 5, 6, 9

*Hooper Assocs., Ltd. v. AGS Computers, Inc.*,
  74 N.Y.2d 487 (N.Y. 1989) .....................................................................17

*Howell v. New York Post Co.*,
  81 N.Y.2d 115 (N.Y. 1993) .......................................................................5

*Hustler Magazine v. Falwell*,
  485 U.S. 46 (1988)..................................................................................11

*Jayaraj v. Scappini*,
  66 F.3d 36 (2d Cir. 1995)........................................................................15

*La Forge v. Fairchild Publ'ns, Inc.*,
  23 A.D.2d 636 (1st Dep't 1965) ...............................................................4

*Leisure Direct, Inc. v. Glendale Capital, LLC*,
  2010 U.S. Dist. LEXIS 99178 (E.D.N.Y. July 27, 2010) ........................17

*Lemerond v. Twentieth Century Fox Film Corp.*,
  2008 U.S. Dist. LEXIS 26947 (S.D.N.Y. Mar. 31, 2008) ..................13, 14

*Man v. Warner Bros., Inc.*,
  317 F. Supp. 50 (S.D.N.Y. 1970) ............................................................10

*McGraw v. Watkins*,
  49 A.D. 2d 958 (3d Dep't 1975)................................................................4

*Messenger v. Gruner + Jahr Printing & Publ'g.*,
  94 N.Y.2d 436, 441 (N.Y. 2000) .......................................................4, 5, 7

*Mr. Dees Stores, Inc. v. A.J. Parker, Inc.*,
   159 A.D.2d 389 (1st Dep't 1990) ........................................................16

*Netzer v. Continuity Graphic Assocs., Inc.*,
   963 F. Supp. 1308 (S.D.N.Y. 1997) ...................................................10

*Pirone v. MacMillan, Inc.*,
   894 F.2d 579 (2d Cir. 1990) ...............................................................13

*Preston v. Martin Berman Prods., Inc.*,
   765 F. Supp. 116 (S.D.N.Y. 1991) ................................................10, 12

*SEC v. Unifund SAL*,
   910 F.2d 1028 (2d Cir. 1990) ............................................................. 14

*Smith v. Goro*,
   66 Misc. 2d 1011 (N.Y. Sup. Ct. 1970) .............................................15

*Tevdorachvili v. The Chase Manhattan Bank*,
   103 F. Supp. 2d 632 (E.D.N.Y. 2000) ...............................................17

*Univ. of Notre Dame Du Lac v. Twentieth Century-Fox Film Corp.*,
   22 A.D.2d 452 (1st Dep't 1965) .................................................6, 10, 15

*Walter v. NBC Television Network, Inc.*,
   27 A.D.3d 1069 (4th Dep't 2000) ...............................................5, 9, 10

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989) .............................................................................5

*Welch v. Group W. Prods., Inc.*,
   138 Misc.2d 856 (N.Y. Sup. Ct. 1987) ................................................5

*Zucker v. Katz*,
   708 F. Supp. 525 (S.D.N.Y. 1989) ....................................................16

## STATUTES

New York Civil Rights Law. ..............................................................3, 13

Sections 50 and 51 of the New York Civil Rights Law..................3, 4, 6

Section 51 of the New York Civil Rights Law ................................ passim

## OTHER AUTHORITIES

Fed. R. Evid. 201(b)...............................................................................2

First Amendment ............................................................................ passim

*Give Me Everything* (the "Song") ................................................................................................2

http://en.wikipedia.org/wiki/Dick_Clark's_New_Year's_Rockin'_Eve_with_Ryan_Seacrest ....................................................................................................................................6

http://music-mix.ew.com/2011/06/07/em ...................................................................................7

http://www.azlyrics.com/lyrics/eminem/withoutme.html ..........................................................7

http://www.businessinsider.com/lindsay-lohan-pitbull-rap-2011-11#ixzz1fKIVwWpW..............7

http://www.lyrics.com/give-me-everything-lyrics-pitbull.html .....................................................2

http://www.metrolyrics.com/same-song-dance-lyrics-eminem.html...........................................7

*http://www.radaronline.com/exclusives/2011/06/david-lettermans-top-ten-list-what-are-lindsay-lohans-summer-plans* ......................................................................................................12

Rule 12(b)(6)................................................................................................................................3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

LINDSAY LOHAN,                                                CASE NO.: 2:11-cv-05413-DRH-ARL

       Plaintiff,

vs.

ARMANDO CHRISTIAN PEREZ *p/k/a* PITBULL,
SHAFFER CHIMERE SMITH, JR., *p/k/a* NE-YO, NICK
VAN DE WALL *p/k/a* AFROJACK, J RECORDS, SONY
MUSIC ENTERTAINMENT, SONY MUSIC HOLDINGS
INC., RCA MUSIC GROUP, POLO GROUNDS MUSIC,
POLO GROUNDS MUSIC PUBLISHING, INC., POLO
GROUNDS MUSIC, INC., MR. 305, INC., MR. 305
ENTERPRISE, INC., and JOE JOHN AND JANE JOHN,
1 THROUGH X,

       Defendants.

