UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

LINDSAY LOHAN,                                              11 Civ. 5413 (DRH) (ARL)

                              Plaintiff,             **PLAINTIFF'S**
                                                          **OPPOSITION**
                                                           **TO DEFENDANT'S**
     -against-                                          **MOTION TO DISMISS**

ARMANDO CHRISTIAN PEREZ a/k/a PITBULL,
SHAFFER CHIMERE SMITH JR. a/k/a NE-YO,
NICK VAN DE WALL  a/k/a  AFROJACK,
J RECORDS,
SONY MUSIC ENTERTAINMENT,
SONY MUSIC HOLDINGS INC.,
RCA MUSIC GROUP,
POLO GROUNDS MUSIC,
POLO GROUNDS MUSIC PUBLISHING, INC.,
POLO GROUNDS MUSIC, INC.,
MR. 305, Inc., MR. 305 ENTERPRISE, INC., and
JOE JOHN and JANE JOHN, 1 THROUGH X.

                                  Defendant(s),
-------------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

<u>TABLE OF CONTENTS</u>

1.  PRELIMINARY STATEMENT AND PROCEDURAL HISTORY....................................................1


2.  LEGAL MEMORANDUM.....................................................................................................3

    A.  Legal Standard...........................................................................................................3

    B.  First Amendment.......................................................................................................3

    C.  History and Recent Developments in the Right of Publicity in the USA and New York............9

    D.  The Trademark Law to Protect Persona Rights........................................................16


3.  Argument and Conclusion..............................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                        **Page(s)**

*Cohen v. California*,

403 U.S. 15 (1971),                                                   3


*Lebron v. National Railroad Passenger Corporation.*

513 U.S. 374 (1995)                                                  4


*The State of South Carolina v. Ronald P. White*

348 S.C. 532, 560 (2002)                                             *4*


*Brandenburg v. Ohio*,

395 U.S. 444 (1969)                                                  4


Keller v. Electronic Arts

(2010 U.S. Dist. LEXIS 10719, 38 Media L. Rep. 1353 (N.D. Cal. Feb. 8, 2010).   5


*Carson v. Here's Johnny Portable Toilets, Inc.,*

*698 F.2d 831*                                                        *6*


*Abdul-Jabbar v. General Motors Corp.,*

85 F.3d 407 (9th Cir. 1996)                                          6


*Allen v. National Video, Inc.,*

*610 F.Supp. 612 (S.D.N.Y. 1985)*                                    *6*

*Ali v. Playgirl,*

447 F.Supp. 723 (D.C.N.Y. 1978).                                                    6


*Hoffman v. Capital Cities, Inc.,*

33 F.Supp.2d 867 (C.D.Cal. 1999).                                                   6


*Midler v. Ford Motor Co.,*

849 F.2d 460 (9th Cir. 1988)                                                        7


*Waits v. Frito-Lay, Inc.,*

978 F.2d 1093 (9th Cir. 1992)                                                       7


*White v. Samsung Electronics America, Inc.,*

971 F.2d 1395 (9th Cir. 1992)                                                       7


*The Martin Luther King, Jr. Center for Social Change, Inc. v. American Heritage Products, Inc.,*

250 Ga. 135 (1982)                                                                  7


*Zacchini v. Scripps-Howard Broadcasing Co.,*

433 U.S. 562 (1977)                                                                 8


 Pirone v. MacMilian, Inc.,

894 F. 2d 579)2d. Cir. 1990)                                                        8


Laboratories, Inc. v. Topps Chewing Gum, Inc.

202 F.2d 866 (2nd Cir. 1953)                                                        9

*Carson v. Here's Johnny Portable Toilets, Inc.,*

698 F.2d 831 (6th Cir. 1983).                                                     11


*Hirsch v. S. C. Johnson & Sons, Inc.,*

205 U.S.P.Q. 920 (1979)                                                           11


*Onassis v. Christian Dior-New York, Inc.,*

122 Misc.2d 603, 472 N.Y.S.2d 254 (1984), 110 A.D.2d 1095, 488 N.Y.S.2d 843 (1985) 11


*Estate of Elvis Presley v. Russen,*

513 F. Supp. 1339 (D.N.J. 1981) (Presley imitator)                                11


*Allen v. National Video, Inc.,*

610 F. Supp. 612 (S.D.N.Y. (I985)                                                 11


*Ali v. Playgirl,*

447 F.Supp. 723 (D.C.N.Y. 1978)                                                   12.


*Hoffman v. Capital Cities, Inc.,*

33 F.Supp.2d 867 (C.D.Cal. 1999)                                                  12


*Midler v. Ford Motor Co.,*

849 F.2d 460 (9th Cir. 1988)                                                      13


*Waits v. Frito-lay, Inc.,*

978 F.2d 1093 (9th Cir. 1992), *ceft.* denied, 506 U.S. 1080 (1993)               13

*Oliveira v. Frito-Lay, Inc.,*

43 U.S. P.Q.2d 1455 (S.D. N.Y. 1997), 251 F 3d 56 (2d Cir. 2001)                    14


*Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc.,*

202 F.2d 866 (2d Cir.), *cert. denied,* 346 U.S. 816 (1953).                        14


*Robertson v. Rochester Folding Box Co.*, 171 N.Y. 53B, 54 N.E. 442 (1902)          14

*The Martin Luther King, Jr. Center for Social Change, Inc. v. American Heritage Products, Inc.,*

250 Ga. 135 (1982)                                                                  15.


In *White v. Samsung Electronics America, Inc.,*

971 F.2d 1395 (9th Cir. 1992)                                                       16


*Hoepker v, Kruger*

200 F. Supp. 2d 340 (S.D.N.Y. 2002)                                                 17


Grant v. Esquire, Inc.,

367 F.Supp. 876 (S.D.N.Y.1973)                                                      17


*EBC 1 Inc. V. Goldman Sachs & Co.,*

*5 NY 3d 11, 19 (2005)*                                                             *18.*


Georgia Malone & Company, Inc V. Ralph Rieder,

 AD3D, 2011 WL 2638128, 1st Dept 2011.                                            18


 Sillman v. Twentieth Century Fox, Sillman v. Twentieth Century Fox,

3 N.Y.2d 395, 165 N.Y.S.2d 498 (1957).                                             18

Coely v. Michelin Tire Corp.,

99 A.D. 2d 795, N.Y.S.2d 125 (2d Dep't 1984)                           19.


Weinreich v. A.H. Robbins Co.,

99 A.D. 2d 795, N.Y.S. 2d 125 (2d Dep't 1984)                          19


Blake-Veeder Realty, Inc. vs. Crayford,

110 A.D. 2d 1007, 488 N.Y.S. 2d 295 (3rd Dep't 1985)                  19


Martin v. Briggs,

235 A.D.2d 192, 663 N.Y.S.2d 184 (1st Dep't 1997)                     19


Hourigan v. McGarry,

106 A.D.2d 845, 484 N.Y.S. 2d 243 (3rd Dep't 1984)                   19


Patroleman's Beney. Ass'n v. City of New York,

27 N.Y 2d 414, 318 N.Y.S. 2d 477 (1971)                              19


Harris v. City of New York,

147 A.D. 2d 186, 542 N.Y.S. 2d 550 (1st Dept 1984).                  19


Tiles v. City of New York, Tiles v. City of New York,

262 A.D.2d 174, 692 N.Y.S.2d 326 (1st Dept. 1999).                   19


Buckle v. Buhre Ave Foods Inc.,

648 N.Y.S. 2d 100 (1st Dept. 1996)                                   19

From The Spring 1995 Horace S. Manges Lecture,

The Human Persona as Commercial Property;

The Right of Publicity, March 9, 1995, Columbia University School of Law, at 134.     10

Dean William Prosser's article "Privacy" 48 Cal.L.Rev. 383 (1960)               10.

