UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

LINDSAY LOHAN,                                    CASE NO.: 2:11-cv-05413-DRH-ARL

               Plaintiff,

vs.

ARMANDO CHRISTIAN PEREZ *p/k/a* PITBULL,
SHAFFER CHIMERE SMITH, JR., *p/k/a* NE-YO, NICK
VAN DE WALL *p/k/a* AFROJACK, J RECORDS, SONY
MUSIC ENTERTAINMENT, SONY MUSIC HOLDINGS
INC., RCA MUSIC GROUP, POLO GROUNDS MUSIC,
POLO GROUNDS MUSIC PUBLISHING, INC., POLO
GROUNDS MUSIC, INC., MR. 305, INC., MR. 305
ENTERPRISE, INC., and JOE JOHN AND JANE JOHN,
1 THROUGH X,

               Defendants.

_____/


## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS

i

## TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT ........................................................................ 1

II.  PROCEDURAL HISTORY............................................................................. 1

III. MEMORANDUM OF LAW .......................................................................... 4

    1.   This Court Should Issue Sanctions Under its Inherent Power Because the
        Sanctionable Conduct is Intertwined. .................................................... 8

    2.   Plaintiff's Counsel Has Engaged in Extensive Plagiarism. .................................. 9

    3.   Plaintiff's Causes of Action are Not Warranted by Existing Law....................... 12

    4.   Plaintiff's Vexatious April 30 Response Letter Contains Additional Legal
        Arguments Not Warranted by Existing Law. ...................................... 14

    5.   This Lawsuit Was Filed in Bad Faith. ................................................. 15

    6.   Plaintiff Has Asserted False Statements of Fact. .................................................. 17

IV.  CONCLUSION................................................................................................ 18

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Abner Realty, Inc. v. Adm'r of Gen. Servs. Admin.*,
    No. 97 Civ. 3075 (RWS), 1998 WL 410958 (S.D.N.Y. July 22, 1998) ....................................7

*Bixler v. Foster*,
    403 Fed. Appx. 325 (10th Cir. 2010) ..................................................................5, 6

*Capone v. Patchogue-Medford Union Free Sch. Dist.*,
    2010 U.S. Dist. LEXIS 70249 (E.D.N.Y. July 13, 2010) (Seybert, J.)....................................7

*Capone v. Weeks*,
    326 Fed. Appx. 46 (2d Cir. N.Y. 2009) ..................................................................15

*Chambers v. Nasco, Inc.*,
    501 U.S. 32 (1991)......................................................................................5, 8

*Corp. v. Rx USA Int'l Inc.*,
    2010 U.S. Dist. LEXIS 67108 (E.D.N.Y. July 6, 2010) (Azrack, J.) ......................................9

*Creely v. Crestview Ctr.*,
    241 Fed. Appx. 58 (3d Cir. Pa. 2007) ...................................................................6

*Dewilde v. Guy Gannett Pub. Co.*,
    797 F. Supp. 55 (D. Me. 1992) ..................................................................... 10, 11-12

*ETW Corp. v. Jireh Publ'g, Inc.*,
    332 F.3d 915 (6th Cir. 2003) ...........................................................................12

*First Bank v. Hartford Underwriters Ins. Co.*,
    307 F.3d 501 (6th Cir. 2002) ............................................................................8

*Fishman v. The Cnty. Of Nassau*,
    2011 U.S. Dist. LEXIS 100255 (E.D.N.Y. Sept. 7, 2011) (Hurley, J.) ..................................13

*Foster v. WNYC-TV*,
    1990 U.S. Dist. LEXIS 5593 Copy. L. Rep. (CCH) .............................................6, 11

*Galu v. Attias*,
    923 F. Supp. 590 (S.D.N.Y. 1996) ....................................................................18

*Gordon v. Royal Palm Real Estate Inv. Fund I, LLLP*,
    2011 U.S. Dist. LEXIS 2110 (E.D. Mich. Jan. 10, 2011).................................................8

*In re Lamberis*,
    443 N.E.2d 549 (Ill. 1982) ............................................................................10

*In re Steinberg*,
620 N.Y.S.2d 345 (N.Y. App. Div. 1st Dep't 1994) ................................................10

*In re Two Star Surgical Supply*,
70 B.R. 241 (Bankr. E.D.N.Y. 1987).........................................................................7

*Inducol, LDA v. Ford Motor Co.*,
1992 U.S. Dist. LEXIS 11198 (E.D.N.Y. July 2, 1992) (Hurley, J.)............................ passim

*Jones v. Wild Oats Mkts., Inc.*,
467 F. Supp. 2d 1004 (S.D. Cal. 2006) ....................................................................15

*Klein v. Stahl GMBH & Co.*,
185 F.3d 98 (3d Cir. 1999)........................................................................................8

*Marine Midland Bank, N.A. v. Huber (In re Huber)*,
171 B.R. 740 (Bankr. W.D.N.Y. 1994) ...................................................................8, 9

*Mohamed Ismail Elmasri v. Rupp*,
2011 U.S. Dist. LEXIS 10606 (E.D.N.Y. Feb. 2, 2011) (Seybert, J.) ........................15

*Mone v. Comm'r*,
774 F.2d 570 (2d Cir. 1985)......................................................................................15

*Primus Auto. Fin. Servs. v. Batarse*,
115 F.3d 644 (9th Cir. 1997) .....................................................................................8

*Shodeen v. Petit (In re Burghoff)*,
374 B.R. 681 (Bankr. S.D. Iowa 2007)..................................................................8, 10

