UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

LINDSAY LOHAN,

                    Plaintiff,

   – against –

ARMANDO CHRISTIAN PEREZ a/k/a PITBULL,
SHAFFER CHIMERE SMITH JR. a/k/a NE-YO,
NICK VAN DE WALL a/k/a AFROJACK, J RECORDS,
SONY MUSIC ENTERTAINMENT, SONY MUSIC
HOLDINGS INC., RCA MUSIC GROUP, POLO
GROUNDS MUSIC, POLO GROUNDS MUSIC
PUBLISHING, INC., POLO GROUNDS MUSIC, INC.,
MR. 305, Inc., MR. 305 ENTERPRISE, INC., and
JOE JOHN and JANE JOHN, 1 THROUGH X.

                   Defendants.

-------------------------------------------------------------------------X

                            11 Civ. 5413 (DRH) (ARL)

### PLAINTIFF'S MEMORANDUM OF LAW
### IN OPPOSITION TO
### DEFENDANTS' MOTION FOR SANCTIONS.

KRINSKY, PLLC
WOOLWORTH BUILDING
233 BROADWAY, SUITE 707
NEW YORK, NEW YORK 10279
212.543.1400

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT:

    I.    DEFENDANTS' PLAGIARISM-RELATED CLAIM SHOULD BE, AND WILL BE, ADDRESSED BY AN APPROPRIATE DISCIPLINARY AUTHORITY EMPOWERED TO INVESTIGATE CLAIMS OF ATTORNEY MISCONDUCT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B.    DEFENDANTS' ALLEGATIONS OF ATTORNEY MISCONDUCT AGAINST PLAINTIFF'S COUNSEL SHOULD BE, AND WILL BE, ADDRESSED BEFORE THE APPROPRIATE ATTORNEY DISCIPLINARY AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        C.    DEFENDANTS HAVE NOT COMPLIED WITH RULE 11'S MANDATORY SAFE HARBOR PROVISION . . . . . . . . . . . . . . . . . . . . . 11

    II.    DEFENDANTS' MOTION FOR SANCTIONS IS PREMATURE . . . . . . . . . . . . . . . . . . 14

    III.    THE IMPOSITION OF SANCTIONS UNDER FED. R. CIV. P. 11 IS NOT WARRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    IV.    THE IMPOSITION OF SANCTIONS UNDER 28 U.S.C. § 1927 IS NOT WARRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

Ahmed v. Gateway Group One, 2012 WL 2061601 (E.D.N.Y. June 7, 2012) . . . . . . . . . . . . . 21

Ali v. Playgirl, Inc., 447 F. Supp. 723 (S.D.N.Y. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Almonte v. City of Long Beach, 2007 WL 951863 (E.D.N.Y. Mar. 27, 2007) . . . . . . . . . . . . . . 9

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Bender v. City of New York, 78 F.3d 787 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Board of Education v. Nyquist, 590 F.2d 1241 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Braley v. Campbell, 832 F.2d 1504 (10th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Catcove Corp. v. Patrick Heaney, 685 F. Supp.2d 328 (E.D.N.Y. 2010) . . . . . . . . . . . . . . . . . 20

Ceramco, Inc. v. Lee Pharmaceuticals, 510 F.2d 268 (2d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . 6

Chambers v. NASCO, Inc., 501 U.S. 32 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Charlton v. FTC, 543 F.2d 903 (D.C. Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Coakley v. Jaffe, 72 F. Supp.2d 363 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

DLC Management Corp. v. Town of Hyde Park, 163 F.3d 124 (2d Cir.1998) . . . . . . . . . . . . . 13

Dow Chem. Pacific Ltd. v. Rascator Maritime S.A., 782 F.2d 329 (2d Cir. 1986) . . . . . . . . . . 23

Eastway Const. Corp. v. City of New York, 762 F.2d 243 (2d Cir. 1985) . . . . . . . . . . . . . . . . 20

Eastway Const. Corp. v. City of New York, 637 F. Supp. 558 (E.D.N.Y. 1986),
    order mod. and remanded, 821 F.2d 121 (2d Cir 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Eisemann v. Greene, 204 F.3d 393 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-23

Erdmann v. Stevens, 458 F.2d 1205 (2d Cir.1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

First Bank of Marietta v. Hartford Underwriters Ins. Co., 307 F.3d 501 (6th Cir. 2002) . . . . . . 13

Flaherty v. Filardi, 2008 WL 4200577 (S.D.N.Y. Sept. 12, 2008) . . . . . . . . . . . . . . . . . . . . . . . . 13

Georgine v. Amchem Products, Inc., 157 F.R.D. 246 (E.D. Pa. 1994) . . . . . . . . . . . . . . . . . . . . 8

Gordon v Royal Palm Real Estate Inv. Fund I, LLLP, 2011 WL 108917
　　(E.D. Mich. Jan. 10, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

GTFM Inc. v. International Basic Source, Inc., 2002 WL 42884
　　(S.D.N.Y. Jan. 11, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Haelan Laboratories v. Topps Chewing Gum, 202 F.2d 866 (2d Cir. 1953) . . . . . . . . . . . . . . . 16

Hall v. Cole, 412 U.S. 1 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Hashemi v. Shack, 609 F. Supp. 391 (S.D.N.Y. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Herrera v. Scully, 143 F.R.D. 545 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Hudson Motors Partnership v. Crest Leasing Enterprises, Inc.,
　　845 F. Supp. 969 (E.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

In re Peters, 642 F.3d 387 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11

In re Ming, 469 F.2d 1352 (7th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Pfizer Inc. Securities Litigation, 2012 WL 1059671 (S.D.N.Y. Mar. 29, 2012) . . . . . . . . . 7

In re Ruffalo, 390 U.S. 544 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Dynex Capital, Inc. Sec. Litig., 2011 WL 2581755 (S.D.N.Y. Apr. 29, 2011) . . . . . . . . . . 7

In re Air Disaster at Lockerbie, Scotland, 144 F.R.D. 613 (E.D.N.Y. 1992) . . . . . . . . . . . . . . . 23

Keller v. Mobil Corp., 55 F.3d 94 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Knorr Brake Corp. v. Harbil, Inc., 738 F.2d 223 (7th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . 24

Kornhauser v. Commissioner of Social Sec., 2012 WL 2505673
　　(11th Cir. July 2, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Lefrak v. Arabian American Oil Co., 527 F.2d 1136 (2d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . 9

Libaire v Kaplan, 2008 WL 794973 (E.D.N.Y. Mar. 24, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Louros v. Kreicas, 2003 WL 22353979 (S.D.N.Y. Oct. 15, 2003) . . . . . . . . . . . . . . . . . . . . . . . 14

Marano v. Aaboe, 2007 WL 3195156 (S.D.N.Y. Oct. 29, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 13

Mareno v. Rowe, 910 F.2d 1043 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Matter of Mundie, 453 Fed. Appx. 9 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

McCune v. Rugged Entertainment, LLC., 2010 WL 1189390
    (E.D.N.Y. Mar. 29, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-23

McMahon v. Shearson/American Exp., Inc., 896 F.2d 17 (2d Cir. 1990) . . . . . . . . . . . . . . . . . 22

McNamara v. Bre-X Minerals, Ltd., 2003 U.S. Dist. LEXIS 25641
    (E.D. Tex. Mar. 31, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Micare v. Foster & Garbus, 132 F. Supp.2d 77 (N.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . 19

Miera v. Dairyland Ins. Co., 143 F.3d 1337 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Nemeroff v. Abelson, 620 F.2d 339 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Netzer v. Continuity Graphic Associates, Inc., 963 F. Supp. 1308 (S.D.N.Y. 1997) . . . . . . . . 17