_____/

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF LINDSAY LOHAN'S VERIFIED COMPLAINT

    Defendants, Armando Christian Perez *p/k/a* Pitbull, Shaffer Chimere Smith, Jr., *p/k/a* Ne-Yo, Nick Van De Wall *p/k/a* Afrojack, J Records, Sony Music Entertainment, Sony Music Holdings, Inc., RCA Music Group, Polo Grounds Music, Polo Grounds Music Publishing, Inc., and Polo Grounds Music, Inc., respectively move this Court to dismiss Lindsay Lohan's Verified Complaint ("Complaint") with prejudice, and in support thereof respectfully state.

## I.    <u>PRELIMINARY STATEMENT</u>

    *I have no idea why there is this fascination with everything I do. I suppose it's all part of this trend of people wanting to know every detail of a celebrity's life. I mean, once we get to the point where magazines are doing pictorials on the clothes I wore in court – that's just so unimportant.*

Lindsay Lohan, *"Lindsay Reborn,"* Playboy, January/February 2012 (cover article).

By her own account, Ms. Lohan is a well-known celebrity whose every move is chronicled by news outlets for general consumption.[1]  Her activities including, for example, her frequent legal troubles, jail stints, and recent *Playboy* pictorial, are meticulously tracked and widely publicized by television, Internet, and print publishing media.  Invited or otherwise, Ms. Lohan is indisputably a fixture in today's twenty-four hour news cycle and in everyday social discourse, where she often finds herself fodder for late-night comedic monologues and satirical commentary.

This reality notwithstanding, Ms. Lohan has instituted this action based on one mention of her name midway through the hit song, *Give Me Everything* (the "Song"): "So, I'm tiptoein', to keep flowin', I got it locked up, like Lindsay Lohan."[3]  Ms. Lohan claims that this fleeting reference violates Section 51 of the New York Civil Rights Law (Count One), results in unjust enrichment (Count Two), warrants injunctive relief for violation of her "common law rights" (Count Three), and constitutes intentional infliction of emotional distress (Count Four).

However, the First Amendment bars her claims because the Song is protected artistic expression.  Moreover, the incidental use of Ms. Lohan's name was not for advertising and trade purposes and therefore is not proscribed by Section 51 as a matter of plain and unmistakable law.  Ms. Lohan's remaining causes of action are equally baseless, since she has not – and cannot – allege facts warranting injunctive relief, monetary damages for severe emotional trauma or a finding of unjust enrichment.  The Court must therefore dismiss this action with prejudice.

---

[1] Even the most mundane of facts involving Ms. Lohan generates headlines.  For example, her stolen purse recently made headlines in, among others, CBS News, MSNBC, People, TMZ and MTV, and resulted in over seven million hits on Google's search engine.

[3] *See* http://www.lyrics.com/give-me-everything-lyrics-pitbull.html, attached as **Exhibit A** to the Declaration of Courtney Caprio ("Caprio Dec."), which is being filed contemporaneously herewith; *see* Fed. R. Evid. 201(b).

## II.     LEGAL MEMORANDUM

### A.     Legal Standard.

Dismissal under Rule 12(b)(6) can be premised on either the lack of a cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal claim. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009). To state a plausible claim, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* In this respect, "[a] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B.     Ms. Lohan's Section 51 Claims Are Untenable as a Matter of Law.

The facts alleged by Ms. Lohan do not state a claim under the New York Civil Rights Law. Most significantly, the First Amendment presents a complete defense to her claims. *See, e.g., Hoepker v. Dabney*, 200 F. Supp. 2d 340, 349-50 (S.D.N.Y. 2002) (dismissing claims for violations of Sections 50 and 51 of the New York Civil Rights Law because work of art was "pure speech" and protected by the First Amendment); *Hicks v. Casablanca Records*, 464 F. Supp. 426, 433 (S.D.N.Y. 1978) (complaint dismissed and preliminary injunction motion denied because First Amendment protection of artistic works outweighed publicity rights).[4]

---

[4] New York courts have held that meritless claims under Section 51 warrant dismissal, not futile discovery. *See, e.g., Finger v. Omni Publ'ns Intl., Ltd.*, 77 N.Y.2d 138 (1990), *Costlow v. Cusimano*, 34 A.D.2d 196 (4th Dep't 1970) (reversing denial of motion to dismiss Section 50 and 51 claims); *La Forge v. Fairchild Publ'ns, Inc.*, 23 A.D.2d 636 (1st Dep't 1965) (same).

Ms. Lohan's Section 51 claim fails for four (4) independent, though overlapping, reasons:

- The Song is unquestionably a work of art protected by the First Amendment;

- The newsworthiness exception precludes liability under Section 51.