 Nimmer, The Right of Publicity, 19 LAW & COMTEMP. PROBS. 203 (1954)      14

Warren and Brandeis, The Right to Privacy, 4 Harv. L. Rev. 193 (1890).          14

CPLR § 3211.                                                    18

Section 43(a) of the Lanham Act                                     16

New York Right of Publicity (N.Y. Civ. Rights Law § § 50, 51 )                  16

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

LINDSAY LOHAN,                                               11 Civ. 5413 (DRH) (ARL)

                                        Plaintiff,          **PLAINTIFF'S OPPOSITION
                                                            TO DEFENDANT'S
                                                            MOTION TO DISMISS**

      -against-

ARMANDO CHRISTIAN PEREZ a/k/a PITBULL,
SHAFFER CHIMERE SMITH JR. a/k/a NE-YO,
NICK VAN DE WALL  a/k/a  AFROJACK,
J RECORDS,
SONY MUSIC ENTERTAINMENT,
SONY MUSIC HOLDINGS INC.,
RCA MUSIC GROUP,
POLO GROUNDS MUSIC,
POLO GROUNDS MUSIC PUBLISHING, INC.,
POLO GROUNDS MUSIC, INC.,
MR. 305, Inc., MR. 305 ENTERPRISE, INC., and
JOE JOHN and JANE JOHN, 1 THROUGH X.

                                        Defendant(s),

------------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

    The plaintiff, LINDSAY LOHAN moves this Court to oppose and dismiss defendants',

Armando  Christian Perez a/k/a Pitbull, Shaffer Chimere Smith Jr. a/k/a Ne-Yo, Nick Van de Wall

a/k/a Afrojack, J Records, SONY Music Entertainment, SONY Music Holdings Inc., RCA Music

Group, POLO Grounds Music, POLO Grounds Music Publishing, Inc., POLO Grounds Music, Inc.,

(Hereinafter "Defendants") motion to dismiss plaintiff's complaint, and in support thereof

respectfully state.

### PRELIMINARY STATEMENT AND PROCEDURAL HISTORY

    1.      This action was commenced on August 19, 2011 by filing of the Summons and

1

Verified Complaint by Plaintiff in the State of New York, Supreme Court, Nassau County

(hereinafter the "Complaint"). A copy of the Complaint, dated August 13, 2011 is attached as

**Exhibit "A"**.

2.      That the Complaint was served, as per the executed Stipulation by and between the

plaintiff's attorneys and attorneys for the defendants on October 13, 2011, attorneys for the moving

Defendants

3.      That instead of filing a timely Answer to the Plaintiff's Complaint, Defendants

decided to file their motion with this court to remove this case from New York State, Supreme

Court of Nassau County to United States District Court, Eastern District of New York.

4.      That the Defendants' have  moved to this court with a motion to dismiss plaintiff's

complaint on the grounds that: (a) The song is unquestionably a work of art protected by the First

Amendment; (b) The newsworthiness exception precludes liability under Section 5; (c) Ms.

Lohan's name was not used in Song for purposes of advertising or trade; (d) The fleeting mention

of Ms. Lohan's name in the Song is de minimis.

5.      That There is no doubt that The U.S. Supreme Court has held that non-verbal

expression may sometimes be considered "speech" for the purpose of receiving First Amendment

protection. As a result, symbols, works of visual and written art, and even physical acts may enjoy

the protection of the First Amendment.  The question courts ask in such cases is whether the non-

verbal expression has sufficient elements of communication. Yet, even when the answer is yes, the

Supreme Court has been wary of giving generalized First Amendment protection to *all* non-verbal

expression that conveys a message; otherwise, such protection could conceivably legitimize

harmful, destructive, or otherwise illegal acts motivated by an expressive purpose.  Spray painting

graffiti on a street sign, for example, does not receive First Amendment protection even when it

conveys a clear and distinct message. In the 1971 case of *Cohen v. California*, U. S. Supreme Court Justice John Marshall Harlan II succinctly summarized the inherent subjectivity of determining artistic merit when he stated, "one man's vulgarity is another's lyric."

6.     The court should first note that contrary to the perception of many, the First Amendment does not guarantee the right to express whatever we want, whenever we want. Rather, the Constitution is only a limit on *governmental* acts of censorship. The First Amendment simply would not be an issue, for example, if an owner of a strictly private art gallery took down a work because of viewer complaints. Thus, the initial query in any alleged violation of First Amendment rights is whether or not a governmental authority is involved. ***Lebron v. National Railroad Passenger Corporation.***

7.     For many people, tattoos have important commemorative or even religious significance. Yet despite this communicative purpose, courts have nonetheless upheld many state imposed restrictions on body art. In these cases (none of which have been heard by the U.S. Supreme Court), the restrictions typically apply to the tattoo artist, not to the person receiving the tattoo. The constitutional relevance of this distinction is outlined in the case of ***The State of South Carolina v. Ronald P. White.*** In 1999, Ronald White, a tattoo artist in Florence, South Carolina, drew a tattoo on a man for a local television news broadcast. The act was the first step by Mr. White in his challenge to a South Carolina law that prohibited tattooing except by a licensed physician for cosmetic or reconstructive purposes. Oklahoma is the only other state with such a statute. After the news broadcast, Mr. White was arrested, fined $2,500 and put on five years' probation for violating the state's anti-tattoo law. Mr. White appealed his conviction to the South Carolina Supreme Court, arguing that the statute's outright ban of tattooing violated his First Amendment right to freedom of speech. The state court affirmed the conviction, holding that the

3

*process* of getting a tattoo, as opposed to the tattoo itself, was not sufficiently communicative to be considered "speech".

8.      Art is intended to be evocative.  But if a work of art evokes a violent or otherwise illegal response, should the artist be held responsible for the actions of his or her audience?  Is this what Justice Oliver Wendall Holmes, Jr. had in mind when he stated, "[t]he most stringent protection of free speech would not protect a man in falsely shouting fire in a theater and causing a panic"?  In the case of *Brandenburg v. Ohio*, the U. S. Supreme Court held that expression advocating violent or otherwise illegal behavior only loses First Amendment protection if the expression is *directed* to inciting or producing *imminent* lawless behavior, and is *likely* to result in such action.

9.      The threshold of consciousness is the dividing line between something that can be processed by the conscious mind and something that enters the subconscious mind without any such processing.  A hidden message is not intense enough to produce a sensation but has sufficient intensity to influence the behavior and mental processes of one's mind.  The decisions the conscious mind makes are based upon the knowledge and reasoning skills one has developed through experience and education.  The subconscious mind does not have these reasoning skills, and thus has no ability to distinguish right from wrong, or judge the information it receives.  When a suggestion enters the subconscious mind, it is taken as the truth and stored for future reference.  For this reason, the strength of hidden messages has virtually no boundaries, and can be dangerous when used improperly.

10.      While a celebrity's right was once limited to his or her name, signature and face, protection is now expands to "likeness" and "person" and, in some cases, to voice and vocal style.  Courts all over the nations, but more specifically in the states such as New York and California are

4

flooded with these types of cases.  A federal judge, recently, denied a motion from Electronic Arts

and the National Collegiate Athletic Assn. to dismiss a lawsuit by Keller.  The former NCAA

athlete stirred up controversy when he filed his lawsuit in May, 2009, against EA and the NCAA,

alleging that the two profited from the likenesses of college athletes without compensating them.

The judge for the U.S. Federal Court in the Northern District of California, Claudia Wilken,

disagreed with defendants reasoning, for the most part. Keller v. Electronic Arts (2010 U.S. Dist.

LEXIS 10719, 38 Media L. Rep. 1353 (N.D. Cal. Feb. 8, 2010).

11.    All states, whether they have statutory or common-law schemes, protect the name

and likeness of an individual.  To meet the ingenuity of advertisers and others eager to benefit from

the aura of celebrity, courts have expanded what is considered to be a name or likeness.  In *Carson*

*v. Here's Johnny Portable Toilets, Inc., 698 F.2d 831,* the court held "if the celebrity's identity is

commercially exploited, there has been an invasion of the right whether his name or likeness is

used."

12.    In *Abdul-Jabbar v. General Motors Corp.,* 85 F.3d 407 (9th Cir. 1996), the court

held that a name is an integral part of one's identity, and it cannot be "abandoned," despite a failure

to use it. *Allen v. National Video, Inc., 610 F.Supp. 612 (S.D.N.Y. 1985),* deals with the use of a

celebrity look-alike can violate a celebrity's right of publicity. National Video created an ad

campaign around a Woody Allen look-alike who was depicted as visiting its video stores. Despite

the existence of a disclaimer in the ad, the court held that National Video violated the Lanham Act

because there was a strong likelihood of consumer confusion regarding whether Allen actually

endorsed National Video.

13.    In *Ali v. Playgirl,* 447 F.Supp. 723 (D.C.N.Y. 1978), the former heavyweight-boxing

champ brought suit for injunctive relief and damages resulting from publication of magazine

5

containing caricatured depiction of an African-American man seated in the corner of a boxing ring, sans boxing trunks. The court held for Ali, ruling that under New York law, the definition of "portrait" in a tort action for appropriation of likeness is not limited to actual photos.