*Universe Antiques, Inc. v. Vareika*,
2011 U.S. Dist. LEXIS 133044 (S.D.N.Y. Nov. 10, 2011) ......................................18

*Velez v. Alvarado*,
145 F. Supp. 2d 146 (D.P.R. 2001)............................................................................9

**STATUTES**

28 U.S.C. § 1927 .............................................................................................. passim

28 U.S.C. § 1927, and (iii) ....................................................................................5, 8

New York Civil Rights Law Section 51 ..............................................................12, 13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 5 ......................................................................................................14

Fed. R. Civ. P. 6 ......................................................................................................14

Fed. R. Civ. P. 11 ........................................................................................................ passim

E.D.N.Y. Local Rule 5.2 ..............................................................................................14

E.D.N.Y. Local Rule 6.4 ..............................................................................................14

Judge Hurley Individual Practice Rule 3 .......................................................................2

Defendants, Armando Christian Perez *p/k/a* Pitbull, Shaffer Chimere Smith, Jr., *p/k/a* Ne-Yo, Nick Van De Wall *p/k/a* Afrojack, J Records, Sony Music Entertainment, Sony Music Holdings, Inc., RCA Music Group, Polo Grounds Music, Polo Grounds Music Publishing, Inc., and Polo Grounds Music, Inc. (collectively referred to below as the "Artists" or "Defendants"), respectfully submit this Memorandum of Law in Support of Defendants' Motion for Sanctions ("Sanctions Motion"), and in support thereof state:

## I.  PRELIMINARY STATEMENT

Plaintiff and her counsel have filed and maintained frivolous claims, advocated them through a plagiarized and nonresponsive opposition to the Artists' motion to dismiss, and knowingly misrepresented material facts to this Court.  The conduct is an affront to the judicial process, and sanctionable under this Court's inherent power, 28 U.S.C. § 1927, and Rule 11. Because the Artists have been forced to defend against Plaintiff's baseless claims, and to deter repetition of such conduct, this Court should order Plaintiff and her counsel to pay the Artists' attorneys' fees and costs.

## II.  PROCEDURAL HISTORY

On August 19, 2011, Plaintiff, a well-known public figure, filed her Verified Complaint ("Complaint") in New York state court against the Artists for using her name in a single line of the hit song, *Give Me Everything* (the "Song").[1]  She misrepresented in the Complaint that she was a resident of New York and asserted baseless claims under New York's narrowly defined right of publicity statute, for intentional infliction of emotional distress and for unjust

---

[1] The reference to Plaintiff appears in one out of one hundred and four (104) lines in the Song, and reads: "So I'm tiptoein', to keep flowin', I got it locked up like Lindsay Lohan."  Full Lyrics, [DE 10 at Ex. A].

enrichment. The Complaint tacked on unsupported and improper requests for injunctive relief, an accounting and attorneys' fees.

The Artists removed this action on diversity grounds. In their Notice of Removal [DE 1], the Artists laid out public facts demonstrating that Plaintiff is a resident and citizen of California rather than New York as she had falsely sworn in the Complaint. Plaintiff moved to remand to state court [DE 7], falsely attesting under oath – for a second time – that she is a citizen of New York. On December 12, 2011, this Court administratively terminated the motion to remand because it was filed in contravention of Rule 3(A) and Rule 3(F) of the Court's Individual Practice Rules. Plaintiff then abandoned her remand motion.

On January 17, 2012, after fulfilling this Court's pre-motion conference rule, the Artists served their motion to dismiss and supporting memorandum of law ("Motion to Dismiss") [DE 8 & 9]. On February 28, 2012, Plaintiff served a plagiarized and nonresponsive memorandum in opposition to the motion to dismiss ("Opposition") [DE 11]. On March 12, 2012, the Artists served their reply and supporting papers in support of the Motion to Dismiss ("Reply") [DE 12] and filed the Motion to Dismiss and related submissions in accordance with this Court's "Bundle Rule." [DE 8-14].

Shortly prior to filing the bundle, on March 9, 2012, undersigned counsel advised Plaintiff's attorneys that both parties had inadvertently omitted Tables of Authorities and Tables of Contents ("TOA/TOC") from their previously served memoranda on the Motion to Dismiss (*See* attached Pumariega Dec. at ¶ 4 and Ex. A). Undersigned counsel advised Plaintiff's attorneys that they intended to affix a TOA/TOC to the Artists' previously served memorandum, and offered Plaintiff the same opportunity. Undersigned counsel specifically advised that "[w]e will not be modifying the [Artists'] Memorandum in any other way." *Id.* at Ex. A.

2

On March 12, 2012, Plaintiff's attorneys e-mailed to the undersigned a TOA/TOC for their Opposition, as well as an unannounced "Amended Opposition" and exhibit thereto. Plaintiff's attorneys had not previously announced their intent to serve an "Amended Opposition." *Id.* at ¶ 5. The proposed Amended Opposition contained several modifications from the original February 28th Opposition: it (1) added three paragraphs containing a frivolous argument that the Artists' motion to dismiss had been untimely served; (2) made minor typographical corrections; (3) converted short-form case citations to long-form citations;[2] (4) removed some but not all references to the summary judgment standard; and (5) changed the date of the Opposition. For the Court's convenience, a redline comparison demonstrating the differences between the original Opposition and the proposed Amended Opposition ("Redline") is attached as Exhibit C to the attached Pumariega Declaration. *Id.* at Ex. C.