New York State Thruway Authority v. Level 3 Communications, LLC,
    734 F. Supp.2d 257 (N.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Oliveri v. Thompson, 803 F.2d 1265 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Parks v. LaFace Records, 329 F.3d 437 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 99 (2d Cir. 2002) . . . . . . . 13

Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Rojas v. Schkoda, 319 Fed. Appx. 43 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

Sakon v Andreo, 119 F.3d 109 (2d Cir 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Schware v. Bd. of Bar Examiners, 353 U.S. 232 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Sierra Club v. U.S. Army Corps of Engineers, 776 F.2d 383 (2d Cir. 1985) . . . . . . . . . . . . . . . 22

Sierra Rutile Ltd. v. Bomar Resources, Inc., 1990 WL 83510 (S.D.N.Y. June 12, 1990) . . . . . 14

Sound Video Unlimited, Inc. v. Video Shack Inc., 700 F. Supp. 127 (S.D.N.Y. 1988) . . . . . . . 14

iv

Ted Lapidus, S.A. v. Vann, 112 F.3d 91 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Tomaino v. Gasparik, 2006 WL 1318365 (E.D.N.Y. May 12, 2006) . . . . . . . . . . . . . . . . . . . . . 20

States v Seltzer, 227 F.3d 36, 42 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Willner v. Committee on Character and Fitness, 373 U.S. 96 (1963) . . . . . . . . . . . . . . . . . . . . . 10

Wolters Kluwer Financial Services v. Scivantage, 525 F. Supp.2d 448
    (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

**STATE CASES**

Booth v. Curtis Publishing Co., 15 A.D.2d 343 (1st Dept.),
    aff'd, 11 N.Y.2d 907 (N.Y. 1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

City of Syracuse v. R.A.C. Holding, Inc., 258 A.D.2d 905 (4th Dept. 1999) . . . . . . . . . . . . . . 17

Drago v. Buonagurio, 46 N.Y.2d 778 (N.Y. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Estate of Goth v. Tremble, 59 A.D.3d 839 (3d Dept. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Gautier v. Pro-Football, Inc., 304 N.Y. 354 (N.Y. 1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Gerzof v. Gulotta, 87 Misc. 2d 768 (Sup. Ct. Nassau Co. 1976),
    modified on other grounds, 57 A.D.2d 821 (1st Dept.),
    appeal dismissed, 42 N.Y.2d 960 (N.Y. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Howell v. New York Post Co., 81 N.Y.2d 115 (N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re Charges of Unprofessional Conduct Against N.P., 361 N.W.2d 386 (Minn. 1985) . . . . . . 10

Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173 (N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . 17

Matter of Abady, 22 A.D.3d 75 (1st Dept. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Paramount Film Distrib. Corp. v. State of New York, 30 N.Y.2d 415 (N.Y. 1972) . . . . . . . . . . 18

Reilly v. Rapperswill Corp., 50 A.D.2d 342 (1st Dept. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Shapiro v. McNeil, 92 N.Y.2d 91 (N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>**OTHER AUTHORITIES**</u>

28 U.S.C. § 1927 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 11 Advisory Committee's Note (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21

N.Y.R.P.C. 1.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

N.Y.R.P.C. 8.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

N.Y. Civil Rights L. § 51 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15, 23

N.Y. Jud. L. § 90(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Herbert and Hecker, <u>Entertainment Litigation Know the Issues and Avoid</u>
    <u>the Courtroom</u>, Ch. 4, p. 33 (N.Y.S.B.A. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

### Preliminary Statement.

This Memorandum of Law is respectfully submitted on behalf of Plaintiff Lindsay Lohan

("Ms. Lohan" or "Plaintiff") and her counsel, Stephanie G. Ovadia, Esq., in response to Defendants'

Motion for Sanctions (the "Motion for Sanctions") in connection with the above-captioned case (the

"Pitbull Case"). For the reasons more fully set forth below, we respectfully submit that:

- Defendants' plagiarism-related claim should be, and will be, addressed by an appropriate disciplinary authority empowered to investigate claims of attorney misconduct;

- The Motion for Sanctions is premature and, therefore, should be denied as this Court has yet to rule on Defendants' Motion to Dismiss now-pending before this Court;

- The Motion for Sanctions should be denied as the imposition of sanctions under Fed. R. Civ. P. 11 ("Rule 11") is not warranted; and

- The Motion for Sanctions should be denied as the imposition of sanctions under 28 U.S.C. § 1927 ("Section 1927") is not warranted.

Briefly, and only by way of introduction, on or about August 19, 2011, Ms. Lohan, an actress

and public figure, filed, through her counsel, Stephanie G. Ovadia, Esq., and co-counsel, Anand

Ahuja, Esq.,[1] an action in Supreme Court, Nassau County (the "Nassau County Action"), against

the Defendants, alleging, _inter alia_, the unauthorized use of Ms. Lohan's name in a song titled "Give

---

[1]Defendants' Motion for Sanctions was filed, in part, against Ms. Ovadia and Mr. Ahuja, who had an Of Counsel relationship, and served as co-counsel in the Pitbull Case. Through a discussion with defense counsel, your undersigned counsel and Ms. Ovadia learned for the first time ten days ago, on July 13, 2012 – _that approximately three weeks earlier and without the consent or knowledge of Ms. Ovadia or Ms. Lohan_ – Mr. Ahuja had served upon defense counsel his opposition papers to Defendants' Motion for Sanctions. Curiously, during the same period of time Mr. Ahuja was preparing to and did serve his opposition papers – _but to the exclusion of Ms. Lohan and Ms. Ovadia_ – Ms. Ovadia wrote to Mr. Ahuja several times to determine the status of Mr. Ahuja submitting opposition papers; and in his responses, Mr. Ahuja appears to have avoided answering the question and omitted the fact that he had _already_ served opposition papers (albeit without the knowledge or consent of Ms. Lohan or Ms. Ovadia). Accordingly, the within Memorandum of Law is only submitted on behalf of Ms. Lohan and Ms. Ovadia.

Me Everything" (the "Song").  Thereafter, Defendants filed a Notice of Removal (Dkt.[2] No. 1) to

have the Nassau County Action removed to this Court, where the Pitbull Case is now-pending.

On or about January 17, 2012, Defendants served their Motion to Dismiss the Pitbull Case

("Motion to Dismiss" [Dkt. Nos. 8, 9, 10]); and on or about February 28th, Plaintiff's counsel served

opposition papers ("Opposition to Dismiss" [Dkt. No. 11]) to Defendants' Motion to Dismiss.  By

letter to this Court dated April 4th (Dkt. No. 15), Defendants requested permission to file a Motion

for sanctions; and by letter to this Court dated April 30, 2012 (Dkt. No. 21), Plaintiff's counsel, Ms.

Ovadia, and co-counsel, Mr. Ahuja, responded in opposition to Defendants' April 4th letter.  In

connection with this Court's May 1, 2012 scheduling-related Order, the Defendants subsequently

served upon Plaintiff their Motion for Sanctions.  Defendants seek damages pursuant to this Court's

inherent powers, Section 1927 and Rule 11, alleging that in connection with the claims being pursued

in the Pitbull Case and defended in Plaintiff's Opposition to Dismiss, Ms. Lohan and her counsel

have engaged in sanctionable conduct, including, inter alia, asserting and defending frivolous claims,

engaging in plagiarism, and submitting a nonresponsive pleading.

Most regrettably, Defendants have accused Ms. Lohan of being an "opportunist."  (Def.

Motion for Sanctions, p. 15)  We say *most regrettably* because the Pitbull Case was precipitated by

Defendants opportunistically exploiting Ms. Lohan's personal struggles to boost record sales for

commercial gain.  Thus, a corollary question as to the issue of opportunity must be asked:

> *Absent their plagiarism-related claim, why did Defendants delay or*
> *forego filing, or seeking permission to file, their Motion for Sanctions*
> *concurrently with their Motion to Dismiss?*

---

[2]All references herein to "Dkt. No." followed by a number, refer to documents already
submitted to this Court as reflected in the ECF Docket in the Pitbull Case.