- Ms. Lohan's name was not used in the Song for purposes of advertising or trade;

- The fleeting mention of Ms. Lohan's name in the Song is *de minimis*.

Section 51, which is the only redress under New York law for a "right of privacy" violation, prohibits the nonconsensual appropriation of names and likenesses "'for advertising purposes or for purposes of trade' *only*, and nothing more." *Finger v. Omni Publ'ns Intl.*, 77 N.Y.2d at 141 (internal citation omitted) (emphasis in original); *see also Messenger v. Gruner + Jahr Printing & Publ'g.*, 94 N.Y.2d 436, 441 (N.Y. 2000). Section 51 grants a limited right, and the act is to be stringently interpreted. The legislative history of the section highlights its intentionally limited scope:

> The statutory scheme was enacted as a direct response to *Roberson v. Rochester Folding Box Co.*, (171 N.Y. 538). . . . Most significantly, in sustaining a demurrer to so much of the complaint as was framed in terms of a violation of an alleged right to privacy, the court broadly denied the existence of such a cause of action under New York common law. It is noteworthy, therefore, that, while concern engendered by this decision prompted the Legislature to enact sections 50 and 51, these were drafted narrowly to encompass *only the commercial use of an individual's name or likeness and no more*. Put another way, the Legislature confined its measured departure from existing case law to circumstances akin to those presented in *Roberson*. In no other respect did it undertake to roll back the court-pronounced refusal to countenance an action for invasion of privacy. Nor has the Legislature chosen to enlarge the scope of sections 50 and 51 in the fourscore years since *Roberson* was handed down.

*Arrington v. New York Times Co.*, 55 N.Y. 2d 433, 439-40 (N.Y. 1982) (emphasis added); *McGraw v. Watkins*, 49 A.D. 2d 958, 959 (3d Dep't 1975) ("Since the statute is in derogation of the common law, it must be strictly construed"); *Welch v. Group W. Prods., Inc.*, 138 Misc.2d 856, 859 (N.Y. Sup. Ct. 1987) (statute is "narrowly drafted, measured departure" and "is in part

at least penal, and should be construed accordingly") (citations omitted).

The First Amendment further limits this narrow statutory interpretation. Mindful of the potential conflict with the First Amendment, courts have interpreted Section 51 with "sensitivity to . . . the values our State and Federal Constitutions bespeak in the area of free speech and free press." *Arrington,* 55 N.Y.2d at 440. Section 51 "has been narrowly construed by the courts, especially in the context of persons denominated 'public figures,' so as 'to avoid any conflict with the free dissemination of thoughts, ideas, newsworthy events, and matters of public interest' guaranteed by the First Amendment." *Ann-Margret v. High Soc'y Magazine, Inc.,* 498 F. Supp. 401, 403 (S.D.N.Y. 1980) (quoting *Time, Inc. v. Hill,* 385 U.S. 374 382 (1967)). Thus, "freedom of speech and the press under the First Amendment transcends the right to privacy." *Id.* (quotations omitted).[5]

### 1.    The First Amendment Precludes Ms. Lohan's Claims Because the Song is Protected Artistic Expression.

A song is undoubtedly a work of art. *See Ward v. Rock Against Racism,* 491 U.S. 781, 790 (1989) ("Music, as a form of expression and communication, is protected under the First Amendment."). Section 51 does not apply to works of art because of the First Amendment. *See Hoepker,* 200 F. Supp. 2d at 349-50. In *Hoepker,* the plaintiff brought suit against a museum and a company because they maintained a virtual gallery for displaying a collage that incorporated a photograph of the plaintiff into the artwork. The court held that the display of the collage in the museum and online was not subject to liability under Section 51. In dismissing the Section 51 claim with prejudice, the court held that such art was "pure First Amendment speech in the form

---

[5] New York courts have consistently reaffirmed Section 51's restricted scope and the need for judicial restraint due to the First Amendment. *See, e.g., Walter v. NBC Television Network, Inc.,* 27 A.D.3d 1069, 1070 (4th Dep't 2000) (the statute is strictly limited); *Messenger,* 94 N.Y.2d at 441 (the statute is to be "narrowly construed"); *Finger,* 77 N.Y.2d at 141; *Howell v. New York Post Co.,* 81 N.Y.2d 115, 124 (N.Y. 1993).

of artistic expression . . . and deserves full protection, even against [plaintiff's] statutorily-protected privacy interests." *Id.* at 350.   The court explained that "art is speech, and, accordingly, that art is entitled to First Amendment protection vis-à-vis the right of privacy." *Id.* at 349; *see also Altbach v. Kulon*, 302 A.D.2d 655, 657-58 (3d Dep't 2003) (caricature and flyer showcasing plaintiff's photograph next to caricature were protected under the First Amendment and exempt from Section 51).