14.     In *Hoffman v. Capital Cities, Inc.,* 33 F.Supp.2d 867 (C.D.Cal. 1999), Defendant digitally altered a photograph appearing originally on a poster for the movie 'Tootsie' to show Hoffman in a silk gown by Richard Tyler, with matching high heel shoes by Ralph Lauren. Hoffman sued under state common and statutory law and the Lanham Act. The court rejected the defendant's First Amendment and newsworthiness defenses because they did not apply to knowingly false speech. The court held that Hoffman suffered actual damage to his property right by not being able to reap the commercial benefit of his own personality.

15.     In *Midler v. Ford Motor Co.,* 849 F.2d 460 (9th Cir. 1988), Ford Motor, after unsuccessfully seeking the services of Bette Midler for a car commercial, hired one of her backup singers to imitate her voice singing "Do You Want to Dance". The court did not go so far as to hold that every imitation of a voice in an ad is actionable, but held "when a distinctive voice of a professional singer is widely known and is deliberately imitated in order to sell a product, the sellers have appropriated  what is not theirs and have committed a tort in California".

16.     In *Waits v. Frito-Lay, Inc.,* 978 F.2d 1093 (9th Cir. 1992), in a fact pattern similar to Midler, Frito Lay hired a Tom Waits sound-alike to sing in a Doritos commercial. Waits brought and won claims both for voice misappropriation under the common law right of publicity and false endorsement under the Lanham Act § 43(a).

17.     In *White v. Samsung Electronics America, Inc.,* 971 F.2d 1395 (9th Cir. 1992), Samsung used a robot dressed in a blond wig, evening gown, and jewelry posed in front of a game board similar to that of "Wheel of Fortune". White sued under state common and statutory right of

publicity and the Lanham Act. The court found for White, holding that Samsung had no right to invoke White's identity in the public's minds without her permission.

18.    In *The Martin Luther King, Jr. Center for Social Change, Inc. v. American Heritage Products, Inc.,* 250 Ga. 135 (1982), plaintiff sought an injunction prohibiting defendant from selling small sculptures of Martin Luther King, Jr. without its permission. Defendant argued that King's right of publicity ended at his death. The court held that the right of publicity survives the death of its owner, and is inheritable and devisable. Driving this decision was the court's desire to prevent free riders from benefiting from a celebrity's untimely death.

19.    In *Zacchini v. Scripps-Howard Broadcasting Co.,* 433 U.S. 562 (1977), Zacchini refused to give a news reporter permission to tape his human cannonball act. The reporter taped all 15 seconds of Zacchini's act and it was broadcast on the evening news. Zacchini sued, claiming misappropriation of his professional property. The court held that the newsworthiness exception to the right of publicity did not apply because showing the entire act undermined Zacchini's ability to make a living.

20.    Without ever seeking, much less obtaining, Woody Allen's permission or consent, American Apparel disseminated billboard and Internet advertisements containing Mr. Allen's image and prominently displayed said images on billboards in the Cities of New York and Los Angeles, California, as well as on American Apparel's Internet website. Allen sued American Apparel in the Southern District of New York for violation of his right of publicity under New York's Civil Rights Law §51 and §43(a) of 15 U.S.C. §1125(a), the Lanham Act. Allen alleged that American Apparel by its President and Chief Executive Officer, Dov Charney, knowingly used the image, likeness of Plaintiff Woody Allen for trade and advertising purposes without Mr. Allen's consent. The Case got settled on the eve of trial, recently.

21.     §32 of Lehman Act provides protection for registered mark whereas § 43(a) provides protection for unregistered marks. In Pirone v. MacMilian, Inc., 894 F. 2d 579)2d. Cir. 1990), the Court stated that plaintiff may succeed on claim under §1125(a) for infringement of the unregistered mark of his likeness or image. To illustrate, in Pirone the estate of the famous baseball player Babe Ruth brought suit against the manufacturer of a pocket calendar bearing the photograph of Babe Ruth, among other famous baseball players, claiming trademark infringement under §32 (registered marks) and 43(a) (unregistered mark), the Second Circuit noted that claims under §43(a) are broader than those made under §32, inasmuch as they cover a broader array of violation. *Id.* The court went on to state that the crucial determinant in an action for trademark infringement or unfair competition is whether there is any likelihood that an appreciable number of ordinary prudent purchasers are likely to misled, or indeed simply confused, as to the source of the goods in question. In order to be confused, a consumer need not believe that Ruth estate actually produced the calendar. The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement.

22.     Section 43(a) of the Lanham Act prohibits false endorsements. Section 43(a) protects individuals against outright theft of identity and unauthorized imitations. Although the standards for prevailing on a state right of publicity claim may vary from state to state, a plaintiff generally need not demonstrate a likelihood of consumer confusion.

<u>**History and Recent Developments in the Right of Publicity**</u>
<u>**in the United States and New York**</u>

23.     The phrase "right of publicity" was coined by Judge Jerome Frank in Haelean Laboratories, Inc. v. Topps Chewing Gum, Inc. 202 F.2d 866 (2nd Cir. 1953). Following New York law, Judge Frank delineated the distinction between the "right of publicity" and the "right of

privacy." New York's publicity law enabled individuals to protect themselves from unauthorized commercial appropriation of their personas. Judge Frank thereby recognized an independent common law right protecting economic interests rather than the personal, emotional interests associated with the right of privacy.

24.     Unlike the right of privacy, which is a personal right, the right of publicity is generally regarded as a property right. While damages in privacy cases are measured by emotional distress, damages in publicity cases are measured by the commercial injury to the business value of personal identity. J. Thomas McCarthy says, "[p]rivacy rights are personal rights. Damage is to human dignity." From The Spring 1995 Horace S. Manges Lecture, The Human Persona as Commercial Property; The Right of Publicity, March 9, 1995, Columbia University School of Law, at 134. McCarthy continues: "The right of publicity is not . . . just another kind of privacy right. It . . . is a wholly different and separate legal right." 19 COLUM.-VLA J.L. & ARTS 129. Infringement damages are therefore determined by the fair market value of the plaintiff's identity, the infringer's profits, and damage to the licensing opportunities for the plaintiff's identity.

25.     Dean William Prosser's article "Privacy" 48 Cal.L.Rev. 383 (1960) expanded and refined the concept of right to privacy, identifying the tort of 'Appropriation of an individual's name or likeness for personal gain'.

26.     The right of publicity has been defined as the right of every person to control and benefit from the commercial use of his or her identity. This right is an important tool for celebrities with a significant public "persona" [1] to reap economic rewards from their fame. "Celebrities" (be

---

[1]. There is a split among the states as to whether a person's name, persona or likeness must have commercial value in order to sustain a right of publicity claim. The majority view is that no independent commercial value need be shown. See, e.g., *Villalvos v. Sundance Assoc. Inc.*, The Odyssey Group, 31 Media L Rep. 1274, 2003 U.S. Dist LEXIS 387 (N.D. 111. January 10, 2003) (finding no intrinsic value need be shown).

they movie or TV stars, rock singers or sports figures, models or the super rich, politicians or the briefly famous) not only sell tickets and newspapers, but what is more germane to our discussion, they also sell products.

27.     Therefore, the ability and the extent to which a celebrity can control the use of his or her of "persona" in a commercial context, the greater is the potential economic reward of his or her fame. By the same token, there are significant economic advantages to companies that obtain licenses for or otherwise own the right to use some aspect of a celebrity persona, whether to endorse its sneakers or auto mufflers, or to include an aspect of that persona on an article of clothing or a hockey stick. This economic value requires the ability to prevent others from using the celebrity's persona for free.

28.     Most of the states, whether they have statutory or common-law schemes, protect the name and likeness of an individual. To meet the ingenuity of advertisers and others eager to benefit from the aura of celebrity, courts have expanded what is considered to be a name or likeness.

29.     The law has continued to expand the breadth of the aspects of persona which are protected from unlicensed commercial exploitation, thus increasing the economic value of a celebrity persona.  The law has long protected from exploitation the use of another's name and "likeness".  To meet the ingenuity of advertisers and others eager to benefit from the aura of a celebrity, the courts have expanded what is considered the use of a name[2] or likeness[3].