Consenting to the proposed Amended Opposition would have required undersigned counsel to revise the Artists' file-ready Reply to address Plaintiff's new, frivolous timeliness argument, as well as their TOA/TOC. Undersigned counsel advised Plaintiff's attorneys that the Artists would not consent to the proposed Amended Opposition, but explained that Plaintiff was free to seek leave of Court to do so. *See id.* at ¶ 8 and Ex. B at Part 2. Plaintiff's attorneys then decided to have the original Opposition filed with a TOA/TOC. *See* Pumariega Dec. at ¶ 9 and Ex. B at Part 4. Plaintiff has never sought leave to file an Amended Opposition.

On April 4, 2012, the Artists filed their pre-motion conference letter requesting permission to file this Sanctions Motion [DE 15], documenting the extensive plagiarism in

---

[2] The Opposition contained short form citations because of its plagiarized nature. The website articles copied into the Opposition contained short-form citations, and long-form citations did not appear until Plaintiff's counsel realized they had to create a Table of Authorities for the Opposition. As demonstrated by the Redline (Ex. C to Pumariega Dec.), the conversion from short-form to long-form citations did not rectify the extensive plagiarism in Plaintiff's Opposition, nor was it intended to do so.

3

Plaintiff's Opposition as one of the reasons why sanctions are justified.  Plaintiff responded on April 30, 2012 ("April 30 Response Letter") [DE 21], defending the plagiarism by misrepresenting that Plaintiff's counsel had attempted to submit an Amended Opposition "which would have obviated any alleged plagiarism concerns" but that the undersigned rejected it.[3]  *Id.* at 1.  However, as demonstrated by the Redline (Pumariega Dec. at Ex. C), the plagiarism is no less pervasive in the proposed Amended Opposition than in the original.  The Redline, and the lack of a credible explanation in Plaintiff's April 30 Response Letter, show that Plaintiff and her counsel did not attempt to cure any plagiarism and have not been forthcoming with this Court about their plagiarized Opposition.  Their excuse to this Court is further undermined by the fact that the Opposition contains fourteen pages that were lifted almost verbatim from Plaintiff's as-filed opposition in a previous case.  *See* discussion *infra* at Part III(5).[4]

Plaintiff's April 30 Response Letter also raised new arguments that are outside the scope of Defendants' Pre-Motion Conference Letter and frivolous as a matter of law.  *See infra*, Part III(4).  These arguments only serve to further demonstrate the frivolous and reckless nature of Plaintiff's and her counsel's claims and conduct in this case.

### III.  MEMORANDUM OF LAW

Plaintiff and her counsel should be sanctioned for asserting and continuing to advocate frivolous claims in bad faith, committing extensive plagiarism, and misrepresenting material

---

[3] Plaintiff's counsel apparently gave a similar excuse to the press.  *See See* Eriq Gardner, *Lindsay Lohan's Lawyer Accused of Plagiarism in Pitbull Lawsuit (Exclusive)*, THE HOLLYWOOD REPORTER, Mar. 22, 2012, http://www.hollywoodreporter.com/thr-esq/lindsay-lohan-pitbull-lawsuit-lawyer-accused-plagiarism-303440 (reporting that Plaintiff's attorneys pointed the finger at one another and contended that they inadvertently submitted the wrong draft of the Opposition).

[4] Similarly, Plaintiff's attorneys' contention that they "contacted [defense counsel] and requested her to allow our office to submit an amended opposition for filing with the court" [DE 21 at 1], is misleading at best.  Plaintiff's attorneys did not "contact" the undersigned; the undersigned contacted Plaintiff's attorneys -- regarding a completely unrelated matter (the TOA/TOC).

facts to this Court.  The Court's authority to issue sanctions arises from (i) its inherent powers, (ii) 28 U.S.C. § 1927, and (iii) Federal Rule of Civil Procedure 11.

***Inherent Powers***

The Court's inherent powers serve as a catchall mechanism by which it may punish a party or its counsel for misconduct.  This Court has noted its "inherent power to impose sanctions in the form of attorney's fees for actions brought in bad faith, entirely without color and made for reasons of harassment or delay or for other improper purposes." *Inducol, LDA v. Ford Motor Co.*, 1992 U.S. Dist. LEXIS 11198, *6-7 (E.D.N.Y. July 2, 1992) (Hurley, J.) (quoting *Perez v. Velez*, 629 F. Supp. 734, 736, 737 (S.D.N.Y. 1985)) (internal quotation marks omitted) (granting attorney's fees pursuant to Court's inherent power where, like Plaintiff's counsel here, plaintiff's counsel demonstrated a "willingness to proceed with this action without a proper factual foundation, combined with the obvious insubstantiality of the complaint."). The Court's inherent powers are also appropriately invoked where Rule 11 or Section 1927 are not "up to the task." *Chambers v. Nasco, Inc.*, 501 U.S. 32, 49 (1991).

***Section 1927***

Section 1927 imposes attorneys' fees and costs on a party's counsel who "unreasonably and vexatiously" multiplies proceedings.  28 U.S.C. §1927.  The statute "exist[s] to provide an incentive for attorneys to regularly re-evaluate the merits of their claims and to avoid prolonging meritless claims," especially "once the writing was on the wall." *Bixler v. Foster*, 403 Fed. Appx. 325, 327-328 (10th Cir. 2010).  Additionally, Section 1927 "serve[s] as a reminder to plaintiff's counsel that claims must be researched and well-founded in the law before they are brought, in order to avoid vexatious harassment" and "that every action filed must be responded to, therefore attorneys' fees are incurred and court time is wasted in dealing with a non-

5

meritorious claim." *Foster v. WNYC-TV*, 1990 U.S. Dist. LEXIS 5593, *5-6, Copy. L. Rep. (CCH) P26, 574 (S.D.N.Y. May 10, 1990).