The answer to this question is also most regrettable.  As evidenced by the now-historic facts of this matter, Defendants appear to have made the strategic and deliberate choice to file their Motion for Sanctions – only *after* being armed with the plagiarism charge – for the purpose of further advancing and arguing Defendants' not-yet-decided Motion to Dismiss now-pending before this Court.[3]  Moreover, and without in any way attempting to minimize the seriousness of the plagiarism charge and the resulting attorney ethics related concerns, which cannot and will not be ignored – it was unfair and wrong for Defendants to transmit their April 4th letter submitted by Defendants to this Court thereby circumventing the protections afforded to Plaintiff and her counsel under Rule 11's mandatory safe harbor provision ("Safe Harbor Provision").

Accordingly, for these reasons, as more fully discussed below, we respectfully submit that Defendants' Motion for Sanctions should be denied.

## STATEMENT OF RELEVANT FACTS.

The facts relevant to the now-pending Motion for Sanctions are set forth below in summary fashion.  On or about August 19, 2011, the Plaintiff, Ms. Lohan, through her counsel, filed the Nassau County Action against the Defendants based upon the unauthorized use of her name in the Song (i.e.,"Give Me Everything"), seeking the following relief:  a) injunctive relief and monetary damages pursuant to New York Civil Rights Law Section 51; b) injunctive relief for violating Ms. Lohan's common law rights; and c) monetary damages for intentional infliction of emotional distress.  The Nassau County Action was subsequently removed to this Court (i.e.,the Pitbull Case).

---

[3] See generally New York State Thruway Authority v. Level 3 Communications, LLC, 734 F. Supp.2d 257, 270 (N.D.N.Y. 2010) ("where it appears that the invoking party may have strategically waited until an opportunistic moment arose to seek redress, in an urgent haste to gain some conceived tactical advantage ... , the Court should not be so inclined to find this factor for the moving party").

In January 2012, Defendants served their Motion to Dismiss (Dkt. Nos. 8-10); in February 2012, Ms. Ovadia and Mr. Ahuja served Plaintiff's Opposition to Defendants' Motion to Dismiss (Dkt. No. 11); and in March 2012, Defendants served their Reply in further support of their Motion to Dismiss. In March 2012, after the matter had been fully briefed, Defendants' Motion to Dismiss was fully submitted to this Court for its determination.

In their March 12, 2012 Reply, Defendants raised the plagiarism-related claim for the first time in this case, and in doing so attached to their Reply a "Similarity Report" and a "Similarity Index" ([referred to, collectively, as "Plagiarism Report"]), which contained, among other things, a percentage/numerical index as to the degree of plagiarism found within the offending document). The Plagiarism Report was created using iThenticate.com, a plagiarism detection software/website, and is dated March 9, 2012 at 7:57 a.m. (P.S.T.) (Dkt. No. 13, attached as Exhibit B to Declaration of Marcos Daniel Jimenez, Esq.; Exhibit[4] A [excerpted p. 1 of Similarity Report.) Although defense counsel had, apparently, received the Plagiarism Report as of March 9th and had subsequently exchanged emails and communicated with Plaintiff's counsel thereafter between March 9th and March 12th, at no point in time in these communications, did defense counsel notify Ms. Ovadia or Mr. Ahuja of the plagiarism-related claim.[5]

_____

[4] All references herein to "Exhibit" followed by a letter, refer to the Exhibits attached to the accompanying July 23, 2012 Declaration of your undersigned counsel.

[5] For example, prior to the Defendants filing their Reply, on March 9th – and *after* Defendants had already processed/received the Plagiarism Report – defense counsel emailed Ms. Ovadia and Mr. Ahuja with respect to the previously-served Motion to Dismiss and Opposition papers (i.e., inclusion of a Table of Authorities, etc.) (See Exhibit B.) Nowhere in their March 9th email did defense counsel raise the plagiarism claim. On March 12th – *after* Defendants had already processed/received the Plagiarism Report – defense counsel left a voicemail for and sent an email to Ms. Ovadia (see Exhibit B) regarding the Opposition to Dismiss (i.e., Table of Authorities, etc.). Nowhere in their March 12th email or voicemail, did defense counsel raise the plagiarism claim.

(continued...)

On approximately March 12th, Defendants' filed their Reply papers, which, for the first time, raised the plagiarism claim; and, thereafter, on April 4, 2012, Defendants filed a letter seeking the Court's permission to, inter alia, file its Motion for Sanctions based, in significant part, on the plagiarism-related claim.[6] By letter dated April 30, 2012 (Dkt. No. 21), Ms. Lohan's counsel, Ms. Ovadia and co-counsel Mr. Ahuja, responded to Defendants' April 4th letter. In connection with this Court's Order dated May 1, 2012, Defendants thereafter served their Motion for Sanctions.

Accordingly, for the reasons more fully set forth below, we respectfully submit this Memorandum of Law on behalf of Ms. Lohan and her counsel, Ms. Ovadia, in opposition to Defendants' Motion for Sanctions.

---

[5](...continued)

On March 12, 2012, Ms. Ovadia emailed defense counsel informing her of certain matters in connection with the Opposition papers (i.e., as to the Table of Authorities, etc.). (See Exhibit B.) Concededly, prior to March 12, 2012, Ms. Ovadia did not address the plagiarism claim in her March 12th email, nor did Ms. Ovadia, in her proposed Amended Opposition papers, seek to address the plagiarism claim – as Ms. Ovadia did not have knowledge of the alleged plagiarism in advance of Defendants submitting their Reply to this Court. Although defense counsel was, presumably, already in possession of the March 9th Plagiarism Report as of March 9th, defense counsel did not disclose this matter to Plaintiff or Plaintiff's counsel until Defendants publicly filed its Reply. Had defense counsel brought the plagiarism-related claim to the attention of Ms. Ovadia – after defense counsel became aware of the issue no later than the March 9th Plagiarism Report, and before defense counsel filed its March 12th Reply papers – Ms. Ovadia would have diligently, competently and ethically investigated and addressed this matter. Most respectfully, and for reasons that are rather self-evident, defense counsel appears to have made the strategic choice not to disclosure or otherwise provide notice to Ms. Ovadia of the plagiarism-related claim in advance of defense counsel serving and publicly filing Defendants' Reply (i.e., either by defense counsel discussing this claim with Ms. Ovadia or by way of advance notice pursuant to Rule 11's Safe Harbor Provision). Cf. Kornhauser v. Commissioner of Social Sec., 2012 WL 2505673, *2-3 (11th Cir. July 2, 2012) (vacating District Court's imposition of sanctions where attorney was not afforded fair notice of, and an opportunity to correct and/or modify, the offending conduct).

[6]As further discussed below, Defendants have not complied with Rule 11's Safe Harbor Provision. We respectfully submit Defendants' assertion that they are "not required to comply with Rule 11's Safe Harbor provision" (Def. Motion for Sanctions, p. 8) – is wrong. See Libaire v Kaplan, 2008 WL 794973, *12 (E.D.N.Y. Mar. 24, 2008) (Hurley, J.) (internal citations omitted; emphasis added); Rojas v. Schkoda, 319 Fed. Appx. 43, 44 (2d Cir. Apr. 3, 2009).

## ARGUMENT.

## I.

## DEFENDANTS' PLAGIARISM-RELATED CLAIM SHOULD BE, AND WILL BE, ADDRESSED BY AN APPROPRIATE DISCIPLINARY AUTHORITY EMPOWERED TO INVESTIGATE CLAIMS OF ATTORNEY MISCONDUCT.