Likewise, the Song is unquestionably a work of artistic expression protected by the First Amendment.  The artists' thoughts and impressions are reflected in the Song's lyrics.  Whether the substance of the lyric is "good . . . or bad, penetrating satire or blundering buffoonery, is not for us to decide.  It is fundamental that courts may not muffle expression by passing judgment on its skill or clumsiness, its sensitivity or coarseness; nor on whether it pains or pleases." *Univ. of Notre Dame Du Lac v. Twentieth Century-Fox Film Corp.*, 22 A.D.2d 452, 458 (1st Dep't 1965).

Consequently, mentioning Ms. Lohan's name in one line of the Song "fall[s] within the scope of the First Amendment and outside the range of Sections 50 and 51."[6] *Hoepker*, 200 F. Supp. 2d at 350.  Defendants' First Amendment rights trump Ms. Lohan's alleged Section 51 claim.  Sustaining Ms. Lohan's allegations would lead to absurd results: the use of a celebrity's name in any work of art – such as a song, poem or painting – would trigger liability.  Indeed, if Ms. Lohan is allowed to proceed with her claim, every recording artist could be gagged and prevented from expressing his or her thoughts in songs, including the other recording artists who

---

[6] The Song mentions another public figure, Ryan Seacrest. Rather than bringing a Section 51 lawsuit, Mr. Seacrest welcomed the performance of the Song live in Times Square on *Dick Clark's Rockin' New Year's Eve 2012. See* http://en.wikipedia.org/wiki/Dick_Clark's_New_Year's_Rockin'_Eve_with_Ryan_Seacrest, attached as **Exhibit B** to the Caprio Dec.

have referred to Ms. Lohan in their songs but whom she has not sued.[7]   This ends the analysis: Ms. Lohan's Section 51 claim must be dismissed with prejudice, because the Song is a form of artistic expression and thus is constitutionally protected speech.

Any other result would violate the First Amendment and upend decades of free expression by recording artists, who frequently mention politicians, artists and other celebrities in order to express their viewpoints and opinions.   For example, the group Crosby, Stills, Nash & Young famously sang this refrain in the protest song, *Ohio*, after the 1970 Kent State shootings:

> *Tin soldiers and Nixon's coming,*
> *We're finally on our own.*
> *This summer I hear the drumming,*
> *Four dead in Ohio.*

More recently, recording artists such as the rapper Eminem regularly mention, criticize and even insult other celebrities in their songs.[9]   The examples of songs that mention the names of celebrities are too numerous to catalogue.   In disregard of the First Amendment, Ms. Lohan seeks to censor the use of her name.   The Constitution does not permit that result.

### 2.    The First Amendment Further Precludes Liability Under the Newsworthiness Exception.

Due to the First Amendment, Section 51 categorically does not apply to newsworthy events or matters of public interest.   The newsworthiness privilege reflects "constitutional values in the areas of free speech."   *Messenger*, 94 N.Y.2d at 441.   The newsworthiness privilege is to

---

[7] Recording artists have repeatedly used Ms. Lohan's name, such as (1) Eminem in *Same Song and Dance*: "Hello Lindsay you're looking a little thin, hun'; How about a ride to rehab? get in c*&!" and (2) Bad Meets Evil in *I'm on Everything*: "Even when I'm ten deep in a room with the MG and with Lindsay Lohan;   and   she   on;   Syrup,   painkillers,   cigarette,   weed,   Hennessy,   vodka."   *See* http://www.metrolyrics.com/same-song-dance-lyrics-eminem.html; (song lyrics of at least ten (10) songs referencing Ms. Lohan are compiled at http://www.businessinsider.com/lindsay-lohan-pitbull-rap-2011-11#ixzz1fKIVwWpW), which is attached as Composite **Exhibit C** to the Caprio Dec.

[9] For example, in *Without Me*, Eminem mentions Mrs. Dick Cheney, the artist Moby, Elvis Presley, and the artist Prince, among others.   *See* http://www.azlyrics.com/lyrics/eminem/withoutme.html; *see also* http://music-mix.ew.com/2011/06/07/em, attached as Composite **Exhibit D** to the Caprio Dec.

be "broadly construed" and covers material "concerning political happenings, social trends, or any subject of public interest . . . Applying these principles, courts have held that a wide variety of [ ] matters of public interest – including those not readily recognized as 'hard news' – are newsworthy." *Id.* at 441-42 (letter seeking advice from "Love Crisis" column was newsworthy); *see, e.g., Ann-Margret*, 498 F. Supp. at 405 ("fact that the plaintiff, a woman who has occupied the fantasies of many moviegoers over the years, chose to perform unclad in one of her films is a matter of great interest to many people," so newsworthiness exception applied); *Freihofer v. Hearst Corp.*, 65 N.Y. 2d 135, 140-41 (N.Y. 1985) (details of divorce reported in newspaper were newsworthy and Section 51 thus did not apply). Consequently, the use of a name – be it in a magazine, a newspaper, a television program or, as here, a song – in connection with matters of public interest does not constitute a "use for purposes of trade within the meaning of the Civil Rights Law" or otherwise give rise to a Section 51 claim.