---

[2]. Even where a full name is not used, liability has been found if the plaintiff is identifiable from the use. *Carson v. Here's Johnny Portable Toilets, Inc.,* 698 F.2d 831 (6th Cir. 1983). The court recognized that a catchphrase was an identifiable attribute considered part of celebrity's right of publicity. The phrases "Here's Johnny" and "World's Foremost Comedian" used for portable toilets held to violate the right of publicity of Johnny Carson because the slogans were considered an integral part of Carson's identity. The court held "if the celebrity's identity is commercially exploited, there has been an invasion of the right whether his name or likeness is used"; *Hirsch v. S. C. Johnson & Sons, Inc.,* 205 U.S.P.Q. 920 (1979) (nickname "Crazylegs" used in connection with defendant's shaving gel identified the football player Elroy Hirsch).

30.     *Allen v. National Video, Inc., 610 F.Supp. 612 (S.D.N.Y. 1985),* deals with the use of

a celebrity look-alike can violate a celebrity's right of publicity. National Video created an ad

campaign around a Woody Allen look-alike who was depicted as visiting its video stores. Despite

the existence of a disclaimer in the ad, the court held that National Video violated the Lanham Act

because there was a strong likelihood of consumer confusion regarding whether Allen actually

endorsed National Video.

31.     In *Ali v. Playgirl*, 447 F.Supp. 723 (D.C.N.Y. 1978), the former heavyweight-boxing

champ brought suit for injunctive relief and damages resulting from publication of magazine

containing caricatured depiction of an African-American man seated in the corner of a boxing ring,

sans boxing trunks. The court held for Ali, ruling that under New York law, the definition of

"portrait" in a tort action for appropriation of likeness is not limited to actual photos. The court held

that the nude photo was merely used to attract attention for the purpose of trade, so the defendant

could not use the defense that it used the photo in connection with reporting the news or a

newsworthy event.

32.     In *Hoffman v. Capital Cities, Inc.*, 33 F.Supp.2d 867 (C.D.Cal. 1999), Defendant

digitally altered a photograph appearing originally on a poster for the movie 'Tootsie' to show

Hoffman in a silk gown by Richard Tyler, with matching high heel shoes by Ralph Lauren.

Hoffman sued under state common and statutory law and the Lanham Act. The court rejected the

defendant's First Amendment and newsworthiness defenses because they did not apply to

---

[3] The terms used include picture, portrait, image, photograph, as well as likeness. Courts have held that use of celebrity look-alikes in advertising is use of a likeness which violates rights of publicity. *Onassis v. Christian Dior-New York, Inc.,* 122 Misc.2d 603, 472 N.Y.S.2d 254 (1984), aff'd mem., 110 A.D.2d 1095, 488 N.Y.S.2d 843 (1985) (look-alike of Jackie Onassis was used side-by-side with real celebrities in ad). See also, *Estate of Elvis Presley v. Russen,* 513 F. Supp. 1339 (D.N.J. 1981) (Presley imitator); *Allen v. National Video, Inc.,* 610 F. Supp. 612 (S.D.N.Y. (1985) (false endorsement found when a look-like of Woody Allen used in TV commercial).

knowingly false speech. The court held that Hoffman suffered actual damage to his property right by not being able to reap the commercial benefit of his own personality.

33.    Courts all over the nations, but more specifically in the states such as New York and California are flooded with these types of cases. A federal judge, recently, denied a motion from Electronic Arts and the National Collegiate Athletic Assn. to dismiss a lawsuit by Keller. The former NCAA athlete stirred up controversy when he filed his lawsuit last May against EA and the NCAA, alleging that the two profited from the likenesses of college athletes without compensating them. The judge for the U.S. Federal Court in the Northern District of California, Claudia Wilken, disagreed with defendants reasoning, for the most part. Keller v. Electronic Arts (2010 U.S. Dist. LEXIS 10719, 38 Media L. Rep. 1353 (N.D. Cal. Feb. 8, 2010).

34.    Without ever seeking, much less obtaining, Woody Allen's permission or consent, American Apparel disseminated billboard and Internet advertisements containing Mr. Allen's image and prominently displayed said images on billboards in the Cities of New York and Los Angeles, California, as well as on American Apparel's Internet website. Allen sued American Apparel in the Southern District of New York for violation of his right of publicity under New York's Civil Rights Law §51 and §43(a) of 15 U.S.C. §1125(a), the Lanham Act. Allen alleged that American Apparel by its President and Chief Executive Officer, Dov Charney, knowingly used the image, likeness of Plaintiff Woody Allen for trade and advertising purposes without Mr. Allen's consent. The Case got settled on the eve of trial, recently.

35.    New York State added "Voice" to its list of protected elements effective November 1, 1995.  New York Civil Rights Law § 51. Voice has also been protected under common law. *Midler v. Ford Motor Co.,* 849 F.2d 460 (9th Cir. 1988) (Bette Midler sound-alike in Ford commercial). The key to liability is a finding by the court that the voice is identifiable by the public

12

with the celebrity. *Waits v. Frito-lay, Inc.,* 978 F.2d 1093 (9th Cir. 1992), *ceft.* denied, 506 U.S. 1080 (1993) (singer Tom Waits voice Imitated in commercial for tortilla chips).

36.     Even where "voice" is not protected, either by statute or the common law, the court may find liability if the use of the voice creates an implied endorsement. *Oliveira v. Frito-Lay, Inc.,* 43 U.S. P.Q.2d 1455 (S.D. N.Y. 1997), dismissed by, in part, 50 U.S.P.Q.2d 1152 (S.D.N.Y. 1999), *aff'd'* in part, vacated in part, 251 F 3d 56 (2d Cir. 2001) (use of recording of *Astrid Giiberto* singing "Girl from panama").

37.     It should be noted that even under the amended New York statute, use of a copyrighted record containing a singer's voice in an advertisement should not violate the signer's right of publicity (provided that there is no implied endorsement caused by such use): [N]othing contained in this article shall be so construed as to prevent any person, firm or corporation ... from using the name, portrait, picture or voice of any author, composer or artist in connection with his literary, musical or artistic productions which he has sold or disposed of with such name, portrait, picture or voice used in connection therewith. NY Civil Rights Law § 51.3838

38.     The right of publicity originally arose as a right of privacy-the right to be left alone[4]. During the 1950s, the courts and commentators recognized that there was a separate right, the right of publicity, which protects a person's commercial interest in the value of his or her persona, separate and apart from a person's right to privacy. *Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc.,* 202 F.2d 866 (2d Cir.), *cert. denied,* 346 U.S. 816 (1953). See also, Nimmer, The Right

---

[4]. Over one hundred years ago, Samuel D. Warren and Louis D. Brandeis wrote a law review article in favor of a right of privacy, Warren and Brandeis, The Right to Privacy, 4 Harv. L. Rev. 193 (1890). After the New York Court of Appeals refused to recognize such right under the common law, *Robertson v. Rochester Folding Box Co.,* 171 N.Y. 53B, 54 N.E. 442 (1902) (unauthorized use of a young woman's photograph in advertisements for bags of flour), the New York State legislature enacted a statute in 1903 which prohibits use of a person's name, portrait or picture for advertising purposes or purpose of trade without the person's written consent. N.Y. Civil Rights Law §§ 50 and 51. That substantially remains the law in New York State to this day.

of Publicity, 19 LAW & COMTEMP. PROBS. 203 (1954), an early article discussing why the then existing privacy, trademark and unfair competition law did not adequately address the right of publicity. Many of these observations remain valid today, In particular, since "privacy" is a personal right, it does not deal with its economic value-including its value to those to whom the right may have been assigned or licensed. On the other hand, trademark and unfair competition law require a showing of likelihood of confusion or misrepresentation, such as implied endorsement. However, commercial use of a celebrity's persona may be appropriated (including the economic benefit), without there being any implied endorsement or other misrepresentation by that celebrity.

39.     Since the Nimmer article in 1957, courts and state legislatures have come to recognize the need for separate underpinnings for the right of publicity. However, the nature, scope, duration and transferability of "publicity" rights differ from state to state, with many states having neither a statute nor any case law at all.

40.     The aspects of persona that are protected by state statutes and the duration of those rights differ significantly from state to state, often depending upon whether the statute was intended to be grounded in "right of privacy" or "right of publicity" concepts. At a minimum, the statutes protect name and likeness. Many including New York state now protect voice as well.