Pursuant to Section 1927, attorneys' fees and costs may be assessed against a plaintiff's attorneys where, like here, they file a frivolous opposition to a motion to dismiss. *E.g., id.* at *4 (awarding costs and attorneys' fees pursuant to Section 1927 where "plaintiff's claims were meritless" yet "plaintiff's counsel proceeded to prosecute the claims and to defend them in opposition" to defendant's motion to dismiss); *Bixler*, 403 Fed. Appx. at 327-328 (upholding attorneys' fees pursuant to Section 1927 where defendant's motion to dismiss "clearly highlighted" fatal flaws in plaintiff's claims, yet, "[i]nstead of dropping or amending these meritless claims [plaintiff's counsel] instead forged on, filing a 93-page opposition to [defendant's] motion to dismiss," which opposition "turned a blind eye to the uniform holdings of other circuits") (internal quotation marks omitted); *Creely v. Crestview Ctr.*, 241 Fed. Appx. 58, 60 (3d Cir. Pa. 2007) (affirming district court's conclusion "that although the original complaint may have been filed in good faith, sanctions under 28 U.S.C. § 1927 were appropriate for costs and fees that [defendant] incurred in filing its motion to dismiss and in replying to plaintiff's frivolous response to that motion."). Here, even if Plaintiff's counsel were not on notice of the frivolous nature of Plaintiff's claims at the time they filed their Complaint (which they should have been), they have had notice at least since January 17, 2012, approximately four months ago, when the Artists served their motion to dismiss and supporting papers.

***Rule 11***

Federal Rules of Civil Procedure 11 requires an attorney to sign each document submitted to the Court, and states that such signature certifies that the pleading (1) is not presented for any improper purpose; (2) asserts legal contentions that are warranted by existing

6

law or non-frivolous extensions of the law; and (3) asserts factual contentions that have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. FED. R. CIV. P.11 (b)(1)-(3). Rule 11 imposes an *affirmative duty* upon attorneys to "conduct a reasonable inquiry into the law and facts" before advocating their clients' claims in court. FED. R. CIV. P. 11 advisory committee's note (1993). "The rule requires litigants to 'stop and think' before initially making legal or factual contentions" that are baseless. *Capone v. Patchogue-Medford Union Free Sch. Dist.*, 2010 U.S. Dist. LEXIS 70249, *5 (E.D.N.Y. July 13, 2010) (Seybert, J.) (internal quotation marks omitted); *In re Two Star Surgical Supply*, 70 B.R. 241, 244 (Bankr. E.D.N.Y. 1987) (quoting *Duncan v. WJLA-TV, Inc.*, 106 F.R.D. 4, 6 (D. D.C. 1984)).

Although Rule 11 does not cover a pleading initially filed in state court, it does apply when a party "later advocate[s]" the contents of that pleading in federal court. FED. R. CIV. P. 11(b). For example, "if after a notice of removal is filed, a party urges in federal court the allegations of a pleading filed in state court . . . , it would be viewed as 'presenting' – and hence certifying to the district court under Rule 11 – those allegations." FED. R. CIV. P. 11 advisory committee's note (1993). Therefore, Plaintiff's decision to advocate her claims in her Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint ("Opposition") [DE 11] triggered Rule 11.

Under Rule 11, a court may impose whatever penalty is "sufficient to deter repetition of [the sanctionable] conduct," FED. R. CIV. P.11(c)(4), including payment of the movant's attorneys' fees. *See Abner Realty, Inc. v. Adm'r of Gen. Servs. Admin.*, No. 97 Civ 3075 (RWS), 1998 WL 410958, at *8 (S.D.N.Y. July 22, 1998). Sanctions may be awarded against both the party and the attorney for violations of Rule 11(b)(1) (claims may not be brought for an improper

purpose) and Rule 11(b)(3) (factual contentions must have evidentiary support), and may be awarded against the attorney for violations of Rule 11(b)(2) (claims must not be frivolous). *See* FED. R. CIV. P.11(c)(1), (5).

1.      **This Court Should Issue Sanctions Under its Inherent Powers Because the Sanctionable Conduct is Intertwined.**

Where, like here, a party and her counsel have engaged in misconduct that is "intertwined" – that is to say, sanctionable both under the Rules and the Court's inherent powers – the Court should use its inherent powers to sanction all misconduct so as to avoid delay. *E.g.*, *Chambers*, 501 U.S. at 51; *First Bank v.* Hartford *Underwriters Ins. Co.*, 307 F.3d 501, 40-42 (6th Cir. 2002); *Klein v. Stahl GMBH & Co.*, 185 F.3d 98 (3d Cir. 1999); *Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997); *Gordon v. Royal Palm Real Estate Inv. Fund I, LLLP*, 2011 U.S. Dist. LEXIS 2110, *23 (E.D. Mich. Jan. 10, 2011); *Marine Midland Bank, N.A. v. Huber (In re Huber)*, 171 B.R. 740, 745 (Bankr. W.D.N.Y. 1994). Accordingly, the Artists are not required to comply with Rule 11's Safe Harbor provision. *See First Bank*, 307 F. 3d at 518; *Gordon*, 2011 U.S. Dist. LEXIS 2110 at *22-23.