### A.   INTRODUCTION.

Defendants, through their counsel, appear to have made the strategic choice to file their Motion for Sanctions only after they were armed with the serious charge of plagiarism for the purpose of further arguing the merits of Defendants' not-yet-decided Motion to Dismiss now-pending before this Court. We fully acknowledge that Mr. Ahuja's participatory conduct in drafting and submitting Plaintiff's Opposition to Dismiss (as well as other conduct only recently discovered) raise substantial questions concerning Mr. Ahuja's honesty, trustworthiness and/or fitness as a lawyer. Pursuant to Ms. Ovadia's legal and ethical obligations under Rule 8.3 of the New York Rules of Professional Conduct ("N.Y.R.P.C."), and consistent with Rule 1.5 of the Local Rules of this Court, Defendants' plagiarism-related claim should be, and will be, addressed by the appropriate disciplinary authority empowered to investigate claims of attorney misconduct. Indeed, these questions should be, and will be, addressed "*under the auspices of the appropriate bar association and should in no way be permitted to affect the decision on the merits of the case.*" Ceramco, Inc. v. Lee Pharmaceuticals, 510 F.2d 268, 271 (2d Cir. 1975) (emphasis added); see Matter of Mundie, 453 Fed. Appx. 9, 10-11, 18 (2d Cir. 2011) (pursuant to the Court's referral to its Committee on Admissions and Grievances, the Committee addressed in an attorney disciplinary proceeding – *not in the underlying litigation* – allegations of plagiarism-related misconduct similar to the claims raised in the Pitbull Case).

6

Concededly, "the inherent power of the [this Court] also includes the power to police the conduct of attorneys as officers of the court, and to sanction attorneys for conduct not inherent to client representation, such as, violations of court orders or other conduct which interferes with the court's power to manage its calendar and the courtroom without a finding of bad faith." United States v Seltzer, 227 F.3d 36, 42 (2d Cir. 2000).  However, as to the plagiarism-related attorney misconduct claim asserted by Defendants – generally, courts are also skeptical of lawyers' and their clients' ethical attacks against other lawyers.  See In re Pfizer Inc. Securities Litigation, 2012 WL 1059671, *8 (S.D.N.Y. Mar. 29, 2012) (Swain, J.).  These strategic attacks have influenced courts to prevent or seriously limit the ability of lawyers and their clients to allege ethical violations against other lawyers.  Id., citing McNamara v. Bre-X Minerals, Ltd., 2003 U.S. Dist. LEXIS 25641, *52-54 (E.D. Tex. Mar. 31, 2003).  It was further acknowledged that "contentions regarding ethical lapses can be better advanced in a proper disciplinary forum."  In re Pfizer Inc. Securities Litigation, 2012 WL 1059671, *8; see also In re Dynex Capital, Inc. Sec. Litig., 2011 WL 2581755, *6 n.8 (S.D.N.Y. Apr. 29, 2011) (Freeman, M.J.) (Report and Recommendation) (recognizing that courts have requested that ethical complaints be brought in the appropriate legal disciplinary forums), Report and Recommendation adopted at 2011 WL 2471267 (S.D.N.Y. June 21, 2011) (Baer, J.).

Accordingly, for the reasons more fully discussed below, we respectfully submit the proper forum in which to address the allegation of attorney misconduct now asserted in the above-captioned matter against Ms. Lohan's counsel is in an attorney disciplinary proceeding.

**B.    DEFENDANTS' ALLEGATIONS OF ATTORNEY MISCONDUCT AGAINST PLAINTIFF'S COUNSEL SHOULD BE, AND WILL BE, ADDRESSED BEFORE THE APPROPRIATE ATTORNEY DISCIPLINARY AUTHORITY.**

It is well-established that the remedy for a supposed violation of the New York Rules of Professional Conduct (formerly the New York Lawyer's Code of Professional Responsibility) is not

7

typically with the court in which the underlying litigation is pending, but with the appropriate attorney disciplinary authority. See Shapiro v. McNeil, 92 N.Y.2d 91, 97 (N.Y. 1998), citing Drago v. Buonagurio, 46 N.Y.2d 778, 779-80 (N.Y. 1978) ("Whatever may be the constraints imposed by the Code of Professional Responsibility with the associated sanctions of professional discipline when baseless legal proceedings are instituted by a lawyer on behalf of a client, the courts have not recognized any liability of the lawyer to third parties, therefore, where the factual situations have not fallen within one of the acknowledged categories of tort or contract liability."); see also Hashemi v. Shack, 609 F. Supp. 391, 397 (S.D.N.Y. 1984) (Sofaer, J.) (same, citing Drago, supra).

The New York State Bar Association explains:

> "The Rules [of Professional Conduct] are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, *the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons*. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, *does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule*. Nevertheless, because the Rules do establish standards of conduct by lawyers, a lawyer's violation of a Rule may be evidence of breach of the applicable standard of conduct."

N.Y.S.B.A. Cmt. [12] of Preamble to N.Y. Rules of Prof. Conduct (2009) (emphasis added); see also Georgine v. Amchem Products, Inc., 157 F.R.D. 246, 330 (E.D. Pa. 1994) (citations omitted).

The Second Circuit has further explained that, "[g]iven the availability of both federal and state comprehensive disciplinary machinery, ... there is usually no need to deal with all other kinds of ethical violations in the very litigation in which they surface. Board of Education v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979). Moreover, "[c]ourts are neither the sole forum for adjudicating alleged ethical lapses nor even the best forum for doing so....[B]ar authorities ... have a specific

mandate to enforce the disciplinary rules of their respective jurisdictions and to sanction the attorneys who violate those rules...." Almonte v. City of Long Beach, 2007 WL 951863, *3 (E.D.N.Y. Mar. 27, 2007) (Orenstein, J.).

To ensure that Ms. Lohan's counsel, Ms. Ovadia, has a full and fair opportunity to address and defend herself against all allegations of plagiarism-related misconduct asserted by Defendants, presumably, additional fact-finding will be necessary, including, but not limited to: submitting for the Court's consideration documentary evidence, which would likely include what would otherwise constitute attorney-client confidential information; briefing various attorney ethics-related issues; and eliciting testimony on direct and cross-examination from various witnesses, including current and former lawyers, law firm employees, etc. Most respectfully, for this Court to investigate the conduct of Ms. Lohan's counsel, it, in effect, would "transform[] the trial judge into the Grievance Committee of the bar association which is certainly not his function." Lefrak v. Arabian American Oil Co., 527 F.2d 1136, 1141 (2d Cir. 1975).

A final observation is appropriate in light of the attorney misconduct and disciplinary-type claims made in Defendants' Motion for Sanctions, and in light of the collateral estoppel effect that the adjudication of the plagiarism-related claim may have on Plaintiff's counsel.[7] We respectfully request that this Court consider the legal principle that attorney disciplinary proceedings are considered "quasi-criminal" in nature. See In re Peters, 642 F.3d 387, 389 (2d Cir. 2011), citing In re Ruffalo, 390 U.S. 544, 550-51 (1968), and Erdmann v. Stevens, 458 F.2d 1205, 1209 (2d

---

[7]See Matter of Abady, 22 A.D.3d 75, 81 (1st Dept. 2005) (in an attorney disciplinary proceeding "[t]he doctrine of collateral estoppel precludes a party from relitigating 'an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point'...."; citations omitted); see also Matter of Veski, 29 A.D.3d 250, 251 (1st Dept. 2006); Matter of Goldman, 20 A.D.3d 90, 92 (1st Dept. 2005).

9

Cir.1972); Gerzof v. Gulotta, 87 Misc. 2d 768, 775 (Sup. Ct. Nassau Co. 1976), modified on other grounds, 57 A.D.2d 821 (1st Dept.), appeal dismissed, 42 N.Y.2d 960 (N.Y. 1977).