Ms. Lohan is indisputably newsworthy and chose her celebrity life (Compl. at ¶ 2). She generates public "fascination with everything" she does. Over the last several years, Ms. Lohan's every exploit – ranging from her dating habits, her frequent run-ins with the law, her court appearances, incarcerations and, most recently, her nude pictorial and cover article in *Playboy* – has been exhaustively chronicled, widely reported and satirized in the American media. *See Goelet v. Confidential, Inc.*, 5 A.D.2d 226, 229-30 (1st Dep't 1958) (lurid gossip about celebrities is "part and parcel of the reading habits of the American public"). As a fixture of popular culture, Ms. Lohan's actions unquestionably are "within the 'orbit of public interest and scrutiny.'" *Ann-Margret*, 498 F. Supp. at 405 (quoting *Metropol v. Nizer*, 560 F.2d 1061, 1066 (2d Cir. 1977); *see Goelet*, 5 A.D.2d at 228 ("Where there has been no attempt to conceal occurrences in one's life . . . the notoriety thus obtained places one's activities in the pitiless

light of publicity and renders [her] a legitimate item of news."). Therefore, the Song's singular reference to Ms. Lohan does not create liability under Section 51 due to the newsworthiness exemption.

### 3. Defendants' Use of Ms. Lohan's Name Was *Not* for Advertising or Trade Purposes.

To state a claim under Section 51, Ms. Lohan must allege that defendants: (1) used her name, (2) "'for advertising purposes or for the purposes of trade,' (3) without her consent and (4) within the state of New York." *Hoepker*, 200 F. Supp. 2d at 348 (citing *Titan Sports, Inc. v. Comics World Cup*, 870 F.2d 85, 87 (2d Cir. 1989)). Ms. Lohan's conclusory allegations notwithstanding, her Section 51 claim fails as a matter of law. Section 51 was specifically designed to curb the commercial exploitation of an individual's name and likeness "'for advertising purposes or for purposes of trade' *only* and nothing more." *See, e.g., Finger*, 77 N.Y.2d at 141 (emphasis in original). The statute was not intended to preclude the mere mention of an individual's name. To be actionable, the individual's name must be used as an advertisement or for purposes of trade. *See Hoepker*, 200 F. Supp. 2d at 348.

The Song does not use Ms. Lohan's name for advertising or trade purposes within the meaning of the statute. It does not promote a product or service. Nor does it seek "solicitation for patronage." *See Walter*, 27 A.D.3d at 1070 (dismissing action where the use of photograph as part of the "Headlines" segment on *The Tonight Show* was not used for purposes of soliciting patrons to the show); *Delan v. CBS, Inc.*, 91 A.D.2d 255, 258 (2d Dep't 1983) (use of plaintiff's picture in documentary was not for advertising purposes). The Song also does not use Ms. Lohan's name to promote itself. Her name is not, for example, used in the title or even the refrain. Instead, there is a single passing reference to Ms. Lohan. (*See* Ex. B). Because the use

of Ms. Lohan's name is "not strictly limited to commercial appropriation," she cannot establish it was used for the purposes of advertising or trade. *Walter*, 27 A.D.3d at 1070.

### 4.   The Use of Ms. Lohan's Name in the Song Is *De Minimis*.

The Section 51 claim additionally fails because the one-time mention of Ms. Lohan's name in the Song is *de minimis*. New York courts have uniformly refused to impose liability for *de minimis* uses under Section 51. To establish liability, Ms. Lohan must demonstrate a "direct and substantial connection between the appearance of [her] name . . . and the main purpose and subject of the work." *D'Andrea v. Rafla-Demetrious*, 972 F. Supp. 154, 157 (E.D.N.Y. 1997) (Gleeson, J.) (photograph's use in brochure incidental to its purpose) (collecting cases).

Consequently, it is well-settled that an "isolated" or "fleeting and incidental" use of a person's name – even if unauthorized – cannot establish a Section 51 claim as a matter of law. *Id.; see also Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1326 (S.D.N.Y. 1997) ("isolated" use of [plaintiff's] previous name and [ ] current surname" in twenty-four page comic book did not violate Section 51); *Preston v. Martin Berman Prods., Inc.*, 765 F. Supp. 116, 119 (S.D.N.Y. 1991) ("fleeting" appearance of plaintiff (a prostitute) for 4 ½ seconds in feature film contributed "nothing of significance to the movie's story line, although it is incidental in setting the atmosphere for the crime and police material that follows") (collecting cases); *Man v. Warner Bros., Inc.*, 317 F. Supp. 50, 53 (S.D.N.Y. 1970) ("the incidental use of plaintiff's forty-five second performance in defendants' motion picture . . . is surely *de minimis*" and is not actionable); *Univ. of Notre Dame*, 22 A.D.2d at 454 (dismissing complaint because mentioning plaintiff two times in 143-page book did not violate right of privacy).