41.     In a case of apparent first impression in New York state courts, a Manhattan judge has ruled that a right-to-privacy lawsuit initiated by actor Jerry Orbach against Hilton Hotels may continue, Orbach's death notwithstanding.

"[N]othing in the statute or the cases cited precludes his legal representatives from continuing to press the claim he asserted before he died," Supreme Court Justice Bernard J. Fried wrote in *Orbach v. Hilton Hotels*, 102061/04, quoting the U.S. Southern District decision in *Marx v. Playboy*, 1979 US Dist Lexis 13900.

14

42.     In *The Martin Luther King, Jr. Center for Social Change, Inc. v. American Heritage Products, Inc.*, 250 Ga. 135 (1982), plaintiff sought an injunction prohibiting defendant from selling small sculptures of Martin Luther King, Jr. without its permission. Defendant argued that King's right of publicity ended at his death. The court held that the right of publicity survives the death of its owner, and is inheritable and devisable. Driving this decision was the court's desire to prevent free riders from benefiting from a celebrity's untimely death.

## The Trademark Law to Protect Persona Rights

43.     Section 43(a) of the Lanham Act (as well as state unfair competition law) has also been used to protect persona rights. Courts have utilized §43(a) in cases where state statutory or common law rights of publicity were not available or failed to cover the specific type of infringing activity, or as an additional ground for relief[5].

44.     In *White v. Samsung Electronics America, Inc.*, 971 F.2d 1395 (9th Cir. 1992), Samsung used a robot dressed in a blond wig, evening gown, and jewelry posed in front of a game board similar to that of "Wheel of Fortune". White sued under state common and statutory right of publicity and the Lanham Act. The court found for White, holding that Samsung had no right to invoke White's identity in the public's minds without her permission.

45.     The Right to Privacy and Right to Publicity in New York are defined under New York Right of Publicity (N.Y. Civ. Rights Law § § 50, 51. New York led the way with the 1903

---

[5]. *Allen v. National Video, Inc.,* 610 F. Supp. 612(S.D.N.Y. 1985) and *Allen v. Men's World Outlet, Inc.,* 679 F. Supp. 360 (S.D.N.Y. 1988) (in both cases use of look-alikes in advertising were held to be infringing); *Cher v. Forum International, Ltd,,* 692 F.2d 634 (9th Cir. 1982), cert. denied, 462 U.S. 1120 (1983) (involving unauthorized use of Cher's photograph to promote the magazine).

enactment of New York Civil Right Law sections 50 and 51. This statute prohibits the use of the name, portrait, or picture of any living person without prior consent for "advertising purposes" or "for the purposes of trade." The basic elements, therefore, under New York Right of Publicity (N.Y. Civ. Rights Law § § 50, 51 are (a) usage of plaintiff's name, portrait, picture, or voice; (b) within the state of New York; (c) for purposes of advertising or trade; (d) without plaintiff's written consent. Damages Pursuant to N.Y. Civ. Rights Law § 51 are: (a) Injunctive relief; (b) Compensatory; (c) Fair market value of what the defendant appropriated and Defendant's profits; (d) Mental Distress; and (e) Exemplary damages for "knowing" use.

46. In *Hoepker v, Kruger* [200 F. Supp. 2d 340 (S.D.N.Y. 2002)], a federal court in New York was called upon to decide whether a photograph of the plaintiff, cropped and used as part. of a collage, violated her rights under the New York right of publicity statute. The court first held that a collage, like a drawing or painting, was a form of art entitled to full First Amendment protection. The court then acknowledged that under California's Saderup test, the collage was transformative enough to be afforded First Amendment protection. However, New York court refused to adopt the Saderup test, stating that courts "should not be asked to draw arbitrary lines between what may be art and what may [not be]. *Id.* at 352

47. Instead, the court offered a slightly different test, requiring a determination of whether the collage had primarily a 'public interest' aspect or a 'commercial' aspect. Presumably, this means that if the importance of the collage can be found primarily in its social usefulness as a work of art, it will receive First Amendment protection. Conversely, if its primary value lies in generating sales through the popularity of the depicted celebrity, the artist may be liable for a violation of the right of publicity statute. In spite of their different emphases, both the New York

and Saderup tests contain the same essential, and difficult, element: they grant or deny First Amendment protection based upon a court's determination of the artistic nature of the work.

48.    In Grant v. Esquire, Inc., 367 F.Supp. 876 (S.D.N.Y.1973) for example, the court found that the mere use of a celebrity's identity could cause embarrassment for which mental distress damages would be available. Grant had taken a public position against reaping commercial profits from the publicity value of his identity. *Id.* 880.

49.    Without ever seeking, much less obtaining, Woody Allen's permission or consent, American Apparel disseminated billboard and Internet advertisements containing Mr. Allen's image and prominently displayed said images on billboards in the Cities of New York and Los Angeles, California, as well as on American Apparel's Internet website. Allen sued American Apparel in the Southern District of New York for violation of his right of publicity under New York's Civil Rights Law §51 and §43(a) of 15 U.S.C. §1125(a), the Lanham Act.

## Argument and Conclusion

50.    In considering defendants' motion to dismiss the complaint under CPLR § 3211. The court must afford the pleadings liberal construction, taking the allegations of the complaint as true and provide plaintiff every benefit of every possible inference. *See EBC 1 Inc. V. Goldman Sachs & Co., 5 NY 3d 11, 19 (2005.*

51.    Unjust enrichment is a quasi-contract theory imposed in equity to prevent injustice in the absence of an actual agreement between the parties. Plaintiff alleges that defendants' were enriched at plaintiff's expense. See, Georgia Malone & Company, Inc V. Ralph Rieder, AD3D, 2011 WL 2638128, 1st Dept 2011.

52.    Historically, it has been the law in the State of New York that the movant seeking summary judgment bears the heavy burden of providing entitlement to such a drastic relief.  Eg.

17

DAL Construction Corporation v. City of New York, 108 A.D.2d 892, 485 N.Y.S. 2d 774 (2d Dep't

1985); Weinreich v. A.H. Robbins Co., 96 A.D.2d 860, 465 N.Y.S. 2d 765 (2d Dep't 1983). The

party seeking judgment is shouldered with the responsibility of establishing as a matter of law, the

absolute absence of genuine issues of fact, thus paving the way for accelerated judgment. Such

drastic relief is inappropriate where, as here, there is any doubt as to the existence of triable fact

issues, Sillman v. Twentieth Century Fox, Sillman v. Twentieth Century Fox, 3 N.Y.2d 395, 165

N.Y.S.2d 498 (1957).

     53.    The movant's burden is heavy and more onerous than the burden in opposition, and

motion for summary judgment, the moving party has the burden of setting forth evidentiary facts to

establish his cause sufficiently to entitle him to judgment as a matter of law. Coely v. Michelin Tire

Corp., 99 A.D. 2d 795, N.Y.S.2d 125 (2d Dep't 1984). The party opposing summary judgment is

not judged against as high a standard of proof as the movant and the standard of proof required of

the party opposing the summary judgment is more flexible than the standard applicable to the

movant. Weinreich v. A.H. Robbins Co., 99 A.D. 2d 795, N.Y.S. 2d 125 (2d Dep't 1984).

     54.    These dual standard are effectuated by granting the party opposing the motion for

summary judgment the "benefit of every favorable inference which may be drawn from the

pleadings, affidavits and examination before trial." Blake-Veeder Realty, Inc. vs. Crayford, 110

A.D. 2d 1007, 488 N.Y.S. 2d 295 (3rd Dep't 1985); Martin v. Briggs, 235 A.D.2d 192, 663

N.Y.S.2d 184 (1st Dep't 1997).

     55.    Moreover, in determining the outcome of an accelerated judgment motion, "the court

must accept as true the evidence presented by the non-moving party." Hourigan v. McGarry, 106

A.D.2d 845, 484 N.Y.S. 2d 243 (3rd Dep't 1984); Patroleman's Beney. Ass'n v. City of New York,

27 N.Y 2d 414, 318 N.Y.S. 2d 477 (1971). "Statements made in opposition to the motion must be

initially accepted as true." <u>Harris v. City of New York</u>, 147 A.D. 2d 186, 542 N.Y.S. 2d 550 (1st Dept 1984).