Here, the misconduct is intertwined. For example, Plaintiff's Opposition (i) contains extensive plagiarism punishable under the Court's inherent powers;[5] (ii) vexatiously multiplies the proceedings warranting sanctions under Section 1927, and (iii) demonstrates the meritless nature of her claims and is thus also sanctionable under Rule 11. Furthermore, Plaintiff's April 30 Response Letter constitutes a willful attempt to defraud this Court due to its factual misrepresentations, which is punishable under the Court's inherent powers. *Chambers*, 501 U.S. at 51 (where party's "entire course of conduct throughout the lawsuit evidenced bad faith and an

---

[5] *See Shodeen v. Petit (In re Burghoff)*, 374 B.R. 681, 686 (Bankr. S.D. Iowa 2007) (noting that plagiarism, though sanctionable, did "not implicate Rule 11.").

attempt to perpetrate a fraud on the court," sanctions were appropriately issued pursuant to Court's inherent powers); *Corp. v. Rx USA Int'l Inc.*, 2010 U.S. Dist. LEXIS 67108, *12-20 (E.D.N.Y. July 6, 2010) (Azrack, J.) (court may impose attorneys' fees under its inherent powers as sanction for fraud on the court).   Accordingly, this Court should use its inherent powers to sanction *all* misconduct so as to avoid further delay and evade the need to analyze which conduct is punishable under which authority.   *In re Huber*, 171 B.R. at 745 (proper to rely on inherent powers where bad faith conduct sanctionable under Section 1927 and Rule 11 was "so intertwined with conduct that only the Court's inherent powers can address that it would require extensive and needless litigation in order for the Court to properly determine which conduct is sanctioned by which authority.") (quoting with approval related district court proceeding).

### 2.     Plaintiff's Counsel Has Engaged in Extensive Plagiarism.

As outlined in the Artists' Reply [DE 13 at Exs. 1 and 2], the majority of Plaintiff's Opposition was plagiarized from website articles and materials having nothing to do with the claims at issue.   The plagiarism is sanctionable in and of itself.   *Velez v. Alvarado*, 145 F. Supp. 2d 146, 160-61 (D.P.R. 2001) (sanctioning plaintiff's counsel under court's inherent powers where approximately sixty-six percent of plaintiff's brief in opposition to defendants' summary judgment motion was plagiarized from a district court judge's Opinion and Order in another case, adding that "the impugnable brief was a disservice to Plaintiff, counsel's client, and this court, as it did not fully address all the arguments raised in Defendants' motion for summary judgment.").   Plaintiff's use of the plagiarized material without permission also constitutes copyright infringement.   *See United States ex rel. Berge v. Bd. of Trustees*, 104 F.3d 1453, 1464 (4th Cir. 1997) (holding that party's "charge of plagiarism and lack of attribution can only amount to, indeed, are tantamount to, a claim of copyright infringement"); 17 U.S.C. § 501

(Infringement of Copyright).[6]  In plagiarism cases, awarding attorneys' fees is an appropriate sanction.  *Dewilde v. Guy Gannett Pub. Co.*, 797 F. Supp. 55, 56 n. 1, 63-64 (D. Me. 1992) (awarding attorneys' fees in connection with plaintiff's frivolous complaint pursuant to Rule 11, noting that because response to defendants' motion for summary judgment was plagiarized, it was "a particularly fitting case for an award of attorney's fees charged against Plaintiff's attorney.").

Courts have even held that sanctions are required in the case of plagiarism.  *E.g., Shodeen v. Petit (In re Burghoff)*, 374 B.R. 681, 686 (Bankr. S.D. Iowa 2007) (holding that sanctions were "require[d]" where attorney plagiarized scholarly article located on another law firm's website, adding that the attorney's "acts of plagiarism burden the Court, undercut his client's cause, and generate criticism of the legal profession"); *In re Lamberis*, 443 N.E.2d 549, 551 (Ill. 1982), *relied on in In re Steinberg*, 620 N.Y.S.2d 345 (N.Y. App. Div. 1st Dep't 1994) (holding that sanctions are "appropriate and *required*" in the case of plagiarism because it evidences the plagiarizer's "complete disregard for values that are most fundamental in the legal profession" and that in such cases, "fairness and justice require that discipline be imposed only to protect members of the public, to maintain the integrity of the legal profession and to safeguard the administration of justice from reproach.") (emphasis added).

Notably, in *Velez, Dewilde*, and *In re Burghoff*, counsel tailored the plagiarized portions of their briefs to the issues in their respective cases.  For example, in *In re Burghoff*, counsel deleted certain passages from the plagiarized article that did not support his client's cause.  *In re Burghoff*, 374 B.R. at 683-84.  Here, the plagiarized portions of Plaintiff's Opposition are even

---

[6] For example, Paragraphs 23, 24 and 45 of the Opposition reproduce verbatim excerpts from the "Right of Publicity" section of the (copyrighted) website http://www.markroesler.com/, written by Mark Roesler, an expert on intellectual property rights involving celebrities.  See also Reply [DE 12 at 2 n.3] (discussing copyrighted *Art World News* article that Plaintiff copied).

10

*more* egregious in that they do not address the points made by the Artists in support of their motion to dismiss.

The Opposition is rife with irrelevant discussion, such as First Amendment application to non-verbal expression (p.2); restrictions on body art (p.3); the "threshold of consciousness" (p.4); whether a name can be "abandoned" (p.5); whether "every imitation of a voice in an ad is actionable" (p.6); a case involving the sale of small Martin Luther King, Jr. sculptures (p.7); the taping of a human cannonball act (p.7); the protection of registered marks under the Lanham Act (which the Opposition refers to as the "Lehman Act" on one ocassion) (p.8); whether "a celebrity look-alike can violate a celebrity's right of publicity" (p.11); whether New York's Civil Rights Law protects voices (p.11-12); whether a right to privacy lawsuit brought by late actor Jerry Orbach could proceed notwithstanding his death (p.14); the protection of "persona rights" under the Lanham Act (p.15); the motion to dismiss standard under New York law (p.17); and the New York summary judgment standard (p. 17-19).   The Opposition did not meaningfully address a single case cited by the Artists in support of their motion to dismiss (see Reply at 2-3), cited a case without disclosing it had been reversed (see Reply at 2, n.2), and essentially ignored every argument made by the Artists (see Reply at 2-6).