We refer to this principle that a disciplinary proceeding is a quasi-criminal proceeding because New York's Rules of Professional Conduct permit severe and stigmatizing sanctions that, in effect, deprive an attorney of the liberty to practice his chosen profession. See, e.g., Willner v. Committee on Character and Fitness, 373 U.S. 96, 103-06 (1963); Schware v. Bd. of Bar Examiners, 353 U.S. 232, 238-39 (1957); Charlton v. FTC, 543 F.2d 903, 906 (D.C. Cir. 1976); In re Ming, 469 F.2d 1352, 1355 (7th Cir. 1972). Disciplinary proceedings are considered "quasi-criminal" in nature, and attorneys in such proceedings are "accordingly entitled to procedural due process, which includes fair notice of the charge." In re Ruffalo, 390 U.S. at 550-52 (reversing attorney's federal disbarment because he had been denied procedural due process); see also In re Charges of Unprofessional Conduct Against N.P., 361 N.W.2d 386, 394 (Minn. 1985) ("[t]here is no question that attorneys subject to disciplinary investigations are entitled to due process[, which] includes adequate notice"), appeal dismissed, 474 U.S. 976 (1985). Sakon v Andreo, 119 F.3d 109, 114 (2d Cir 1997) ("before the court imposes 'any kind of sanctions,' it must afford the person to be sanctioned due process....'Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record'"; internal citations omitted). Fair notice is the sine qua non for the imposition of any attorney discipline.

In In re Peters, the District Court refused to suspend an attorney for her misconduct even after a very extensive five-day evidentiary hearing, choosing instead to refer the attorney to the appropriate Grievance Committee "because of the procedural protections inherent to that process." Peters, 642 F.3d at 389, quoting Wolters Kluwer Financial Services v. Scivantage, 525 F. Supp.2d 448, 550 (S.D.N.Y. 2007) (internal quotations omitted). Based upon the District Court's declining to suspend

the attorney accused of misconduct, it is apparent that "the very judge who conducted the hearing did not believe that procedures employed were necessarily sufficient for purposes of a suspension." Peters, 642 F.3d at 389 (as to certain allegations, evidence "was not adequately developed during that prior proceeding so as to permit the Grievance Committee to forego an independent evidentiary hearing in the present matter," and as a result, the Court vacated "the Grievance Committee's suspension order and remand[ed] the matter for the Committee to hold further proceedings....").

We fully recognize that the conduct giving rise to Defendants' plagiarism-related claim in the Pitbull Case raises substantial questions concerning ethics-related attorney conduct. However, to the extent that this Court determines that any further action is now required with respect to Defendants' plagiarism-related claim – that matter should not interfere with, or distract from, the merits of the underlying matter now before this Court. Accordingly, without waiving the confidentiality[8], we respectfully submit that Defendants' plagiarism-related claim should be, and will be, addressed by the appropriate disciplinary authority empowered to investigate claims of attorney misconduct; and, accordingly, Ms. Ovadia is taking appropriate steps, both legally and ethically, to discharge her obligations pursuant to N.Y.R.P.C. 8.3, and consistent with Rule 1.5 of the Local Rules of this Court.

## C.   DEFENDANTS HAVE NOT COMPLIED WITH RULE 11'S MANDATORY SAFE HARBOR PROVISION.

We respectfully submit that Defendants have not complied with Rule 11(c)(2)'s mandatory Safe Harbor Provision, which provides, in relevant part, that:

> "A motion for sanctions [under Rule 11] must be made *separately from any other motion* ... and ... [t]*he motion must be served under*

---

[8]Pursuant to and consistent with, inter alia, N.Y.R.P.C. 1.5, Judiciary Law Section 90(10) and Local Rule 1.5 of this Court, we will not address the specific facts relating to Mr. Ahuja's conduct. Should the Court require additional information in this regard, your undersigned counsel will *immediately* respond on a confidential basis, ex parte and in camera, to any such request.

> *Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days...*" (Emphasis added).

In denying sanctions under Rule 11 due to the moving party's failure to comply Rule 11's mandatory Safe Harbor Provision, this Court made clear that:

> " ... Rule 11 contains a 'safe harbor' provision, which requires that, where sanctions are initiated by motion of a party, the motion is to be served on the allegedly offending party twenty-one (21) days before it is filed with the court....This provision 'gives the subject [of the motion] the opportunity to withdraw the potentially offending statements before the sanctions motion is officially filed.'.... Compliance with Rule 11's safe harbor provision is mandatory such that the failure to do so will result in a denial of the sanctions motion."

Libaire v Kaplan, 2008 WL 794973, *12 (E.D.N.Y. Mar. 24, 2008) (Hurley, J.) (internal citations omitted); Rojas v. Schkoda, 319 Fed. Appx. 43, 44 (2d Cir. Apr. 3, 2009) (affirming this Court's denial of Rule 11 sanctions where movant failed to comply with Rule 11's Safe Harbor Provision).

In the Pitbull Case, Defendants have failed to comply with both requirements of Rule 11's Safe Harbor Provision. *First*, Defendants failed to make a Motion for Rule 11 sanctions separate and apart from their Motion for Sanctions under Section 1927 and this Court's inherent powers; and *second*, Defendants filed their Motion for Sanctions without proper notice under Rule 11's 21-day Safe Harbor Provision. At no point in time did Defendants inform Ms. Lohan or her counsel that they were seeking sanctions under Rule 11 *before* submitting their April 4th Letter that set forth their bases for sanctions (e.g., plagiarism, frivolous claims submitted in bad faith, etc.), thereby, improperly presenting their Motion for Sanctions to this Court. We respectfully submit that it was unfair and wrong for Defendants to submit their April 4th letter, which had the effect of circumventing the protections afforded to Plaintiff and her counsel under the Safe Harbor Provision.

We respectfully submit Defendants' assertion that they are *"not required to comply with Rule 11's Safe Harbor provision"* (Def. Motion for Sanctions, p. 8; emphasis added) – is wrong.  In support of this assertion, Defendants cite two non-New York cases, First Bank of Marietta v. Hartford Underwriters Ins. Co., 307 F.3d 501, 518 (6th Cir. 2002), and Gordon v Royal Palm Real Estate Inv. Fund I, LLLP, 2011 WL 108917 (E.D. Mich. Jan. 10, 2011).  Neither the First Bank of Marietta nor the Gordon case stand for the proposition asserted by the Defendants.[9]  Although Plaintiff's Counsel acknowledges that there is an independent basis for this Court, in its discretion, to impose sanctions pursuant to its inherent powers[10] – we respectfully submit that it cannot be fairly argued that the same inherent powers were intended, under facts presented here, to authorize Defendants' noncompliance with Rule 11's Safe Harbor Provision, as Defendants appear to suggest.

---

[9]First Bank of Marietta, 307 F.3d at 503, 526-27 (Circuit Court affirmed the District Court's determination that attorneys' fees and costs were *not* available under Rule 11 because moving party failed to comply with Rule 11's Safe Harbor Provision); Gordon, 2011 WL 108917 at *7 (discussing well-settled law that Rule 11 "'unquestionably explicit' in making the safe harbor provision an 'absolute requirement'" [internal citations omitted], but noting no Safe Harbor requirement when Rule 11 sanctions are initiated by the court; internal citation omitted).