The same holds true here: the fleeting and isolated use of Ms. Lohan's name in the Song is irrefutably incidental to the main purpose of the Song, which is about celebrating life and seizing the moment, signified by the Song's oft-repeated chorus (and title), "give me everything

tonight." (*See* Ex. A).  Ms. Lohan's name is referenced once in one (1) out of one hundred four (104) lines in the song, as is another celebrity's name (Ryan Seacrest).  (*See id.*).  Such incidental *de minimis* use of Ms. Lohan's name cannot support a Section 51 claim as a matter of law.

**C.    The Intentional Infliction of Emotional Distress Claim Fails as a Matter of Law.**

The First Amendment also bars Ms. Lohan's claim for intentional infliction of emotional distress because she does not allege facts that plausibly show the required malice or the requisite outrageous conduct by defendants.  While she alleges in conclusory and insufficient fashion that the Song contains "unwarranted, unauthorized and unfavorable mention" of her name and personality and "allusions" to her "physical and mental character," nowhere does she actually set forth the alleged statements about her, explain how they are false, or provide any facts whatsoever to establish either their allegedly "defamatory" nature or the alleged malice behind them. (Compl., ¶¶ 18, 29, 38-41).

In *Hustler Magazine v. Falwell*, 485 U.S. 46, 56 (1988), the Supreme Court held that public figures may not recover for the tort of intentional infliction of emotional distress without showing "a false statement of fact made with 'actual malice,' *i.e.* with knowledge that the statement was false or with reckless disregard as to whether or not it was true." *Id.* Ms. Lohan does not adequately allege actual malice or even facts that show the subject lyric is false.

Its veracity aside, the lyric does not rise to the level of being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community, [as] satisfying the outrageousness element is difficult, even at the pleadings stage." *Fishman v. The Cnty. of Nassau*, 2011 U.S. Dist. LEXIS 100255, at *32 (E.D.N.Y. Sept. 7, 2011) (Hurley, J.) (dismissing intentional infliction of emotional distress claim).  "Such a claim lies only where there has been severe

mental pain inflicted through deliberate and malicious harassment or intimidation." *Preston*, 765 F. Supp. at 120.   In *Preston*, the court dismissed a claim for intentional infliction of emotional distress brought by a prostitute who was recorded for 4 ½ seconds in the opening of a feature film because this conduct was "incidental" and thus could not state a claim for relief.   *Id.* at 120-21 (citing *Rooney v. Witco Corp.*, 722 F. Supp. 1040, 1045 (S.D.N.Y. 1989) for the proposition that incidental conduct precludes claim for the intentional infliction of emotional distress under New York law).   Here, Ms. Lohan at best alleges insufficient conclusions about how the statements about her are supposedly "distasteful" or "defamatory." (Compl., ¶¶ 38, 41).   She alleges no facts whatsoever that would establish conduct that goes beyond "all bounds of decency." *Fishman*, 2011 U.S. Dist. LEXIS 100255, at *32.

Moreover, courts routinely dismiss intentional infliction of emotional distress claims tacked on to meritless Section 51 claims.   *See id.* at 119-20; *Freihofer*, 65 N.Y.2d at 140-144 (publication of facts relating to contentious divorce not actionable for intentional infliction of emotional distress or for Section 51 claim).   The same result is mandated here.   Furthermore, as in *Preston*, the Song's reference to Ms. Lohan is isolated and thus cannot support a claim for intentional infliction of emotional distress under New York law.   There are no plausible facts to establish that the lyric – which pales in comparison to other song lyrics and late-night jokes routinely directed at Ms. Lohan[11] – is either "sufficiently atrocious" or "utterly intolerable" so as to offend "all bounds of decency."

---

[11] By way of example, in June 20111, David Letterman presented a "Top Ten List" – *What Are Lindsay Lohan's Summer Plans?* – that constitutes offensive material directed at Ms. Lohan.   *See* *http://www.radaronline.com/exclusives/2011/06/david-lettermans-top-ten-list-what-are-lindsay-lohans-summer-plans*, attached as **Exhibit E** to the Caprio Dec.

**D.** **The Unjust Enrichment Claim Is Preempted by the New York Civil Rights Law.**

"To prevail on ... a claim [for unjust enrichment], a plaintiff must establish (1) that the defendant[s] benefitted; (2) at the plaintiff's expense; and (3) that 'equity and good conscience' require restitution." *AmBase Corp. v. City Investing Co. Liquidating Trust,* 2002 U.S. Dist. LEXIS 15198, at *5, at *2 n.2 (S.D.N.Y. Aug. 15, 2002) (quoting *Boule v. Hutton,* 138 F. Supp. 2d 491, 510 (S.D.N.Y. 2001)).