56.     As case law holds, it is the movant who must make an affirmative showing of entitlement to summary judgment before the opponent's burden of proof is triggered.  It was held that it is not a pedestrian's burden, when opposing an abutting property owner's motion for summary judgment, but rather it is the property owner's burden to show the sidewalk defect was not the cause of pedestrian's fall.  <u>Tiles v. City of New York, Tiles v. City of New York,</u> 262 A.D.2d 174, 692 N.Y.S.2d 326 (1st Dept. 1999). In <u>Buckle v. Buhre Ave Foods Inc.,</u> 648 N.Y.S. 2d 100 (1st Dept. 1996) it was held that it is not the plaintiff's burden to demonstrate the negligence of defendant or the proximate cause of the accident, but rather, it was defendant's burden as movants, to establish the absence of the creation of the dangerous condition or notice thereof, as a matter of law.  Defendants' here have failed to meet their burden.

57.     *Carson, 698 F.2d at 835.* It is not important how the defendant has appropriated the plaintiff's identity, but whether the defendant has done so. Motschenbacher, Midler, and Carson teach the impossibility of treating the right of publicity as guarding only against a laundry list of specific means of appropriating identity. A rule, which says that the right of publicity can be infringed only through the use of nine different methods of appropriating identity merely, challenges the clever advertising strategist to come up with the tenth. Indeed, if we treated the means of appropriation as dispositive in our analysis of the right of publicity, we would not only weaken the right but effectively eviscerate it. The right would fail to protect those plaintiffs most in need of its protection. Advertisers use celebrities to promote their products. The more popular the celebrity, the greater the number of people who recognize her, and the greater the visibility for the product. The identities of the most popular celebrities are not only the most attractive for

19

advertisers, but also the easiest to evoke without resorting to obvious means such as name, likeness, or voice.

58.     That the only thing defendants' papers accomplish is to raise a question of facts and triable issues. How a reasonable person perceives or feels is a triable matter and is to be decided by the Court.

WHEREFORE, Plaintiff demands judgment dismissing the Defendant's motion herein together with the costs and disbursements of this action.

Dated: East Meadow, New York

February 28, 2012

Yours, etc.

By Stephanie G Ovadia Esq
The Law Office of Stephanie Ovadia
Attorneys for Plaintiff
2160 Hempstead Tpke
East Meadow, New York 11554
516 542-2133

To Sarah Gibbs Leivick,ESQ
1633 Broadwa
New York, New York 10019
(212)506-1700
Attorney for Defendant

Marcos Daniel Jimenez ESQ
1441 Brickell Ave
Miami Florida 33131
305 377 1666

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

Index No.: 012185/11
Date Purchased: 8/19/11

-------------------------------------------------------------X

LINDSAY LOHAN,

**SUMMONS**

                                        Plaintiff(s),

Plaintiff designates Nassau
County as the place of trial

          -against-

ARMANDO CHRISTIAN PEREZ a/k/a PITBULL,
SHAFFER CHIMERE SMITH JR. a/k/a NE-YO,
NICK VAN DE WALL a/k/a  AFROJACK,
J RECORDS,
SONY MUSIC ENTERTAINMENT,
SONY MUSIC HOLDINGS INC.,
RCA MUSIC GROUP,
POLO GROUNDS MUSIC,
POLO GROUNDS MUSIC PUBLISHING, INC.,
POLO GROUNDS MUSIC, INC.,
MR. 305 INC., MR. 305 ENTERPRISE, INC., and
JOE JOHN and JANE JOHN, 1 THROUGH X.

The basis of venue is:
NASSAU

Plaintiff resides at:
1749 Old Mill Road
Merrick, NY 11566
County of Nassau

                                        Defendant(s),

-------------------------------------------------------------X

**RECEIVED**

**AUG 1 9 2011**

**NASSAU COUNTY
COUNTY CLERK'S OFFICE**

TO THE ABOVE NAMED DEFENDANT:

          You are hereby summoned to answer the complaint in this action, and to serve a copy of
your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance on the Plaintiffs attorneys within twenty days after the service of this summons,
exclusive of the day of service, where service is made by delivery upon you personally within
the state, or, within 30 days after completion of service where service is made in any other
manner.  In case of your failure to appear or answer, judgment will be taken against you by
default for the relief demanded in the complaint.

Dated:          East Meadow, New York
                August 13, 2011

                                        *Stephanie G Ovadia*

                                        STEPHANIE G. OVADIA, ESQ.
                                        *Attorney for Plaintiff*
                                        2160 Hempstead Turnpike
                                        East Meadow, NY 11554
                                        (516)542-2133

1

_Anand Ahuja_

ANAND AHUJA, ESQ.
*Attorney for Plaintiff*
2160 Hempstead Turnpike
East Meadow, NY 11554
(516)542-2133


**DEFENDANT'S ADDRESSES:**

ARMANDO CHRISTIAN PEREZ
2100 Salzedo Street, Suite 202
Coral Gables, FL 33134-4319

SHAFFER CHIMERE SMITH JR.
3319 Regent Place SW
Atlanta, GA 30311-3093

WILLIAM MORRIS
c/o: NICK VAN DE WALL
1 William Morris Place
Beverly Hills, CA 90212

J RECORDS
550 Madison Avenue
New York, NY 10022

SONY MUSIC ENTERTAINMENT,
550 Madison Avenue
New York, NY 10022

SONY MUSIC HOLDINGS INC.
550 Madison Avenue
New York, NY 10022

RCA MUSIC GROUP
550 Madison Avenue
New York, NY 10022

POLO GROUNDS MUSIC
62 Pyngyp Road
Stony Point, NY 10980

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
------------------------------------------------------------------------X

Index No.:

LINDSAY LOHAN,

Plaintiff,

**VERIFIED**
**COMPLAINT**

-against-

ARMANDO CHRISTIAN PEREZ a/k/a PITBULL,
SHAFFER CHIMERE SMITH JR. a/k/a NE-YO,
NICK VAN DE WALL  a/k/a  AFROJACK,
J RECORDS,
SONY MUSIC ENTERTAINMENT,
SONY MUSIC HOLDINGS INC.,
RCA MUSIC GROUP,
POLO GROUNDS MUSIC,
POLO GROUNDS MUSIC PUBLISHING, INC.,
POLO GROUNDS MUSIC, INC.,
MR. 305, Inc., MR. 305 ENTERPRISE, INC., and
JOE JOHN and JANE JOHN, 1 THROUGH X.

**RECEIVED**

AUG 1 9 2011

NASSAU COUNTY
COUNTY CLERK'S OFFICE

Defendant(s),

------------------------------------------------------------------------X

Plaintiff, LINDSAY LOHAN, by and through her attorneys, STEPHANIE G. OVADIA,

ESQ. and ANAND AHUJA, ESQ., hereby complaining of the defendants herein, respectfully

alleges, upon information and belief, as follows:

## AND AS FOR A FIRST CAUSE OF ACTION

1. That plaintiff, LINDSAY LOHAN, is a resident of the State of New York, County
of Nassau, residing at 1749 Old Mill Road, Merrick, New York.

2. That at all the times mentioned herein, and for many years prior thereto the
plaintiff was and still is a professional actor of good repute and standing in the Screen Actors
Guild.

3. That at all the times mentioned herein defendant, ARMANDO CHRISTIAN PEREZ a/k/a PITBULL, is serving, or has served in the capacity of creator, writer, lyric writer, artist, and singer of the song "Give Me Everything" (hereinafter, "SONG").

4. That at all the times mentioned herein defendant, SHAFFER CHIMERE SMITH JR. a/k/a NE-YO, is serving, or has served in the capacity of creator, writer, lyric writer, artist, and singer of the song "Give Me Everything" (hereinafter, "SONG").

5. That at all the times mentioned herein defendant, NICK VAN DE WALL a/k/a AFROJACK is serving, or has served in the capacity of creator, writer, lyric writer, and producer of the song "Give Me Everything" (hereinafter, "SONG").

6. That at all the times mentioned herein the defendant, J RECORDS is an American record label owned and operated by SONY MUSIC ENTERTAINMENT under SONY MUSIC HOLDINGS, INC.

7. That at all the times mentioned herein the defendant, SONY MUSIC ENTERTAINMENT, was and is registered under SONY MUSIC HOLDINGS, INC., as a corporation under the laws of the State of New York, and maintains its office at 550 Madison Avenue, New York, NY 10022.