The plagiarized and nonresponsive Opposition makes all the more clear that Plaintiff's claims are baseless and that her counsel failed, either by indolence or design, to conduct the necessary research regarding the legal basis for their claims, as required by Section 1927 and Rule 11. *See Foster*, 1990 U.S. Dist. LEXIS 5593 at *5 (Section 1927 "serve[s] as a reminder to plaintiff's counsel that claims must be researched and well-founded in the law before they are brought"); Fed. R. Civ. P. 11 advisory committee's note (1993) (counsel must "conduct a reasonable inquiry into the law and facts"); *Dewilde*, 797 F. Supp. at 56 n.1 (noting that

plagiarism made it "clear that [plaintiff's counsel] did no legal research"). Had they conducted the requisite inquiry, particularly after reading the Artists' Motion to Dismisss, they would have realized that their claims were untenable and presumably would not have cut and pasted irrelevant discussion from websites. The willful decision to plagiarize, rather than conduct case-specific research, is just the type of "impunity in conduct of egregious professional irresponsibility" warranting sanctions. *Inducol*, 1992 U.S. Dist. LEXIS 11198 at *6-7.

### 3. Plaintiff's Causes of Action are Not Warranted by Existing Law.

For the reasons more fully set forth in the Artists' Motion to Dismiss, Plaintiff's claims are not supported by existing law or a good-faith argument for its extension or modification. In the interest of judicial economy, Defendants reincorporate their papers filed in support of their Motion to Dismiss and briefly summarize some of the most glaring reasons why Plaintiff's claims are legally baseless.

**New York Civil Rights Law Section 51 Claim**: The First Amendment prohibits Plaintiff's claims because the Song is protected speech. The Song is speech in the form of art, and is fully shielded "even though it is carried in a form sold for profit." *See ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 924-25 (6th Cir. 2003) (First Amendment protection extends to music as well as other forms of expression); *Hoepker v. Dabney*, 200 F. Supp. 2d 340, 349-50 (S.D.N.Y. 2002). At least ten other artists have exercised their First Amendment rights to mention Plaintiff in their songs. See Composite Ex. C. to Caprio Dec. [DE 10]. The First Amendment forecloses any attempt by Plaintiff to gag the use of her name in a song or any other work of art. *See Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989) ("Music, as a form of expression and communication, is protected under the First Amendment.")

Moreover, Section 51, which is narrowly construed by courts, applies only to use of a plaintiff's name "*for advertising purposes* or for the *purposes of trade*." N.Y. CIV. RIGHTS LAW

§ 51 (2012) (emphasis added).  The Song's single line referencing Plaintiff had nothing to do with the promotion of a product or service. *See* Full Lyrics, [DE 10 at Ex. A].

**Intentional Infliction of Emotional Distress (IIED) Claim**: The Complaint fails to plead the essential elements of an IIED claim, including the "extreme and outrageous conduct" element. *See Fishman v. The Cnty. Of Nassau*, 2011 U.S. Dist. LEXIS 100255, at \*32 (E.D.N.Y. Sept. 7, 2011) (Hurley, J.) (dismissing intentional infliction of emotional distress claim). Plaintiff as a public figure also cannot satisfy the requirement of a false statement made with actual malice, since the reference to Plaintiff in the Song (i.e., "locked up like Lindsay Lohan"), even if viewed in the light most favorable to Plaintiff, is undeniably true. *See Hustler Magazine v. Falwell*, 485 U.S. 46, 56 (1988).  Plaintiff has been incarcerated on multiple occasions. [*See* DE 1 at 8-9 & nn.8, 12-20].

**Unjust Enrichment Claim**: The Complaint does not even recite the elements of unjust enrichment, much less allege facts that plausibly satisfy the third element that equity and good conscience require restitution (*see* Complaint at ¶¶ 28-32).  In any event, Section 51 of the Civil Rights Law preempts any unjust enrichment claim. *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 586 (2d Cir. 1990).

**Requests for Injunctive Relief, Accounting and Attorneys' Fees**: These draconian requests are merely tacked on to the "wherefore" clause at the end of the Complaint, with no allegations as to why Plaintiff is entitled to them.

Defendants specifically articulated these arguments and others in their Motion to Dismiss, yet Plaintiff's Opposition failed to substantively address them.  Plaintiff and her counsel should thus be sanctioned.

### 4.    Plaintiff's Vexatious April 30 Response Letter Contains Additional Legal Arguments Not Warranted by Existing Law.

Rather than discontinuing their frivolous Complaint or providing any credible explanation for their plagiarism, Plaintiff's April 30 Response Letter compounded their sanctionable conduct by making new frivolous arguments.  First, the April 30 Response Letter argued that Defendants' service of their Motion to Dismiss was untimely because it was filed on January 17, 2012, rather than on January 15, 2012.  The Letter even accuses undersigned counsel of "allegedly intentionally failing to bring their mistake of late filing of their motion to the attention to [sic] the Court."  April 30 Response Letter at 3.  The argument is egregiously wrong. January 15th fell on a Sunday, and January 16th was Martin Luther King, Jr. Day.  Therefore, the deadline was carried over to the following business day, January 17, 2012, as expressly laid out in Federal Rule of Civil Procedure 6(a)(1)(C) and 6(a)(6)(A) and Local Rule 6.4.  Even a cursory reading of those rules would have put Plaintiff's counsel on notice that their argument was frivolous.