[10]Because Defendants' claim for sanctions pursuant to the Court's inherent powers is essentially predicated upon the same claims that comprise Defendants' Rule 11 and Section 1927 claims, the inherent powers claims will not be separately addressed herein.  Suffice it to say, Plaintiff's counsel fully recognizes that this Court has the "inherent power" to impose sanctions against a lawyer or the lawyer's client when warranted.  See Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 99, 106-07 (2d Cir. 2002), citing DLC Management Corp. v. Town of Hyde Park, 163 F.3d 124, 135-36 (2d Cir.1998), and Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991).  "One component of a court's inherent power is the power to assess costs and attorneys' fees against either the client or his attorney where a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  Flaherty v. Filardi, 2008 WL 4200577, *4 (S.D.N.Y. Sept. 12, 2008) (internal citations omitted; Marano v. Aaboe, 2007 WL 3195156 (S.D.N.Y. Oct. 29, 2007) (Ellis, J.) (citations omitted).  The imposition of sanctions pursuant to the Court's inherent powers require a clear finding of bad faith – "'Bad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." Wolters Kluwer Financial, 525 F. Supp.2d at 538-39, citing Hall v. Cole, 412 U.S. 1, 15 (1973).  We respectfully submit Defendants have failed to prove that Plaintiff or Plaintiff's counsel, Ms. Ovadia, have acted in bad faith in the Pitbull Case.

Accordingly, notwithstanding Defendants failure to comply with Rule 11's mandatory Safe Harbor Provision, Ms. Lohan's counsel is preparing to take and will take appropriate steps, to the extent permitted by this Court, to amend Plaintiff's Opposition to Dismiss, rendering any issue of plagiarism moot.

## II.
### DEFENDANTS' MOTION FOR SANCTIONS IS PREMATURE.

Again, most regrettably, Defendants, through their counsel, appear to have made the strategic choice to file their Motion for Sanctions – only after they were armed with the serious charge of plagiarism – for the purpose of further arguing the merits of Defendants' not-yet-decided Motion to Dismiss.  We respectfully submit that Defendants' Motion for Sanctions is premature because sanctions should only be imposed after all the facts are presented to the Court for its final determination; and the Court is in the best position to make a determination as to the Motion for Sanctions at the end of the Pitbull Case, or at the very least, after a determination as to the now-pending Motion to Dismiss.  See Louros v. Kreicas, 2003 WL 22353979, *2 (S.D.N.Y. Oct. 15, 2003); Sierra Rutile Ltd. v. Bomar Resources, Inc., 1990 WL 83510, *2 (S.D.N.Y. June 12, 1990), citing Sound Video Unlimited, Inc. v. Video Shack Inc., 700 F. Supp. 127, 149 (S.D.N.Y. 1988).

As the Honorable Jack B. Weinstein explained, with language particularly relevant here:

> "Court opinions on attorney's fees [i.e., sanctions] speak easily of cases being either frivolous or nonfrivolous, as if all cases fit easily into one or the other category.  Reality is more complicated.  In the legal world, claims span the entire continuum from overwhelmingly strong to outrageously weak.  Somewhere between these two points, courts draw a line to separate the nonfrivolous from the frivolous, the former category providing safe shelter, the latter subjecting attorney and client to sanctions.
>
> Attorneys are thus placed in a dilemma because they have the right – in fact, they have the ethical obligation (subject to tactical considerations) – to present to the court all the nonfrivolous arguments

14

> that might be made on their clients' behalf, even if only barely nonfrivolous. They are forced by their position as advocates in the legal profession to live close to the line, wherever the courts may draw it. Yet Rule 11 threatens them with severe sanctions if they miscalculate ever so slightly the location of that line. As a result many members of the bar are concerned that Rule 11 will discourage attorneys from pursuing novel yet meritorious legal theories....The necessity of avoiding such an effect has also been widely recognized....
>
> In part, the solution seems to lie in frank recognition of the fact that rather than being adequately described by the frivolous-nonfrivolous dichotomy, cases really do lie along a continuum. Some are clearly frivolous, some clearly nonfrivolous, and some are difficult to call.....
>
> Sometimes there are reasons to sue even when one cannot win. Bad court decisions must be challenged if they are to be overruled, but the early challenges are certainly hopeless....

Eastway Const. Corp. v. City of New York, 637 F. Supp. 558, 574-75 (E.D.N.Y. 1986) (internal citations and quotations omitted), order mod. and remanded, 821 F.2d 121 (2d Cir 1987).

Stated another way, the decision to impose sanctions does not hinge on whether Plaintiff's claims will succeed on the merits, but, rather, whether the claims have a good faith basis grounded in law. Accordingly, for the reasons set forth below in summary fashion, we respectfully submit that Plaintiff's claims and defenses to those claims have a good faith basis grounded in law.

First, Defendants contend that Ms. Lohan's claim under New York Civil Rights Law Section 51(the "Civil Rights Claim") is not warranted by existing law. Plaintiff's counsel respectfully disagree insofar as the Civil Rights Claim asserted and defended on behalf of Ms. Lohan is "warranted by existing law or by a nonfrivolous argument for extending ... existing law or establishing new law." Fed. R. Civ. P. 11(b)(2). "The 'right of publicity' evolved from the recognition that a particular value attaches to the name and likeness of those people what have achieved celebrity status through publicity, and that such identities, like stocks and bonds, are

money-making assets which enhance the sales of those products with which the celebrity's name is associated."  Herbert and Hecker, <u>Entertainment Litigation Know the Issues and Avoid the Courtroom</u>, Ch. 4, p. 33 (N.Y.S.B.A. 2007).  Plaintiff's counsel had a good faith basis in law and fact to assert Ms. Lohan's Civil Rights Claim – Ms. Lohan's *name* was used *without her consent* for a *commercial purpose*.

Defendants claim that the use of Ms. Lohan's name falls under the right of free expression.  However, "[t]hat [plaintiff] may have voluntarily on occasion surrendered her privacy, for a price or gratuitously, does not forever forfeit for anyone's commercial profit so much of her privacy as she has not relinquished."  <u>Booth v. Curtis Publishing Co.</u>, 15 A.D.2d 343, 352 (1st Dept.), <u>aff'd</u>, 11 N.Y.2d 907 (N.Y. 1962) (citations omitted); <u>accord</u> <u>Gautier v. Pro-Football, Inc.</u>, 304 N.Y. 354, 359 (N.Y. 1952); <u>Reilly v. Rapperswill Corp.</u>, 50 A.D.2d 342, 344 (1st Dept. 1975).[11]  Ms. Lohan has a right in the publicity value of the use of her name, and Ms. Lohan's name should not be used for a commercial purpose without her express permission.  Accordingly, Ms. Lohan's Civil Rights Claim is nonfrivolous and was brought in good faith.

*Second*, Defendants contend that Ms. Lohan's Intentional Infliction of Emotional Distress claim is not warranted by existing law.  Plaintiff's counsel respectfully disagrees insofar as the Intentional Infliction of Emotional Distress claim asserted and defended on behalf of Ms. Lohan is "warranted by existing law or by a nonfrivolous argument for extending ... existing law or

---

[11]<u>See</u> <u>Parks v. LaFace Records</u>, 329 F.3d 437, 442 (6th Cir. 2003) ("the evidence is such that a reasonable jury could return a verdict for the nonmoving party"), quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>see</u> also <u>Ali v. Playgirl, Inc.</u>, 447 F. Supp. 723, 727-28 (S.D.N.Y. 1978); <u>Haelan Laboratories v. Topps Chewing Gum</u>, 202 F.2d 866, 867 (2d Cir. 1953) ("The contract with plaintiff was no more than a release by the ball-player to plaintiff of the liability which, absent the release, plaintiff would have incurred in using the ball-player's photograph, because such a use, without his consent, would be an invasion of his right of privacy under Section 50 and Section 51 of the New York Civil Rights Law; this statutory right of privacy is personal....").

establishing new law." Fed. R. Civ. P. 11(b)(2).  The elements of an intentional infliction of emotional distress are: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and the injury; and (iv) severe emotional distress." Howell v. New York Post Co., 81 N.Y.2d 115, 121 (N.Y. 1993); accord Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996). However, "[d]etermining whether conduct is so outrageous as to 'exceed all reasonable bounds of decency' or be 'utterly intolerable in a civilized society' is a fact-specific inquiry." Netzer v. Continuity Graphic Associates, Inc., 963 F. Supp. 1308, 1327 (S.D.N.Y. 1997).