Ms. Lohan claims that defendants by their "unjustified ... commercial use of plaintiff's name" in the Song "have been ***unjustly enriched***, at the cost of plaintiff's name." (Compl., ¶ 30) (emphasis added). Although nebulous at best, these allegations purport to state a claim for unjust enrichment. However, Ms. Lohan wholly fails to allege facts that plausibly meet a required element of this claim: that "equity and good conscience require restitution."[12]

In addition to lacking this element, Ms. Lohan's unjust enrichment claim fails as a matter of law. "New York courts have indicated clearly that the Civil Rights Law preempts any common law right of publicity action." *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 586 (2d Cir. 1990). There is no common law publicity cause of action in New York; thus, the only relief for a violation of the right to privacy is limited to an action under Section 51. *See, e.g., Lemerond v. Twentieth Century Fox Film Corp.*, 2008 U.S. Dist. LEXIS 26947, at *9 (S.D.N.Y. Mar. 31, 2008) (collecting cases).

Here, Ms. Lohan's unjust enrichment claim incorporates her Section 51 claim. (Compl., ¶¶ 28-30). Ms. Lohan's attempt to assert a common law claim for unjust enrichment relating to

---

[12] To the extent that Ms. Lohan has an adequate remedy at law (which she does not), her unjust enrichment claim must be dismissed. *See, e.g., Clougher v. Home Depot U.S.A. Inc.*, 696 F. Supp. 2d 285, 295 (E.D.N.Y. 2010) (Mauskopf, J.) (dismissing unjust enrichment claim where adequate legal remedy exists); *Bongat v. Fairview Nursing Care Ctr., Inc.*, 341 F. Supp. 2d 181, 188-89 (E.D.N.Y. 2004) (Feuerstein, J.) (same).

defendants' purported unauthorized use of her name in the Song is "subsumed" under Section 51 and must accordingly be dismissed with prejudice. *Lemerond*, 2008 U.S. Dist. LEXIS 26947, at *9 (dismissing unjust enrichment claim when based on same allegations as claim under Section 51); *see, e.g.*, *Hampton v. Guare*, 195 A.D.2d 366, 366-67 (1st Dep't 1993) (Civil Rights Law preempts claim for unjust enrichment, requiring its dismissal).

### E.   The Court Must Dismiss Ms. Lohan's Claims for an Injunction.

Ms. Lohan seeks an injunction to enjoin the Song's distribution and broadcast and to force defendants to turn over all recordings of the Song.  (Compl., ¶¶ 27, 36(a)-(c), 44(a)-(c)). Ms. Lohan's request for an injunction fails on the face of the Complaint.

### 1.   Ms. Lohan Cannot Establish that She Is Entitled to an Injunction.

Ms. Lohan seeks a draconian injunction to restrain defendants' free speech.  Because she requests a mandatory injunction that would disrupt the status quo, she must show a "clear" or "substantial" likelihood of success on the merits and irreparable harm absent injunctive relief, with a balance of hardships tipping decidedly in her favor.  *See Great Earth Int'l Franchising Corp. v. Milks Devs., Inc.*, 302 F. Supp. 2d 248, 251 (S.D.N.Y. 2004) ("To obtain a mandatory injunction, Second Circuit authority requires 'that the movant demonstrate a greater likelihood of success.'"); *SEC v. Unifund SAL,* 910 F.2d 1028, 1039 (2d Cir. 1990) (mandatory injunction requires "a more substantial showing of likelihood of success").

Here, Ms. Lohan cannot establish any of these elements.  First, she has no plausible basis to proceed with her Section 51 claim.  Second, the only violation of her common law rights alleged in the Complaint is a claim for the intentional infliction of emotional distress.  This claim is equally unsustainable.  Third, because the Song has been widely distributed worldwide, the balance of equities also weighs in favor of defendants, as it would be extremely burdensome and

largely impossible to recall the album from stores and prevent its broadcast on internet and television media, over which defendants have no control. *See Smith v. Goro*, 66 Misc. 2d 1011, 1016 (N.Y. Sup. Ct. 1970) (where material has been widely disseminated, the balance of equities favors defendants).

Finally, Ms. Lohan cannot establish irreparable harm because of the passing mention of her name in the Song.  Ms. Lohan, as a public figure, is continually the subject of parody and comedy (as are many celebrities), far in excess of the innocuous lyric at issue.

Thus, the injunctive relief sought in Counts I, III, and IV must be rejected with prejudice because Ms. Lohan cannot establish any – let alone a "clear" or "substantial" – likelihood that she would prevail on her common law and statutory claims, cannot establish irreparable harm, and the equities favor defendants. *See Univ. of Notre Dame*, 22 A.D.2d at 457-58 (reversing injunction under Section 51 entered to enjoin release of film and further publication of book because "[i]t is enough that the work is a form of expression 'deserving of substantial freedom – both as entertainment and as a form of social and literary criticism' . . . and we are not prepared to hold that exercise of the freedom in the instant circumstances infringes on rights which equity should protect.") (citations omitted).