8. That at all the times mentioned herein the defendant, J RECORDS, SONY MUSIC ENTERTAINMENT, under SONY MUSIC HOLDINGS, INC., was and now is engaged, directly or indirectly, creation, publishing, management, marketing, and promotions of the "SONG" including but not limited to, writing, acting, producing, distributing, broadcasting, and assisting in any of the aforementioned or similar processes, for the named "SONG".

9. That at all the times mentioned herein the defendant, RCA MUSIC GROUP was

and is owned by SONY MUSIC ENTERTAINMENT, under SONY MUSIC HOLDINGS with

an office within the State of New York.

10.    That at all the times mentioned herein the defendant, RCA MUSIC GROUP,

through SONY MUSIC ENTERTAINMENT, under SONY MUSIC HOLDINGS was and now

is engaged, directly or indirectly, in the creation, publishing, management, marketing, and

promotions of the "SONG" including but not limited to, writing, acting, producing, distributing,

broadcasting, and assisting in any of the aforementioned or similar processes, for the named

"SONG".

11.    That at all the times mentioned herein defendant POLO GROUNDS MUSIC is a

record label, a hip hop and full service entertainment company, owned and registered as a

corporation under POLO GROUNDS MUSIC PUBLISHING, INC., and also under POLO

GROUNDS MUSIC, INC., under the laws of the State of New York, and maintains office

located at 243 west 30th Street, Suite #302 New York, NY10001 for POLO GROUNDS MUSIC

PUBLISHING, INC., and  office located at 62 Pyngyp Road Stony Point, NY 10980 for POLO

GROUNDS MUSIC, INC.

12.    That at all the times mentioned herein POLO GROUNDS MUSIC, POLO

GROUNDS MUSIC PUBLISHING, INC. and POLO GROUNDS MUSIC, INC., is a full

service entertainment company with a focus in the creation, publishing, management, marketing,

and promotions of the "SONG" including but not limited to, writing, acting, producing,

distributing, broadcasting, and assisting in any of the aforementioned or similar processes, for the

named "SONG".

3

13.     That at all the times mentioned herein defendant MR. 305 is a record label registered under MR. 305 ENTERPRISES , INC., a New York State incorporated entity with office located at 331 West 57th Street, Suite 358, New York, NY 10019.

14.     MR. 305 is a record label registered under MR. 305 ENTERPRISES , INC., is a full service entertainment company with a focus in the creation, publishing, management, marketing, and promotions of the "SONG" including but not limited to, writing, acting, producing, distributing, broadcasting, and assisting in any of the aforementioned or similar processes, for the named "SONG".

15.     That defendants, JOE JOHN and JANE JOHN, 1 THROUGH X are individuals, partnerships or corporations, whose existence plaintiff asserts on information and belief but whose exact identity she has been unable to discover.  JOE JOHN and JANE JOHN 1 through X have themselves and/or through their agents, or others, in their individual capacities or collectively, engaged directly or indirectly, in any and/or all aspects of the processes leading to the creation, publishing, management, marketing, and promotions of the "SONG" including but not limited to, writing, acting, producing, distributing, broadcasting, and assisting in any of the aforementioned or similar processes, for the named "SONG".

16.     That at all the times mentioned herein "SONG" was and is a popular song of an international reputation and exerts a great influence throughout United States, and other countries, and in the television, entertainment business and field of communication as well. By virtue of its wide appeal, condemnation, excoriation, disparaging or defamatory statements by the defendants' about the plaintiff are destined to do irreparable harm to the plaintiff.

17.     That at all the times mentioned herein, defendants were, themselves, and/or through their agents, or others, in their individual capacities or collectively, engaged directly or

4

indirectly, in any and/or all aspects of the processes leading to the creation, publishing, management, marketing, and promotions of the "SONG" including but not limited to, writing, acting, producing, distributing, broadcasting, and assisting in any of the aforementioned or similar processes, for the named "SONG" that was aired, through internet, TV, blogs, and various websites, such as www.youtube.com, and radio broadcasts, sale of albums etc., in the State of New York, and that by their such acts, defendants were in their individual capacities or collectively, actually engaged in the conduct of their business in the State of New York, to subject themselves to the jurisdiction of the courts of the State of New York.

18.     That on or about March 18, 2011, defendants were, themselves, and/or through their agents, or others, in their individual capacities or collectively, engaged directly or indirectly, in any and/or all aspects of the processes leading to the creation, publishing, management, marketing, and promotions of the "SONG" including but not limited to, writing, acting, producing, distributing, broadcasting, and assisting in any of the aforementioned or similar processes, for the named "SONG"  that includes an unwarranted, unauthorized, and unfavorable mention of plaintiff's name and personality, and allusions to plaintiff's physical and mental character in named "SONG".

19.     That on or about March 18, 2011, the aforementioned "SONG" was released and aired, through internet, TV, blogs, and various websites, such as www.youtube.com, and radio broadcasts etc., in the State of New York, and elsewhere since named date, and continues into the present.  That appearance of plaintiff's name and characterization in "SONG" causes the plaintiff to be associated and identified in connection with defendants.

5

20.     That on or about June 21, 2011, the aforementioned "SONG" was incorporated and released on defendant ARMANDO CHRISTIAN PEREZ a/k/a PITBULL's album known as "PLANET PIT".

21.     The plaintiff has not given her consent to, or in any way authorized the use of her name and characterization in the "SONG".

22.     The defendants took the plaintiff's name and characterization, and used in "SONG" without plaintiff's consent and authorization.

23.     Defendants have knowingly participated, aided, and conspired with, to violate plaintiff s right of privacy.

24.     The use by defendants of plaintiff's name, characterization, and personality for advertising purposes, and for purposes of trade and commercial benefits, was without the consent, written or oral, of plaintiff or anyone authorized by her to give such consent, was entirely unauthorized, and constitutes a violation of Section 50 of the Civil Rights Law of the State of New York.

25.     Defendants have acted knowingly, willfully and in bad faith.

26.     Defendants, and their agents, have committed tortuous acts within the State of New York, which and are causing injury to plaintiff.

27.     By reason of the foregoing and pursuant to Section 51 of the Civil Rights Law of the State of New York, plaintiff demands that (a) an injunction enjoining defendants from any further unauthorized reproduction, publication, distribution, or other use or exploitation of the "SONG",  and of any other advertisement containing plaintiff's name or characterization or personality, (b) an injunction directing defendants to recall, assemble, and turn over to plaintiff all copies of the "SONG", and of any other advertisement containing plaintiff's name or

6

characterization or personality, including all prints, negatives, and other paraphernalia from

which the "SONG" or any portion thereof, that includes a plaintiff's name or characterization or

personality be produced; and the defendants are also jointly and severally liable to plaintiff for

compensatory and exemplary damages.

## AND AS FOR A SECOND CAUSE OF ACTION

28.    That at all times herein mentioned, plaintiff repeats, reiterates, and re-alleges each

and every allegation as herein set before in paragraphs 1 through 27 both inclusive as set forth at

length herein.

29.    That when defendants maliciously, wickedly, and contriving to injure the

plaintiff,  made unwarranted, unauthorized, and unjustified statements about plaintiff in the

aforementioned "SONG", defendants advanced their commercial and publicity interests, at the

cost of plaintiff's name.

30.    That as a result of defendants' unwarranted, unauthorized, and unjustified use of

plaintiff name and commercial use of plaintiff's name in the aforementioned "SONG",

defendants have been unjustly enriched, at the cost of plaintiff's name.

31    That as a result of defendants' failure to pay plaintiff for defendants' unwarranted,

unauthorized, and unjustified commercial use of plaintiff's name and said characterization in the

aforementioned "SONG", plaintiff has been damaged in a substantial sum of money, to be

determined a court and jury.

32.    That the amount of damages sought in this action exceeds the jurisdictional limits

of all lower courts, which would otherwise have jurisdiction.

## AND AS FOR A THIRD CAUSE OF ACTION

33.    That at all times herein mentioned, plaintiff repeats, reiterates, and re-alleges each

and every allegation as herein set before in paragraphs 1 through 32 both inclusive as set forth at length herein.

34    The defendants' violations of plaintiff's common law rights have been ongoing, at since on or about March 18, 2011, and are causing and threaten to cause immediate and irreparable injury to the plaintiff.

35.    That plaintiff cannot be adequately compensated for defendants' violation of plaintiff's common law rights, by monetary damages. The plaintiff has no adequate remedy at law.