Second, the April 30 Response Letter argued that a certain affidavit submitted in connection with Defendants' Notice of Removal [DE 1] was misleading.  However, the Notice of Removal was filed *six months ago* and is no longer at issue, as Plaintiff *abandoned* her Motion to Remand after the Court notified her that it was improperly filed [DE 7].[7]

Third, the April 30 Response Letter argued that Defendants failed to "serve" Defendants' Pre-Motion Conference Letter regarding sanctions.  The argument is also wrong.  Defendants filed their letter via CM/ECF, which constitutes sufficient service pursuant to the plain language of Local Rule 5.2 (document filed via CM/ECF "is, for purposes of Fed. R. Civ. P. 5, served and

---

[7] In any event, Defendants obtained an additional affidavit curing any alleged defects in the affidavit at issue, and are prepared to file it upon this Court's request.

filed in compliance with the Local Civil Rules of the Southern and Eastern Districts of New York".). Again, even a threshold reading of the Local Rules would have alerted Plaintiff to the frivolous nature of that argument.

### 5.    This Lawsuit Was Filed in Bad Faith.

Plaintiff's nonresponsive, plagiarized arguments further show that this lawsuit was brought in bad faith, which "may be inferred where the action is completely without merit." *Capone v. Weeks*, 326 Fed. Appx. 46, 47 (2d Cir. N.Y. 2009); *Rupp*, 2011 U.S. Dist. LEXIS 10606 at *9-10; *see Inducol*, 1992 U.S. Dist. LEXIS 11198 at *7; *Inducol*, 1992 U.S. Dist. LEXIS 11198 at *7; *Mohamed Ismail Elmasri v. Rupp*, 2011 U.S. Dist. LEXIS 10606, *9-10 (E.D.N.Y. Feb. 2, 2011) (Seybert, J.).

The case of *Mone v. Comm'r*, 774 F.2d 570, 575 (2d Cir. 1985), is particularly instructive.  There, the Second Circuit awarded double costs and attorneys' fees against an attorney who submitted an appellate brief that contained "utter[ly] irrelevan[t]" arguments, did not address the pertinent issue, and was "virtually identical to [briefs] filed on behalf of his other clients." *Id.* at 574-575.  The Second Circuit explained, "[w]e cannot believe that an attorney who prepares a brief in such a careless, casual and offhand manner can in good faith believe that he presents claims to this Court that have a scintilla of legal merit." *Id.* at 575.  The Opposition in the instant case contained irrelevant arguments like the appellate brief in *Mone*, made all the worse by Plaintiff's counsel's extensive plagiarism.

Moreover, it is clear that Plaintiff is an opportunist who has brought and maintained this action to obtain a quick settlement, in violation of Rule 11(b)(1). *E.g., Jones v. Wild Oats Mkts., Inc.*, 467 F. Supp. 2d 1004, 1009 (S.D. Cal. 2006) (granting attorneys' fees where complaint contained "sweeping allegations," only one of which was legally and factually tenable, and where "the circumstances of this case suggest that it was filed for the purpose of obtaining a

quick settlement"). Prior to this case, Plaintiff brought and settled a lawsuit against E*Trade Securities, LLC for its use of the first name "Lindsay" in a Super Bowl commercial (referring to a baby as "that milkaholic Lindsay"). *See Lohan v. E*Trade Securities LLC*, No. 004579/2010 (N.Y. Sup. Ct. Nassau County Aug. 9, 2010). Plaintiff apparently received a confidential sum. *See* James Montgomery, *Lindsay Lohan Suing Over Pitbull's 'Give Me Everything,'* MTV NEWS, Aug. 19, 2011 (attached as Exhibit D to Pumariega Dec.). Plaintiff's and her attorneys' attempt to "repeat" their E*Trade settlement strategy here became apparent when they cut and pasted into their Opposition a significant (but inapplicable) portion of their opposition to E*Trade's motion to dismiss. A comparison of the two oppositions reveals that Pages 4 through 19 (starting at ¶ 10) of the Opposition in the instant case were lifted – *nearly entirely and verbatim* – from Pages 10 through 24 (starting at ¶ 29) of the *E*Trade* opposition, including subheadings. *See* Plaintiff's Amended Opposition to Defendants' Motion to Dismiss Complaint, *Lohan v. E*Trade Securities LLC*, No. 004579/2010 (N.Y. Sup. Ct. Nassau County Aug. 9, 2010), *available at* http://www.docstoc.com/docs/51510099/lindsaylohan.

Plaintiff's quick settlement purpose is further demonstrated by the fact that she chose to sue Defendants, but none of the other rap artists, comedians, or other celebrities who regularly poke fun at her in the media. *See* [DE 11 at 1-2, 7-9 & nn. 1 & 7]. Instead, she waited to file suit until there was a hit Song from which she believed she could profit.[8] Once the substance of her claims was seriously challenged in the Motion to Dismiss, her counsel resorted to committing plagiarism rather than formulating a coherent argument.

---

[8] In the United States, the Song hit Number One on the Billboard Hot 100. It also peaked at Number One in the United Kingdom, Belgium, Canada, Ireland, the Netherlands, and within the top-five in twelve countries. Worldwide, it was the seventh best-selling digital single of 2011 with sales of 8.2 million copies. Wikipedia, *Give Me Everything (Pitbull song)*, http://en.wikipedia.org/wiki/Give_Me_Everything_(Pitbull_song) (last visited March 19, 2012).