Plaintiff's counsel, on behalf of Ms. Lohan, had a good faith basis to assert that Defendants' conduct was extreme and outrageous; the manner in which her name was used satisfied the other elements of the claim; and there was a causal connection between the use of Ms. Lohan's name in a commercially and socially successful song, which resulted in her severe emotional distress.

*Third*, Defendants contend that Ms. Lohan's Unjust Enrichment claim is not warranted by existing law.  Plaintiff's counsel respectfully disagrees insofar as the Unjust Enrichment claim asserted and defended on behalf of Ms. Lohan is "warranted by existing law or by a nonfrivolous argument for extending ... existing law or establishing new law." Fed. R. Civ. P. 11(b)(2).  The elements of an unjust enrichment claim are: "(1) the other party was enriched, (2) at that party's expense, and (3) that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered.'" Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 182 (N.Y. 2011) (citations omitted); see also City of Syracuse v. R.A.C. Holding, Inc., 258 A.D.2d 905, 906 (4th Dept. 1999).  In this regard, the core question as to an unjust enrichment "'is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.'"

Mandarin Trading, 16 N.Y.3d at 182, quoting Paramount Film Distrib. Corp. v. State of New York, 30 N.Y.2d 415, 421 (N.Y. 1972).

As noted earlier, the Song utilizing Ms. Lohan's name achieved commercial success. According to the Defendants: "In the United States, the Song hit Number One on the Billboard Hot 100. It also peaked at Number One in the United Kingdom, Belgium, Canada, Ireland, the Netherlands, and within the top-five in twelve countries. Worldwide, it was the seventh best-selling digital single of 2011 with sales of 8.2 million copies." (Motion for Sanctions, p. 16 n.8) Accordingly, Ms. Lohan had a good faith belief that Defendants were profiting off the use of her name in their Song, at her expense and, therefore, Ms. Lohan's claim for damages in this regard is not frivolous.[12]

*Fourth*, Defendants contend that Ms. Lohan's requests for Injunctive Relief, Accounting and Attorneys' Fees are not warranted by existing law. We respectfully disagree insofar as those claims asserted and defended on behalf of Ms. Lohan are "warranted by existing law or by a nonfrivolous argument for extending ... existing law or establishing new law." Fed. R. Civ. P. 11(b)(2). Defendants contend that "[t]hese draconian requests are merely tacked on to the 'wherefore' clause at the end of the Complaint, with no allegations as to why Plaintiff is entitled to them." (Motion for Sanctions, p. 13) Plaintiff's counsel had a good faith basis to request relief based on the merits of Ms. Lohan's claims, which are legally and factually supported and were made in good faith.

---

[12]Here, Ms. Lohan did not voluntarily provide the use of her name to Defendants, and was opposed to such use; Defendants profited from the use of Ms. Lohan's name; and, therefore, there was a good faith legal basis to assert the unjust enrichment claim. Contra Estate of Goth v. Tremble, 59 A.D.3d 839, 842 (3d Dept. 2009) ("defendant's candid admissions that he voluntarily provided services ... without expectation of any compensation" defeated unjust enrichment claim).

Presently, the Motion to Dismiss has been fully submitted and is awaiting decision.  Until a decision has been rendered on the Motion to Dismiss, we respectfully submit that a determination that sanctions are warranted is premature.  See GTFM Inc. v. International Basic Source, Inc., 2002 WL 42884, *2 (S.D.N.Y. Jan. 11, 2002) ("Basic's motion for sanctions under Rule 11 is premature since the issue will be moot if jurisdiction can be established."); see also Micare v. Foster & Garbus, 132 F. Supp.2d 77, 82 (N.D.N.Y. 2001) ("[g]iven the necessity of determining that an action was brought in bad faith and for the purpose of harassment, such a finding cannot be made until the merits of the case are determined"; quotations and citations omitted); Herrera v. Scully, 143 F.R.D. 545, 552 (S.D.N.Y. 1992) ("request for Rule 11 sanctions is premature because the Court is not in a position to make a definitive finding pursuant to the Rule without having the complete evidence ... before it").

Defendants' Motion for Sanctions refers to the Opposition to Dismiss as "baseless" and "frivolous" – however, in first determining the merits of the now-pending Motion to Dismiss, this Court may disagree with the Defendants' claims asserted in their Motion to Dismiss thereby, in effect, rendering the Motion for Sanctions moot.  Accordingly, we respectfully submit that Defendants' Motion for Sanctions is premature at this time and, therefore, should be denied.

### III.
### THE IMPOSITION OF SANCTIONS
### UNDER FED. R. CIV. P. 11 IS NOT WARRANTED.

Defendants claim that Plaintiff and Plaintiff's counsel have been "asserting and continuing to advocate frivolous claims in bad faith."  (Def. Motion for Sanctions, p. 4.)  We respectfully disagree.  For the reasons set forth above, and in other papers submitted to this Court, the claims asserted and defended on behalf of Ms. Lohan are "warranted by existing law or by a non-frivolous argument for extending ... existing law or establishing new law." Fed. R. Civ. P. 11(b)(2).

19

When determining whether Rule 11(b) has been violated, courts apply an objective standard of reasonableness. See Catcove Corp. v. Patrick Heaney, 685 F. Supp.2d 328, 337 (E.D.N.Y. 2010) (Seybert, J.) (citations omitted). A claim may be deemed objectively unreasonable if at the time the pleading was signed, "it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands." Eastway Const. Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985), cert. denied, 484 U.S. 918 (1987). Significantly, courts are expected to "resolv[e] all doubts in favor of the part[y]" subjected to sanctions. Coakley v. Jaffe, 72 F. Supp.2d 363, 365 (S.D.N.Y. 1999).

The following sanctions-related factors, among others, have been relied upon by courts:

> "Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense...."

Fed. R. Civ. P. 11 Advisory Committee's Note (1993); see Tomaino v. Gasparik, 2006 WL 1318365, *3 (E.D.N.Y. May 12, 2006) (Platt, J.);

For example, in Ahmed v. Gateway Group One, 2012 WL 2061601, *5 (E.D.N.Y. June 7, 2012) (Cogan, J.), the Court imposed sanctions against an attorney who, among other things: had a long history of filing briefs fraught with inaccuracies; consistently ignored court orders; disregarded accepted legal precedent; repeatedly cited bad law; and appeared to misunderstand the law resulting in noncompliance with procedural requirements. The attorney's conduct in the Ahmed case stands in stark contrast to the alleged conduct of Ms. Lohan and her counsel, Ms. Ovadia – that is where there is no credible, reasonable legal or factual basis to conclude that the claims and defenses interposed on behalf of Ms. Lohan are without any basis whatsoever in law. Moreover, in stark

20

contrast to the sanctionable conduct in the <u>Ahmed</u> case, Plaintiff's counsel does not have a "history ... that demonstrates [a] habit of disregarding well-settled law," interposing frivolous claims or submitting briefs filled with legal and factual inaccuracies. <u>Ahmed</u>, 2012 WL 2061601, *5.

Admittedly, reasonable minds can disagree as to the merits of claims asserted on behalf of a party – but "[even where] [t]here is no doubt that the arguments presented by [a party are] not persuasive ... to constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." <u>Mareno v Rowe</u>, 910 F.2d 1043, 1047 (2d Cir 1990) (internal citations omitted). Stated another way, even where a court concludes that a particular claim lacks sufficient merit, the assertion alone does not *automatically* warrant the imposition of sanctions. <u>See</u> <u>Tomaino</u>, 2006 WL 1318365, *3; <u>Mareno</u>, 910 F.2d at 1047.