### 2.      Ms. Lohan's Request for Monetary Relief is Fatal to Her Claim for Injunctive Relief for Violation of Her Common Law Rights.

Additionally, Ms. Lohan cannot establish irreparable harm in connection with her requested injunction for defendants' alleged intentional infliction of emotional distress because she cannot overcome the bedrock principle that irreparable harm cannot be established, where, as here, monetary damages are a complete remedy. *See, e.g., Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) ("Irreparable harm means injury for which a monetary award cannot be adequate compensation . . . Therefore, where monetary damages may provide adequate compensation, a

preliminary injunction should not issue.") (quotations omitted); *Mr. Dees Stores, Inc. v. A.J. Parker, Inc.*, 159 A.D.2d 389, 389 (1st Dep't 1990) (affirming the trial court's denial of a preliminary injunction because "[a]ssuming plaintiff was to prevail on the merits, there ha[d] been no showing that it could not be adequately compensated by money damages"). Ms. Lohan simply cannot overcome the fact that, even if she were somehow to prevail on her claim that defendants violated her "common law rights," she can be fully and adequately compensated through monetary relief.

**F.     Ms. Lohan's Requests for an Accounting and Attorneys' Fees Are Meritless.**

Ms. Lohan asserts that she is entitled to an accounting "for all proceeds derived from [defendants'] wrongful conduct" without asserting any basis for this relief. (Compl., ¶ 44(d)). The "right to an accounting rests upon a trust or fiduciary relationship and a duty" or "special circumstances . . .warranting equitable relief in the interest of justice." *Grossman v. Handprints-N.J., Inc.*, 90 A.D.2d 95, 104-05 (2d Dep't 1982) (plaintiff failed to plead the existence of a fiduciary relationship, and no special circumstances existed to justify the equitable relief of an accounting). Ms. Lohan must also adequately allege that legal remedies are inadequate. *See Zucker v. Katz*, 708 F. Supp. 525, 536 (S.D.N.Y. 1989) (applying New York law and dismissing claim for accounting because adequate legal remedy existed).

Here, the Complaint contains no allegations – even conclusory ones – to state a claim for an accounting. The reason for this is simple: no plausible facts exist to support an accounting claim because she and defendants do not have a fiduciary relationship, and no special circumstances exist to justify her request for an accounting. Ms. Lohan and defendants are not in privity and do not enjoy any form of relationship whatsoever. Moreover, Ms. Lohan has requested monetary damages, underscoring that her baseless request for accounting fails on the

face of the Complaint. (Compl., ¶¶ 27, 31, 36(d), 44(e)). The analysis is thus straightforward: Ms. Lohan's attempt to require defendants to submit to an accounting fails as a matter of law and must be dismissed with prejudice.

Finally, New York law precludes Ms. Lohan's claim for attorneys' fees because it cannot be legally supported by any substantive theory of recovery. It is hornbook law that "attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule." *Hooper Assocs., Ltd. v. AGS Computers, Inc.,* 74 N.Y.2d 487, 491 (N.Y. 1989); *see also Tevdorachvili v. The Chase Manhattan Bank,* 103 F. Supp. 2d 632, 644 (E.D.N.Y. 2000) (Glasser, J.) (dismissing legally unsupported claim for attorneys' fees); *Leisure Direct, Inc. v. Glendale Capital, LLC,* 2010 U.S. Dist. LEXIS 99178, at *19-20 (E.D.N.Y. July 27, 2010) (Orenstein, J.) (dismissing claim for attorneys' fee because plaintiff failed to support request with contractual agreement, statute, or court rule) (collecting cases).

Ms. Lohan can provide no support for her tacked-on request for attorneys' fees. (*See* Compl. at ¶ 44(f)). No statute or court rule authorizes Ms. Lohan's recovery of attorneys' fees in this action. Therefore, Ms. Lohan's request for attorneys' fees must be rejected.

### III.   CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court dismiss the Complaint with prejudice.

Dated:  January 17, 2012
New York, New York

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

By: _____

James G. Sammataro, Esq.
Marcos Daniel Jiménez, Esq.
Courtney Caprio, Esq.
(*pro hac vice* admission pending)
1441 Brickell Avenue, Suite 1420
Miami, Florida 33131
(305) 377-1666

Sarah Gibbs Leivick, Esq.
1633 Broadway
New York, New York 10019
(212) 506-1700
*Attorneys for Defendants*

To:

Stephanie G. Ovadia, Esq.
Ovadia Law Firm, P.A.
2160 Hempstead Turnpike
East Meadow, New York 11554

Anand Ahuja, Esq.
101-70 Lefferts Boulevard, Suite #2
Richmond Hill, NY 11419