36.    That by reason of the foregoing, the plaintiff is entitled to:

a.    an injunction enjoining defendants and their agents, from any further unauthorized reproduction, distribution, assignment, transmission, or other use or exploitation of the named "SONG", and of any other song or filmed content, containing plaintiff's name or characterization or personality, by any present or future methods or means, and enjoining defendants against licensing others to do the same;

b.    an injunction directing defendants and their agents to recall and turn over to plaintiff all past and present recordings of named "SONG" and of any other song or filmed content containing plaintiff's name or characterization or personality, including all shots and other associated media and paraphernalia from which the "SONG" or any portion thereof, that includes plaintiff's name or characterization or personality, be produced, by any present or future methods;

c.    an injunction directing defendants and their agents to cease the broadcasting, transmissions, and availability of named "SONG", in video, television, online websites, online

8

downloads, etc. and in any and all other present and future forms in which named "SONG" is available;

      d.  that the defendants are also jointly and severally liable to plaintiff for compensatory and exemplary damages.

**AND AS FOR A FOURTH CAUSE OF ACTION**

37.    That at all times herein mentioned, plaintiff repeats, reiterates, and re-alleges each and every allegation as herein set before in paragraphs 1 through 36 both inclusive as set forth at length herein.

38.    That defendants took the plaintiff's name and characterization, and used it in the "SONG" entirely in a distasteful manner to defendants' commercial advantage and purposes, and to the disadvantage of plaintiff, without plaintiff's consent and authorization.

39.    That, in addition to, the unwarranted mentioned of plaintiff's name and personality in named "SONG", defendants have portrayed plaintiff in an offensive and disparaging manner in named "SONG".

40.    That at all times herein mentioned, plaintiff has undergone tremendous emotional distress that has been intentionally inflicted upon plaintiff by defendants' unwarranted, unauthorized, and unjustified use of plaintiff's name and characterization in an offensive and disparaging manner in named "SONG".

41.    That because of defendants' visibility in the entertainment industry, their defamatory statements greatly injured the plaintiff in her profession as an entertainer, and caused her great mental anguish and pain.

42.    That plaintiff has been deprived and damaged in plaintiff's reputation, and

profession etc., by defendants' aforementioned conduct. That plaintiff has suffered monetary loss together with great pain, and attendant anxiety.

43.     That plaintiff has been damaged in a substantial sum of money, to be determined by a court.

44.     That the amount of damages sought in this action exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

**WHEREFORE**, plaintiffs demand judgment against defendants, jointly and severally, on the aforesaid causes, namely; First Cause of Action, Second Cause of Action, Third Cause of Action, Fourth Cause of Action, and Fifth Cause of Action, in a substantial amount to be determined by a court and jury, for defendants' unwarranted, unauthorized, and unjustified defamation and commercial use of plaintiff's name and characterization in the aforementioned "SONG" and granting the following relief:

(a)     A permanent injunction enjoining the defendants, individually or collectively, and each of them, their respective officers, agents, servants, employees and attorneys, and all other persons in concert or participation with them, from the reproduction, distribution, assignment, transmission, or other use or exploitation of the named "SONG", and of any other "SONG" or recorded or filmed content, containing plaintiff's name or characterization or personality, by any present or future methods or means, and permanently enjoining defendants against licensing others to do the same;

(b)     A permanent injunction directing defendants and their agents to recall and turn over to plaintiff all past and present recordings of named "SONG", and of any other "SONG" or recorded or filmed content containing plaintiff's name or characterization or personality, including all masters and other associated media and paraphernalia from which the "SONG" or

10

any portion thereof, that includes plaintiff's name or characterization or personality, be

produced, by any present or future methods;

    (c)    A permanent injunction directing defendants and their agents to cease the

broadcasting, transmissions, playing, and availability of named "SONG", in video, television,

radio, online websites, online downloads, etc. and in any and all other present and future forms in

which named "SONG" is available;

    (d)    Requiring defendants to account to plaintiffs for all proceeds derived from their

wrongful conduct.

    (e)    That plaintiff be awarded against all defendants, jointly and severally

compensatory damages in an amount to be determined by the Court.

    (f)    That plaintiff be awarded interest, the costs and disbursements, and attorneys' fee

of this action, and such other and further relief, as the Court may seem just and proper.

Dated:        August 13, 2011
              East Meadow, New York

                            Yours, etc.,

                            STEPHANIE G. OVADIA, ESQ.
                            *Attorney for Plaintiff*
                            2160 Hempstead Turnpike
                            East Meadow, NY 11554
                            (516)542-2133

                            ANAND AHUJA, ESQ.
                            *Attorney for Plaintiff*
                            101-70 Lefferts Boulevard, Suite #2
                            Richmond Hill, NY 11419
                            (718)850-1952

## VERIFICATION

STATE OF NEW YORK
COUNTY OF NASSAU

I, **LINDSAY LOHAN,** being duly sworn, deposes, under the penalty of perjury, and says:

That I am the plaintiff herein and as such am fully familiar with all of the facts and circumstances relating hereto.

I have read the annexed Complaint; know the contents thereof and the same are true to the best of my knowledge, except those matters therein which are stated to be alleged upon information and belief and as to those matters, I believe them to be true.

My belief as to those matters therein not stated upon knowledge, is based upon the books and records as kept in its ordinary business.

_____
LINDSAY LOHAN, Plaintiff

Sworn to before me on this
13 day of August, 2011

_____
Notary Public

KRISTIN CHIN
Notary Public - State of New York
No. 01CH6222860
Qualified in Nassau County
Commission Expires June 1, 2014

1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

LINDSAY LOHAN,

Plaintiff(s),

-against-

ARMANDO CHRISTIAN PEREZ a/k/a PITBULL,

SHAFFER CHIMERE SMITH JR. a/k/a NE-YO,

NICK VAN DE WALL a/k/a AFROJACK,

J RECORDS,

SONY MUSIC ENTERTAINMENT,

SONY MUSIC HOLDINGS INC,

RCA MUSIC GROUP,

POLO MUSIC,

POLO MUSIC PUBLISHING, INC.,

POLO GROUNDS MUSIC, INC.,

MR 305 INC., MR 305 ENTERPRISE, INC AND

JOE JOHN AND JANE JOHN, 1 THROUGH X.

Defendant(s)

# *OPPOSITION TO MOTION*

Law Offices

Stephanie G Ovadia

Attorney for Plaintiff(s)

2160 Hempstead Turnpike

East Meadow NY 11554

Phone 516 542 2133

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the Courts of New York State, certifies that upon information and belief and reasonable inquiry the contentions contained in the annexed document are not frivolous.

*Stephanie G.Ovadia,Esq.*

SUPREME COURT OF THE STATE OF NEW YORK                    Index No.:
COUNTY OF NASSAU

---

LINDSAY LOHAN,

                              Plaintiff,

        - against -

ARMANDO CHRISTIAN PEREZ a/k/a PITBULL,
SHAFFER CHIMERE SMITH JR. a/k/a NE-YO,
NICK VAN DE WALL a/k/a AFROJACK,
J RECORDS,
SONY MUSIC ENTERTAINMENT,
SONY MUSIC HOLDINGS INC.,
RCA MUSIC GROUP,
POLO GROUNDS MUSIC,
POLO GROUNDS MUSIC PUBLISHING, INC.,
POLO GROUNDS MUSIC, INC.,
MR. 305, Inc., MR. 305 ENTERPRISE, INC., and
JOE JOHN and JANE JOHN, 1 THROUGH X.

                              Defendant(s)

---

### SUMMONS and VERIFIED COMPLAINT

STEPHANIE G. OVADIA, ESQ.
Attorney for Plaintiff
2160 Hempstead Turnpike
East Meadow, NY 11554
516-542-2133

---

Pursuant to 22 NYCRR 130.1.1, the undersigned certified that, upon information and belief, and reasonable inquiry, the contentions contained in the annexed documents are not frivolous.

Dated:

                                        _Stephanie G Ovadia_
                                        STEPHANIE G. OVADIA, ESQ.

---

Service of a copy of the within documents are hereby admitted by the Defendant.

Dated:

                                        _____
                                        Attorney(s) for Defendant(s)

PLEASE TAKE NOTICE

[ ] Notice of Entry
    that the within is a (certified) true copy of an Order entered in the office of the clerk of the within
    name court on              , 2011
[ ] Notice of Settlement
    that an order of which the within is a true copy will be presented for settlement to the Honorable
                on of the Judges of the Judges within named Court at           on            at        AM.