The circumstances described above, coupled with the frivolous nature of Plaintiff's claims, make it "pointedly clear . . . that this action is both 'entirely without color' and brought for 'improper purposes.'" *Inducol, LDA. v. Ford Motor Co.*, 1992 U.S. Dist. LEXIS 11198, *6-7 (E.D.N.Y. July 2, 1992) (Hurley, J.) (awarding attorneys' fees).  Accordingly, the "bad faith" requirement for Section 1927 and the Court's inherent powers, and the "improper purpose" provision of Rule 11(b)(1), are satisfied.

### 6.   Plaintiff Has Asserted False Statements of Fact.

Plaintiff's Complaint, Motion for Remand, and April 30 Response Letter assert or advocate false statements of fact in contravention of Rule 11(b)(3).

First, Plaintiff has made false statements of fact regarding Plaintiff's residence/citizenship.  In her Verified Complaint, Plaintiff swore that she is a "resident" of New York. (Verified Complaint at ¶1).  This factual assertion flies in the face of the overwhelming, objective indicia to the contrary, as discussed in Defendants' Notice of Removal. [DE 1 at 8-11]. Moreover, it contradicts the express holding by the Honorable Justice James A. Yates in another New York action (the *E*Trade* case) that Plaintiff "has not proven residence in Nassau County," referring to the same address provided in this case. [DE 1 at 10 & Ex. 5].  Likewise, Plaintiff's now-abandoned Motion to Remand [DE 7] falsely asserted that Plaintiff is *both* a resident *and* citizen of New York, and included a sworn affidavit by Plaintiff declaring that she is "a *citizen* of the State of New York, County of Nassau." [DE 7 at Ex. A] (emphasis added).  The Motion to Remand makes absolutely no attempt to explain whether Plaintiff's circumstances have changed since the time of Justice Yates' determination that she was not even a resident – much less a citizen – of Nassau County [DE 1 at 10 & Ex. 5]; no attempt to refute the objective indicia that she is a California citizen [DE 1 at 8-11]; and no attempt to explain why, in the *White Wave International Labs* case in the Middle District of Florida, Plaintiff confirmed her California

citizenship [DE 1 at 10-11].[9]  The truth of the matter is that Ms. Lohan is neither a resident nor citizen of New York.

Second, Plaintiff's counsel falsely asserted in their April 30 Response Letter that their proposed Amended Opposition "would have obviated any alleged plagiarism concerns." [DE 21 at 1].   As discussed *supra* at Part II, that assertion is demonstrably false and particularly egregious, given the fact that it was made directly to the Court in the face of allegations that Plaintiff and her counsel had already engaged in sanctionable misconduct.  *See Universe Antiques, Inc. v. Vareika*, 2011 U.S. Dist. LEXIS 133044, *44-45 (S.D.N.Y. Nov. 10, 2011) (where party, in "attempt[ing] to explain away his earlier misrepresentations," submitted affidavit making further misrepresentations, the second submission served only to "confirm[] and compound[] the falsity of [his] previous statements" and constituted fraud upon the court warranting sanctions).  Such willful conduct cannot go unpunished.

## IV.  **CONCLUSION**

For the reasons outlined above, Plaintiff's Complaint in and of itself was so "obvious[ly] insubstantial" as to warrant sanctions.  *Inducol*, U.S. Dist. LEXIS 11198 at *7.  But even if the Complaint were not enough, Plaintiff's and her attorneys' willingness to proceed with their insubstantial claims, as demonstrated by their plagiarized Opposition and their April 30

---

[9] Instead, the Motion to Remand focuses on the unremarkable proposition that an individual may maintain more than one *residence*, without any explanation as to why the Court should consider Plaintiff to be a New York *citizen*.  The argument is irrelevant.  Residence does not govern diversity of citizenship for jurisdictional purposes; domicile does.  *Galu v. Attias*, 923 F. Supp. 590, 595 (S.D.N.Y. 1996).  An individual can have only one domicile.  *Id.*  Plaintiff's Motion to Remand made no attempt to demonstrate that she was domiciled in New York for purposes of establishing citizenship there.  Accordingly, the Motion to Remand was sanctionable not only because it asserted false facts, but because it asserted frivolous legal arguments.  *See* 16 James Wm. Moore et al., Moore's Federal Practice ¶ 107.41[4][b] (2012) ("Under Rule 11, a federal court may . . . sanction a party who makes a frivolous motion for remand."); FED. R. CIV. P.11(b)(2) (legal contentions must be "warranted by existing law").

Response Letter, reflects complete disregard for this Court's and the Defendants' resources. It is abundantly clear that Plaintiff and her attorneys initiated this lawsuit for the improper purpose of obtaining a quick settlement, without any inquiry into the substantiality of their claims.

For the foregoing reasons, Defendants respectfully request that this Court award them their attorneys' fees and costs in connection with their entire defense of this frivolous litigation, and grant such other and further relief as this Court deems just and proper.

Dated: May 21, 2012

New York, New York

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

By: _____

Marcos Daniel Jiménez, Esq.
Audrey M. Pumariega, Esq.
1441 Brickell Avenue, Suite 1420
Miami, Florida 33131
(305) 377-1666

Sarah Gibbs Leivick, Esq.
1633 Broadway
New York, New York 10019
(212) 506-1700
*Attorneys for Defendants*

To:

Stephanie G. Ovadia, Esq.
Anand Ahuja, Esq.
626 RXR Plaza
6th Floor
Uniondale, New York 11556
*Attorneys for Plaintiff*