It is uncontested that Defendants used Ms. Lohan's name without her written consent, but it appears that the last element of the Civil Rights Claim – *for purposes of advertising or trade* has been questioned by the Defendants and may be the subject of judicial interpretation. Therefore, for Defendants to assert that this claim has no chance of success or is otherwise absolutely baseless, is wrong; and a possibility of success, regardless of how <u>de</u> <u>minimis</u>, if made in good faith, should not result in the imposition of sanctions. Stated another way, "Rule 11 motions ... should not be employed ... to test the legal sufficiency or efficacy of allegations in the pleadings....Nor should Rule 11 motions be prepared to emphasize the merits of a party's position." Fed. R. Civ. P. 11 Advisory Committee's Note (1993).

Accordingly, we respectfully submit that Rule 11 sanctions are not warranted, and that this Court should reject Defendants' strategic use of the plagiarism charge to further argue the merits of Defendants' not-yet-decided Motion to Dismiss now-pending before this Court.

21

## IV.
## THE IMPOSITION OF SANCTIONS
## UNDER 28 U.S.C. § 1927 IS NOT WARRANTED.

We respectfully submit that the imposition of sanctions against Ms. Lohan and her counsel are not warranted pursuant to Section 1927, which provides in relevant part:

> "Any attorney or other person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess cost, expenses, and attorneys' fees reasonably incurred because of such conduct."

The imposition of sanctions is not warranted because, as evidenced by the discussion above and in the other papers now before this Court, the Defendants have not proven that: Ms. Lohan's counsel, the evidence presented by Defendants must clearly establish the following: (1) Ms. Lohan's claims are entirely *without color*; and (2) the claims were filed in *bad faith*, i.e., motivated by some improper purpose, including but not limited to, harassment or delay. See Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir. 2000) (citations omitted).[13] Before imposing sanctions, under Section 1927, the Defendants must satisfy both of these requirements; "neither meritlessness alone nor improper purpose alone will suffice." McCune v. Rugged Entertainment, LLC., 2010 WL 1189390, *3 (E.D.N.Y. Mar. 29, 2010) (Matsumoto, J.), quoting Sierra Club v. U.S. Army Corps of Engineers, 776 F.2d 383, 390 (2d Cir. 1985) (internal quotations omitted).

A claim is considered "colorable" "when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." Nemeroff v. Abelson, 620 F.2d

---

[13]Before a imposing sanctions under Section 1927, Defendants must prove that Plaintiff and/or Plaintiff's counsel acted in bad faith. See McMahon v. Shearson/American Exp., Inc., 896 F.2d 17, 23 (2d Cir. 1990); Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986) ("[A]n award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."); see also In re Air Disaster at Lockerbie, Scotland, 144 F.R.D. 613, 617 (E.D.N.Y. 1992) (Platt, J.).

22

339, 348 (2d Cir. 1980). Therefore, the appropriate query "is whether a reasonable attorney could have concluded that facts supporting the claim *might* be established." Id. (emphasis added) At this stage in the litigation, the issue with regard to sanctions is not whether the facts have, in fact, been established – all that is required is some possibility that the facts will be established. Accordingly, we respectfully submit that a reasonable attorney, such as Ms. Ovadia, could have concluded, and did conclude, that Ms. Lohan's name was used without her consent for a advertising or trade in violation of New York Civil Rights Law Section 51.

As for the second requirement, historically, the Second Circuit has been conservative in its interpretation of "bad faith" as it relates to determining whether to impose sanctions – specifically because the Court is concerned that litigants and their counsel will use or threaten sanctions for the purpose of seeking to gain a tactical advantage in litigation. McCune, 2010 WL 1189390, *3, citing Eisemann, 204 F.3d at 396. In this regard, the Second Circuit has noted:

> "To ensure ... that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color, *and are taken for reasons of harassment or delay of for other improper purposes and a high degree of specificity in the factual findings of the lower courts.*"

Eisemann, 204 F.3d at 396, quoting Dow Chem. Pacific Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 344 (2d Cir. 1986) (emphasis added; internal quotations omitted).

A finding of bad faith on the part of Ms. Lohan, and her counsel, requires Defendants to prove: (i) the claims in the Pitbull Case were brought for an improper purpose, such as harassment or delay; and (ii) factual findings must contain a high degree of specificity. See McCune, 2010 WL 1189390, *3. For example, this Court determined a finding of bad faith, and that sanctions under Section 1927 was appropriate under the following circumstances:

23

> "[R]esubmitting a motion that had previously been denied; bringing a motion based on 'facts' the opposite of which were previously found by the court; making several insupportable bias recusal motions and repeated motions to reargue; continually engaging in obfuscation of the issues, hyperbolism and groundless presumptions in addition to insinuating that the court was biased; and waiting until the eve of trial before making a jury demand."

Hudson Motors Partnership v. Crest Leasing Enterprises, Inc., 845 F. Supp. 969, 978-79 (E.D.N.Y. 1994) (Glasser, J.) (internal citations and quotations omitted).[14]

In stark contrast to the bad faith and sanctionable conduct in the Hudson Motors Partnership case, it is evident that Ms. Lohan and her counsel did not institute this proceeding for some improper purpose; and Ms. Lohan and her counsel did not seek to harass Defendants or delay the proceedings. Furthermore, Ms. Lohan and her counsel did not harbor some ulterior motive for filing the within action against the Defendants. See Keller v. Mobil Corp., 55 F.3d 94, 99 (2d Cir. 1995). In fact, Plaintiff's counsel reasonably believed, and had a good faith basis for that belief, that the claims asserted on behalf of Ms. Lohan were legally and factually sufficient. See Nemeroff, 620 F.3d at 349 ("Even if some or all of the[] facts were not in fact true or might later fail to be established, that is irrelevant to the determination of bad faith under the law....To require more would promote the unwarranted abortion of many potentially meritorious claims."); Knorr Brake Corp. v. Harbil, Inc., 738 F.2d 223, 226-27 (7th Cir. 1984) ("Where ... counsel's alleged misconduct was the filing and

---

[14]See generally Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 96 (2d Cir. 1997) (Section 1927 sanctions particularly apply to "obnoxious conduct during the course of litigation"); Roadway Express, Inc. v. Piper, 447 U.S. 752, 757 (1980) (Section 1927 sanctions apply to conduct that "unreasonably extend[s] court proceedings"); Braley v. Campbell, 832 F.2d 1504, 1511 (10th Cir. 1987) (en banc) (sanctions under Section 1927 are only appropriate when attorney acts "'recklessly or with indifference to the law'"; citation omitted); Miera v. Dairyland Ins. Co., 143 F.3d 1337, 1342 (10th Cir. 1998) (sanctions can only be levied "when an attorney is cavalier or bent on misleading the court; intentionally acts without a plausible basis; [or] when the entire course of the proceedings was unwarranted"; quotations and citations omitted).

arguing of a claim, it is not sufficient that the claim be found meritless; the claim must be without a plausible legal or factual basis and lacking in justification.").

We respectfully submit that Defendants have failed to prove that the claims asserted and defended on behalf of Ms. Lohan are entirely without color and were made in bad faith for some improper purpose. Accordingly, Defendants' Motion for Sanctions pursuant to Section 1927 should be denied.

**CONCLUSION.**

Accordingly, for the reasons set forth above, we respectfully submit that the Court should deny, in its entirety, Defendant's Motion for Sanctions, and grant such other and further relief that the Court deems just and proper.

Dated: New York, New York.
      July 23, 2012

KRINSKY, PLLC

By: _____
     Pery D. Krinsky, Esq. (PK-8046)
     Woolworth Building
     233 Broadway, Suite 707
     New York, New York 10279
     Telephone (212) 543-1400
     Facsimile (212) 380-8171
     Email: pkrinsky@krinskypllc.com

     *Attorneys for Stephanie G. Ovadia, Esq.*