UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LINDSAY LOHAN,

                    Plaintiff,

              - against -

ARMANDO CHRISTIAN PEREZ also known as
Pitbull, SHAFFER CHIMERE SMITH, JR.
also known as Ne-Yo, NICK VAN DE WALL
also known as Afrojack, J. RECORDS, SONY
MUSIC ENTERTAINMENT, SONY MUSIC
HOLDINGS INC., RCA MUSIC GROUP,
POLO GROUNDS MUSIC, POLO GROUNDS
MUSIC PUBLISHING, INC., POLO GROUNDS
MUSIC, INC., MR. 305, INC., MR. 305
ENTERPRISES, INC., JOE JOHN, and
JANE JOHN, 1 THROUGH X,

                   Defendants.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**
11 CV 5413 (DRH) (ARL)

**APPEARANCES:**

**Attorneys for Plaintiff**

**STEPHANIE G. OVADIA, ESQ.**
2160 Hempstead Turnpike
East Meadow, New York 11554
By:    Stephanie G. Ovadia, Esq.

**Attorneys for Defendants**

**MCDERMOTT WILL & EMERY LLP**
333 Avenue of the Americas, Suite 4500
Miami, Florida 33131
By:    Audrey M. Pumariega, Esq. (*Pro Hac Vice*)
          Marcos Daniel Jimenez, Esq.

**KASOWITZ BENSON TORRES & FRIEDMAN LLP**
1633 Broadway
New York, New York 10019
By:    Sarah Gibbs Leivick, Esq.

**Attorneys for Respondent Stephanie G. Ovadia, Esq.**

**KRINKSY, PLLC**
233 Broadway, Suite 707
New York, New York 10279
By:     Pery D. Krinsky, Esq.

**For Respondent Anand Ahuja, Esq.**

**ANAND AHUJA, ESQ., Pro Se**
101-70 Lefferts Boulevard, Suite #2
Richmond Hill, New York 11419

**HURLEY, Senior District Judge:**

Plaintiff Lindsay Lohan ("plaintiff") commenced this action against defendants Armando Christian Perez (a/k/a Pitbull) ("Perez"), Shaffer Chimere Smith, Jr. (a/k/a Ne-Yo) ("Smith"), Nick Van de Wall (a/k/a Afrojack) ("Van de Wall"), J. Records, Sony Music Entertainment, Sony Music Holdings Inc., RCA Music Group, Polo Grounds Music, Polo Grounds Music Publishing, Inc., Polo Grounds Music, Inc., Mr. 305, Inc., Mr. 305 Enterprises, Inc., Joe John, and Jane John, 1 through X (collectively, "defendants"), asserting that defendants violated Sections 50 and 51 of the New York Civil Rights Law by using plaintiff's "name, characterization, and personality for advertising purposes, and for purposes of trade and commercial benefits" without her consent.  (Compl. ¶ 24.)  Plaintiff has also asserted claims for unjust enrichment and intentional infliction of emotional distress, and seeks monetary and injunctive relief.

Presently before the Court is defendants' motion, made pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), seeking dismissal of the Complaint for failure to state a claim.

After that motion was fully briefed and filed, defendants filed a separate motion seeking sanctions against plaintiff and her counsel, Stephanie G. Ovadia, Esq. and Anand Ahuja, Esq., for "asserting and continuing to advocate frivolous claims in bad faith and committing extensive plagiarism in [the] Memorandum of Law in Opposition to Defendants' Motion [to] Dismiss the Complaint."  (Defs.' Apr. 4, 2012 Letter at 1.)  For the reasons set forth below, defendants' motion to dismiss the Complaint is granted and defendants' motion for sanctions is granted in part and denied in part.

## BACKGROUND

The following facts are drawn from the Complaint and are presumed true for purposes of these motions.

### The Parties

Plaintiff was at all relevant times "a professional actor of good repute and standing in the Screen Actors Guild."  (Compl. ¶ 2.)  Defendants Perez, Smith, and Van de Wall each "served in the capacity of creator, writer, lyric writer, artist, and singer of the song 'Give Me Everything'" (the "Song").  (Id. ¶¶ 3-5.)  Defendant J. Records is an American record label owned and operated by defendants Sony Music Entertainment and Sony Music Holdings Inc., (id. ¶ 6), which are owned, in turn, by defendant RCA Music Group (id. ¶ 9).  Defendant Polo Grounds Music is a "record label [and] a hip hop and full service entertainment company" that is owned and registered as a corporation under the names Polo Grounds Music Publishing, Inc. and Polo Grounds Music, Inc.  (Id. ¶ 11.)  Defendant Mr. 305 is a record label registered under the name Mr. 305 Enterprises, Inc.  (Id. ¶ 13.)  Each of these defendants was allegedly "engaged, directly or indirectly in the creation, publishing, management, marketing, and promotions" of the Song.

3

(*Id.* ¶ 10; *see also id.* ¶¶ 8, 12 & 14.)

**The Song**

     The Song "was and is a popular song of an international reputation and exerts a great influence throughout [the] United States, and other countries, and in the television, entertainment business and field of communication as well." (*Id.* ¶ 16.) Plaintiff alleges that the Song "includes an unwarranted, unauthorized, and unfavorable mention of [her] name and personality, and allusions to [her] physical and mental character." (*Id.* ¶ 18.) Specifically, approximately one-third of the way through the song, plaintiff's name is used as follows: "So, I'm tiptoein', to keep flowin'/ I got it locked up like Lindsay Lohan." (Decl. of Courtney Caprio, dated Jan. 17, 2012, Ex. A at 1.)[1]

     The Song was released on March 18, 2011 and has aired between that date and the present on radio broadcasts, the internet (including on blogs and websites such as www.youtube.com), and television in the State of New York (and elsewhere). (Compl. ¶ 19.) On June 21, 2011, the Song was incorporated and released on Perez's album, entitled "Planet Pit." (*Id.* ¶ 20.)

     Plaintiff alleges that she did not consent to or authorize the use of her name in the Song, and that the "appearance of [her] name and characterization" in the Song "causes [her] to be associated and identified in connection with defendants." (*Id.* ¶¶ 19, 21.) Plaintiff further alleges that defendants used plaintiff's name in the Song "for advertising purposes, and for purposes of trade and commercial benefits." (*Id.* ¶ 24.)

---

     [1]    As is discussed more fully in the text below, although the Song lyrics are not set forth in or attached to the Complaint, the Court may properly consider them as part of this Rule 12(b)(6) motion because they are integral to the Complaint.

*The Complaint*

In the Complaint,[2] plaintiff alleges that she is entitled to monetary and injunctive relief, and asserts (1) that defendants violated New York Civil Rights Law Sections 50 and 51 by using her name in the Song, (2) an unjust enrichment claim, and (3) a claim for intentional infliction of emotional distress.

## DISCUSSION

I.    **Defendants' Motion to Dismiss**

A.    **Legal Standard**

1.    **Rule 12(b)(6)**

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Court disavowed

---

[2]      Plaintiff originally commenced this action in New York State Supreme Court, Nassau County.  On November 4, 2011, defendants removed the action to this Court on the basis of diversity jurisdiction, asserting that, despite the allegations in the Complaint that plaintiff was a resident of New York, she was actually a citizen of California, and that defendants were citizens of Florida, Georgia, New York, and the Netherlands.  (Not. of Removal at 2.)  On December 9, 2011, plaintiff filed a motion to remand the action to state court, asserting that defendants had "not proved such diversity claim by any documentary or conclusive evidence." (Mot. to Remand at 1.)  On December 12, 2011, the Court issued an Electronic Order stating that plaintiff had filed the motion to remand in contravention of Rules 3(A) and 3(F) of the Court's Individual Practice Rules.  Those rules state that any party intending to file a motion must submit a pre-motion conference letter and await a conference and/or briefing schedule, and that no motion may be filed until it is fully briefed.  Accordingly, the Court rejected the motion to remand without prejudice and with the right to renew upon compliance with these rules.  Plaintiff did not re-file the motion.

the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *See Twombly*, 550 U.S. at 561 (quoting *Conley*, 355 U.S. at 45-46) (internal quotation marks omitted).   Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.  The Court defined plausibility as follows:

6

> A claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference that
> the defendant is liable for the misconduct alleged.  The plausibility
> standard is not akin to a "probability requirement," but it asks for
> more than a sheer possibility that a defendant has acted unlawfully.
> Where a complaint pleads facts that are "merely consistent with" a
> defendant's liability, it "stops short of the line between possibility
> and plausibility of 'entitlement to relief.'"

*Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see also Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010) ("[A] complaint must contain factual allegations to support the legal conclusions and the factual allegations must plausibly give rise to an entitlement to relief.") (internal quotation marks omitted).

### 2. Extraneous Documents Properly Considered in Deciding Rule 12(b)(6) Motion to Dismiss

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court generally may only consider facts alleged in the Complaint or contained in "[d]ocuments that are attached to the complaint or incorporated in it by reference."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  A document that is not attached to the Complaint or incorporated in it by reference may nonetheless be appropriately considered if it is a document "upon which [the complaint] solely relies and . . . is integral to the complaint," *id.* (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)), or "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)); *see also Cortec Indus.*, 949 F.2d at 47 ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] . . . which is integral to the complaint, the defendant may produce [it] when attacking the complaint for its failure to state a claim,

7

because plaintiff should not so easily be allowed to escape the consequences of its own failure."). "However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *DiFolco*, 622 F.3d at 111 (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

Here, the lyrics for the Song have not been set forth in or attached to the Complaint. Given, however, that plaintiff clearly relied upon the Song lyrics when bringing the action and, indeed, the lyrics themselves go to the heart of her allegations, the Court finds the Song lyrics to be integral to the Complaint. Plaintiff has raised no question as to the accuracy of the version of the Song lyrics submitted by defendants in connection with their motion to dismiss and, as such, the Court will consider them in deciding the motion.

### B.    *Plaintiff's Claim Under the New York Civil Rights Law is Dismissed*

#### 1.    <u>Legal Standard</u>

"New York does not recognize a common-law right of privacy." *Messenger v. Gruner + Jahr Printing & Publ'g*, 94 N.Y.2d 436, 441 (2000). By enacting Sections 50 and 51 of the New York Civil Rights Law, however, the New York legislature sought to "provide a limited statutory right of privacy." *Id.* Section 50 of the Civil Rights Law makes it a misdemeanor for a person to "use[ ] for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person . . . ." N.Y. Civ. Rights Law § 50 (McKinney 2012). Section 51 provides:

> Any person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided [in Section 50] may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait, picture or

> voice, to prevent and restrain the use thereof; and may also sue and
> recover damages for any injuries sustained by reason of such use and
> if the defendant shall have knowingly used such person's name,
> portrait, picture or voice in such manner as is forbidden or declared
> to be unlawful by section fifty of this article, the jury, in its discretion,
> may award exemplary damages. . . .

N.Y. Civ. Rights Law § 51 (McKinney 2012). The New York Court of Appeals has made clear

that the prohibitions set forth in Sections 50 and 51 of the Civil Rights Law "are to be strictly

limited to nonconsensual commercial appropriations of the name, portrait or picture of a living

person," and "prohibit the use of pictures, names or portraits 'for advertising purposes or for the

purposes of trade' *only*, and nothing more." *Finger v. Omni Publ'ns Int'l, Ltd.*, 77 N.Y.2d 138,

141 (1990) (quoting *Arrington v. New York Times Co.*, 55 N.Y.2d 433, 439 (1982)).

   To prevail on a statutory right to privacy claim pursuant to the New York Civil Rights

Law, a plaintiff must prove: "(1) use of plaintiff's name, portrait, picture or voice (2) 'for

advertising purposes or for the purposes of trade' (3) without consent and (4) within the state of

New York." *Hoepker v. Kruger*, 200 F. Supp. 2d 340, 348 (S.D.N.Y. 2002) (quoting *Titan

Sports, Inc. v. Comics World Corp.*, 870 F.2d 85, 87 (2d Cir. 1989)). Only the second element

appears to be in dispute here.

### 2.    The Song is a Protected Work of Art

   Defendants assert initially that "the First Amendment presents a complete defense" to

plaintiff's claims under the New York Civil Rights Law because that statute "does not apply to

works of art." (Defs.' Mem. at 3, 5.)

   Courts interpreting the New York Civil Rights Law have concluded that "pure First

Amendment speech in the form of artistic expression . . . deserves full protection, even against

9

[another individual's] statutorily-protected privacy interests." *Hoepker*, 200 F. Supp. 2d at 350. Thus, the use of an individual's name – even without his consent – is not prohibited by the New York Civil Rights Law if that use is part of a work of art. *See id.* (concluding defendants' display of artist's collage containing plaintiff's photograph fell "within the scope of the First Amendment and outside the range of Sections 50 and 51"); *see also Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 451 (S.D.N.Y. 2008) (noting that Sections 50 and 51 of the New York Civil Rights Law "do not apply to works of art"); *Altbach v. Kulon*, 302 A.D.2d 655, 657 (3d Dep't 2003) (concluding "that the painting and its publication in defendant's flyers are artistic expressions – specifically a caricature and parody of plaintiff in his public role as a town justice – that are entitled to protection under the First Amendment and excepted from New York's privacy protections"); *Simeonov v. Tiegs*, 159 Misc. 2d 54, 59 (N.Y. Civ. Ct. 1993) ("Although a person's right of privacy as protected by Civil Rights law §§ 50 and 51 is also a very significant right, it must fall to the constitutionally protected right of freedom of speech.").

The Supreme Court has made clear that "[m]usic, as a form of expression and communication, is protected under the First Amendment." *Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989). Thus, because the Song is a protected work of art, the use of plaintiff's name therein does not violate the New York Civil Rights Law.

### 3.      Plaintiff's Name was not Used in the Song for Advertising or Purposes of Trade

Somewhat relatedly, defendants argue that plaintiff's name was not used in the Song "for advertising or trade purposes within the meaning of the statute." (Defs.' Mem. at 9.) Specifically, defendants assert that plaintiff's name "does not promote a product or service" or

10

"seek 'solicitation for patronage,'" and because plaintiff's name is not used in the Song's title or refrain, her name is not being used to promote the Song itself.  (*Id.*)  Thus, defendants contend, the second element articulated in *Hoepker* has not been satisfied.

The fact that the Song was presumably created and distributed for the purpose of making a profit does not mean that plaintiff's name was used for "advertising" or "purposes of trade" within the meaning of the New York Civil Rights Law.  *See, e.g., Time, Inc. v. Hill*, 385 U.S. 374, 397 (1967) (interpreting New York Civil Rights Law and concluding: "'That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment.'") (quoting *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501-02 (1952)); *Ann-Margret v. High Society Magazine, Inc.*, 498 F. Supp. 401, 406 (S.D.N.Y. 1980) ("[S]imple use in a magazine that is published and sold for profit does not constitute a use for advertising or trade sufficient to make out an actionable claim, even if its manner of use and placement was designed to sell the article so that it might be paid for and read.") (internal quotation marks omitted); *Simeonov*, 159 Misc. 2d at 59 ("The dissemination for profit is not the sole determinant of what constitutes trade under these statutes.") (citing *Arrington v. New York Times Co.*, 55 N.Y.2d 433, 440 (1982)).  Indeed, plaintiff has not offered any argument to the contrary.

Even if the Court were to conclude that plaintiff had sufficiently alleged that her name was used in the Song for purposes of advertising or trade, the isolated nature of the use of her name would, in and of itself, prove fatal to her New York Civil Rights Law claim.  "Courts in New York are reluctant to impose liability under §§ 50-51 for incidental use of a person's name or image because of the danger of imposing an uncalled-for burden and hazard on publishers."

11

*Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1326 (S.D.N.Y. 1997) (internal

alteration and quotation marks omitted).  "Whether a use falls within [the incidental use]

exception to liability is determined by the role that the use of the plaintiff's name or likeness

plays in the main purpose and subject of the work at issue."  *Preston v. Martin Bregman Prods.,*

*Inc.*, 765 F. Supp. 116, 119 (S.D.N.Y. 1991).  Here, plaintiff's name is mentioned one time in

only one of 104 lines of the Song.  (*See* Caprio Decl., Ex. A.)  It is not used in the Song's title or

the refrain, and appears entirely incidental to the theme of the Song.  (*See id.*)  Overall, the use of

plaintiff's name is an "isolated reference[ ] of [a] fleeting and incidental nature which the Civil

Rights law does not find offensive."  *Univ. of Notre Dame Du Lac v. Twentieth Century-Fox*

*Film Corp.*, 22 A.D.2d 452, 454 (1st Dep't 1965) (plaintiff's name was mentioned twice in a

143-page book), *aff'd*, 15 N.Y.2d 940 (1965); *see also Netzer*, 963 F. Supp. at 1326 ("isolated

use" of plaintiff's name on "only one of 116 panels in a twenty-four page comic book" was

"insufficient to establish liability"); *Preston*, 765 F. Supp. at 119 (plaintiff was "shown in only 9

seconds of this full-length motion picture, for 4 ½ seconds of which her face is visible, in the

opening title scenes before the plot begins or any of the characters appear"); *Delan v. CBS, Inc.*,

91 A.D.2d 255, 260-61 (2d Dep't 1983) ("At bar plaintiff's approximately four-second

appearance was not only fleeting, but his role was very minor to the central theme of the

documentary.").

   Accordingly, the Court concludes that plaintiff has failed to adequately allege a cause of

action under the New York Civil Rights Law and, as such, her first claim for relief is dismissed.[3]

---

   [3]  Because plaintiff has failed to adequately plead each element of a New York Civil
Rights Law claim, the Court need not address defendants' argument that the "newsworthiness
exception" to the statute applies.

### C.    Plaintiff's Unjust Enrichment Claim is Dismissed

In her second cause of action, plaintiff alleges that "as a result of defendants'

unwarranted, unauthorized, and unjustified use of [her] name . . . in the [Song], defendants have

been unjustly enriched, at the cost of plaintiff's name."  (Compl. ¶ 30.)  As noted above, "there is

no common law privacy cause of action in New York, and thus the only relief for a violation of a

right to privacy falls under [New York Civil Rights Law] § 50 or [ ] § 51."  *Lemerond v.*

*Twentieth Century Fox Film Corp.*, 2008 WL 918579, at *3 (S.D.N.Y. Mar. 31, 2008) (collecting

cases).  Plaintiff's unjust enrichment claim, which is "related to" the unauthorized use of her

name in the Song, is therefore "subsumed under [New York Civil Rights Law] §§ 50, 51."  *Id.*;

*see also Zoll v. Jordache Enters., Inc.*, 2002 WL 31873461, at *16 (S.D.N.Y. Dec. 24, 2002)

("Where a claim arises from unauthorized use of an image or likeness, plaintiffs have not been

allowed to advance common law claims in addition to their statutory claims merely by recasting

the statutory claim as a common law claim.").  Thus, plaintiff's second claim for relief is

dismissed.

### D.    Plaintiff's Intentional Infliction of Emotional Distress Claim is Dismissed

In her fourth cause of action, plaintiff asserts a claim of intentional infliction of emotional

distress.  In order to assert such a claim, a plaintiff must show: "(1) extreme and outrageous

conduct, measured by the reasonable bounds of decency tolerated by society; (2) intent to cause

or disregard of a substantial probability of causing severe emotional distress; (3) a causal

connection between the conduct and the injury; and (4) severe emotional distress."  *Margrabe v.*

*Sexter & Warmflash, P.C.*, 353 Fed. Appx. 547, 550 (2d Cir. 2009) (quoting *Conboy v. AT&T*

*Corp.*, 241 F.3d 242, 258 (2d Cir. 2001)) (internal quotation marks omitted).  "The conduct at

issue must transcend the bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community."  *Id.* (internal quotation marks omitted).  "[S]atisfying the 'outrageousness' element 'is difficult, even at the pleadings stage.'" *Russo-Lubrano v. Brooklyn Fed. Sav. Bank*, 2007 WL 121431, at *6 (E.D.N.Y. Jan. 12, 2007) (quoting *Fahmy v. Duane Reade, Inc.*, 2005 WL 2338711, at *7 (S.D.N.Y. Sept. 26, 2005)).

Accepting plaintiff's allegations as true, which the Court is bound to do at this stage of the proceedings, even if defendants used plaintiff's name in one line of the Song without her consent, such conduct is insufficient to meet the threshold for extreme and outrageous conduct necessary to sustain a claim for intentional infliction of emotional distress.  *See Freedom Calls Found. v. Bukstel*, 2006 WL 2792762, at *3 (E.D.N.Y. Sept. 7, 2006) ("Courts in the Second Circuit . . . have noted that even if a defendant has acted with an intent which is tortious or even criminal, or has intended to inflict emotional distress . . . there can be no claim if the conduct at issue is not utterly reprehensible.") (internal quotation marks omitted).  Accordingly, plaintiff's fourth cause of action is dismissed.[4]

## II.    *Defendants' Motion for Sanctions*

After defendants' Rule 12(b)(6) motion was fully-briefed and filed, defendants (with permission of the Court) moved for sanctions against plaintiff and her counsel.  Defendants assert that "[p]laintiff and her counsel have filed and maintained frivolous claims, advocated

---

[4]    In her third cause of action, plaintiff alleges that "defendants' violations of [her] common law rights have been ongoing . . . and are causing and threaten to cause immediate and irreparable injury to the plaintiff."  (Compl. ¶ 34.)  Accordingly, plaintiff seeks injunctive relief.  (*Id.* ¶ 36.)  As noted in the text above, however, each of plaintiff's claims under New York law have been dismissed.  Because plaintiff has not advanced a legally viable claim of any wrongdoing that needs to be enjoined, her third cause of action seeking injunctive relief is also dismissed.

them through a plagiarized and nonresponsive opposition to the [defendants'] motion to dismiss, and knowingly misrepresented material facts to [the] Court."  (Defs.' Sanctions Mem. at 1.) Defendants seek sanctions, in the form of their costs and attorneys' fees incurred in defending this action, pursuant to the Court's inherent power as well as 28 U.S.C. § 1927, and Rule 11. (*Id.*)  Attorney Ovadia, through her own counsel, has submitted a legal memorandum in opposition to the sanctions motion (Docket No. 39), and Attorney Ahuja, proceeding pro se, has filed an affirmation in opposition (Docket No. 45).

### A.    *Relevant Legal Standards*

The Court may award attorneys' fees as a sanction pursuant to 28 U.S.C. § 1927, which prohibits an attorney from "unreasonably and vexatiously" multiplying the proceedings. Moreover, "[t]he court has inherent power to sanction parties and their attorneys . . . where the party or the attorney has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000) (internal citations and quotation marks omitted).  Finally, Rule 11 permits a court to impose sanctions against attorneys who violate Rule 11(b), which provides that by signing a "pleading, written motion, or other paper" that is presented to the Court, an attorney certifies that, "to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances":

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and]
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . .

15

Fed. R. Civ. P. 11(b), (c).  "Although the imposition of sanctions is within the province of the district court, any such decision should be made with restraint and discretion." *Pannonia Farms, Inc. v. USA Cable*, 426 F.3d 650, 652 (2d Cir. 2005) (internal quotation marks and alteration omitted).

### B.    Frivolous Claims

First, defendants assert that sanctions are warranted based upon plaintiff's "fil[ing] and maintain[ing] frivolous claims."  (Defs.' Sanctions Mem. at 1.)  Having reviewed the relevant case law governing the applicability of New York Civil Rights Law §§ 50 and 51 to this case, and given the relative sparsity of case law directly on point with the facts alleged here – i.e., the use of the name (as opposed to a photograph or other likeness) of a public figure (as opposed to a private individual) in a song (as opposed to a written medium) – the Court finds that plaintiff's claims are not so frivolous as to warrant the imposition of sanctions.

### C.    False Factual Statements

Defendants also assert that sanctions are warranted for plaintiff's "false statements of fact regarding [her] residence/citizenship."  (Defs.' Sanctions Mem. at 17.)  As noted above, plaintiff alleged in her Complaint, which was originally filed in New York state court, that she is a New York resident.  (Compl. ¶ 1.)  After defendants removed the matter to this Court based on diversity jurisdiction, plaintiff attempted to file a motion to remand[5] that included a sworn affidavit stating that she is a New York citizen.  (Docket No. 7, Ex. A.)  Defendants assert that

---

[5]    As noted earlier in the text, because plaintiff attempted to file her motion for remand without requesting a pre-motion conference and in violation of my "Bundle Rule," the motion was not accepted for filing.  (*See* Dec. 12, 2011 Elec. Order.)  Thereafter, plaintiff did not request a pre-motion conference or otherwise attempt to re-file the remand motion.

this representation is false.  (Defs.' Sanctions Mem. at 17.)  The Court declines to impose

sanctions based on this alleged factual misstatement.  Defendants support this accusation by

asserting that plaintiff's present contention that she is a New York resident and citizen conflicts

with statements she has made in prior litigations regarding her citizenship or residency, and that

plaintiff has never explained these inconsistencies.  Of course, plaintiff has never had the

occasion to provide such an explanation given that her original motion to remand was rejected

and she did not re-file it.  The Court declines to impose sanctions on this basis.

### D.      Plagiarism

Finally, defendants assert that plaintiff and her counsel should be sanctioned because

plaintiff's memorandum in opposition to defendants' motion to dismiss (the "Opposition") "was

plagiarized from website articles and materials having nothing to do with the claims at issue."[6]

(Defs.' Sanctions Mem. at 9; *see also* Decl. of Marcos D. Jimenez ("Jimenez Decl."), dated Mar.

12, 2012, Ex. A).)  Defendants have submitted a chart comparing various portions of the text of

the Opposition to language found in extraneous sources, such as articles and blogs.[7]

---

[6]      Defendants also assert, correctly in this Court's view, that the Opposition was
"rife with irrelevant discussion, . . . did not meaningfully address a single case cited by the
[defendants] in support of their motion to dismiss, cited a case without disclosing it had been
reversed, and essentially ignored every argument made by the [defendants]."  (Defs.' Sanctions
Mem. at 11 (internal citations omitted).)  According to defendants, the reason that the Opposition
did not address the salient points raised in their motion to dismiss was because it was actually
taken "nearly entirely and verbatim" from a legal memorandum plaintiff filed in an entirely
different case.  (*Id.* at 16 (emphasis omitted) (noting that approximately 14 or 15 pages of the
Opposition were copied from a prior legal brief).)  Plaintiff does not dispute this assertion.

[7]      Defendants have also submitted a "Similarity Report," which they generated on
March 9, 2012 using the website https://research.ithenticate.com/, "a plagiarism and duplication
screening program."  (Jimenez Decl. ¶ 4 & Ex. B.)  Defendants have, however, provided the
Court with no information as to how this program works, the reliability of its findings, or
precisely what a "similarity index" of 64% means.  Accordingly, the Court has not relied on this

(*See* Jimenez Decl., Ex. A.)  A review of this comparison reveals that the vast majority of the Opposition appears to have been taken from other sources without any acknowledgment or identification of those sources.  Plaintiff and her attorneys do not dispute defendants' accusations of plagiarism.

Attorney Ovadia made the following statement regarding defendants' plagiarism accusation in an April 30, 2012 letter (the "Letter") filed with the Court:[8]

> After mailing our Opposition to the Defendants' attorney's (sic) and prior to the Defendants' attorneys['] claim of the alleged plagiarism, we contacted the Defendants' attorney Audrey Pumariega, Esquire, and requested her to allow our office to submit an amended opposition for filing with the court, which thereby was rejected via electronic mail.  Rather [than] allowing our office the opportunity to amend the inadvertently used prior draft, *which would have obviated any alleged plagiarism concerns*, the Defendants['] attorneys sought the Court's inherent powers to avoid this occurrence.

(Pl.'s April 30, 2012 Letter at 1 (emphasis added).)  The evidence submitted by defendants (and not challenged by plaintiff and her counsel), however, demonstrates that plaintiff's counsel's statements in the Letter lack candor.

On March 9, 2012, defendants' counsel sent plaintiff's counsel an email stating that they intended to file the fully-briefed motion to dismiss, but noticed that both they and the plaintiff had inadvertently omitted the tables of contents and authorities from their moving and opposition briefs, respectively.  (Decl. Of Audrey Pumariega, dated May 21, 2012 ("Pumariega Decl."), Ex. A at 1.)  In the email, defendants' counsel stated their intention to add the missing pages to their

document in conducting its analysis.

[8]     The signature block of the Letter reads: "Respectfully submitted, Stephanie G. Ovadia, Esq. [and] Anand Ahuja, Esq."  (Docket No. 21 at 3.)  Only Attorney Ovadia signed the letter.

moving papers, and offered plaintiff's counsel the opportunity to do the same.  (*Id.*)  On March 12, 2012, plaintiff's counsel responded by sending defendants' counsel the tables of contents and authorities as well as an amended opposition memorandum and a new "Exhibit B."  (Pumariega Decl., Ex. B (Part 1 at 1).)  Defendants' counsel emailed plaintiff's counsel and stated that defendants "had not consented to any such amendment" of the opposition papers other than to supply the missing tables of contents and authorities, and advised plaintiff that "[t]o the extent you intend to [further] amend [the opposition papers], you may seek leave of Court."  (Pumariega Decl., Ex. B (Part 2 at 1).)  During a subsequent telephone conversation, plaintiff's counsel agreed that defendants' counsel would file only plaintiff's tables of contents and authorities, but would not file an amended opposition brief or additional exhibit.  (Pumariega Decl., Ex. B (Part 4 at 1).)

Defendants have compared the original Opposition (that was filed with the Court) along with plaintiff's proposed amended opposition (which defendants refused to consent to plaintiff filing without leave of Court) (the "Redline").  (Pumariega Decl., Ex. C.)  The Redline demonstrates that, contrary to Attorney Ovadia's assertions in the Letter, not one of the changes in the proposed amended opposition would have corrected or cured the plagiarized portions of the Opposition.  Instead, most of the changes to the plagiarized portions of the proposed amended opposition were merely corrections and insertions of citations to case law.  (*See id* at 4-5.)  Attorney Ovadia, who is represented by her own counsel in connection with the sanctions motion, does not respond to the allegation that her representation in the Letter – i.e., that the proposed amended opposition would have "obviated any alleged plagiarism concerns" – was, in fact, untrue.  Based on the fact that Attorney Ovadia made this undisputedly false representation

19

to the Court, and pursuant to the Court's inherent powers, Attorney Ovadia is hereby fined in the amount of $750.00.  This amount shall be paid by Attorney Ovadia and shall be made payable to the Clerk of the Court on or before March 22, 2013.

With respect to defendants' allegations that the majority of the Opposition was plagiarized, plaintiff and her counsel do not deny these assertions.  Indeed, defendants' submissions to the Court evidence that almost the entire text of the Opposition is taken from unidentified, unattributed sources.  (*See* Jimenez Decl., Ex. A.)  Obviously, this type of conduct is unacceptable and, in the Court's view, is sanctionable pursuant to its inherent powers.[9] Attorney Ovadia takes the position that the Court should refrain from imposing sanctions because "additional fact-finding will be necessary" to determine which of plaintiff's two attorneys is responsible for the plagiarism and/or the degree to which any such responsibility should be apportioned between them.[10]  (*See* Ovadia's Sanctions Opp'n at 9.)  The Court recognizes that Attorneys Ovadia and Ahuja dispute which of them drafted the final version of the Opposition

---

[9]      The plagiarism of the type at issue here would likely be found to violate New York State Rule of Professional Conduct 8.4, which prohibits a lawyer from "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation."  N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.00 (effective Apr. 1, 2009) (Rule 8.4(c)); *see also In re Steinberg*, 206 A.D.2d 232, 234 (1st Dep't 1994) (finding attorney's plagiarism, in the form of submitting other attorneys' work product as his own, constituted "conduct involving dishonesty, fraud, deceit or misrepresentation" in violation of former New York Disciplinary Rule 1-102(A)(4), which is now New York Rule of Professional Conduct 8.4(c)).

[10]      Attorney Ovadia asserts that "the appropriate disciplinary authority empowered to investigate claims of attorney misconduct" – rather than this Court – would be the proper forum in which to conduct this fact-finding process and address defendants' accusations.  (Ovadia's Sanctions Opp'n at 11.)

20

that was ultimately filed.  It is clear, however, that only Attorney Ovadia signed the Opposition.[11]

In the Court's view, this leaves Attorney Ovadia solely liable for the sanctionable plagiarism.  *Cf.*

*Kiobel v. Millson*, 592 F.3d 78, 87 (2d Cir. 2010) ("'The person signing, filing, submitting, or

advocating a document has a nondelegable responsibility to the court, and in most [situations]

should be sanctioned for a violation.'") (quoting Fed. R. Civ. P. 11 advisory committee note).

Accordingly, pursuant to the Court's inherent power, Attorney Ovadia is hereby fined an

additional $750.00 which shall also be made payable to the Clerk of the Court on or before

March 22, 2013.[12]

Defendants' request for sanctions in the form of an award of their costs and attorneys'

fees incurred in defending this action is denied.  As noted above, the Court has concluded that

plaintiff's claims in this case were not frivolous and did not warrant an award of attorneys' fees

pursuant to Rule 11.  Moreover, defendants have failed to show how they were prejudiced by the

plagiarism in the Opposition, or how such plagiarism caused them to expend additional costs and

fees beyond what would have been necessary if the Opposition had been plaintiff's counsel's

original work product.[13]  Attorney Ovadia's misrepresentation in the Letter and submission of a

---

[11]  Both Attorneys Ovadia and Ahuja signed the Complaint.  Defendants' plagiarism allegations, however, apply only to the Opposition and not to the Complaint.

[12]  The Court recognizes that $750.00 is a relatively modest amount.  In arriving at this figure, however, the Court has accounted for (and does not underestimate) the negative impact on Attorney Ovadia's reputation and livelihood that will inevitably arise from her involvement in this situation.

[13]  The Court also notes, parenthetically, that it is underwhelmed by the nature of defendants' counsel's conduct upon learning of plaintiff's counsel's plagiarism.  Defendants' counsel recognized the existence and extent of the plagiarism as early as March 9, 2012.  (*See* Jimenez Decl. ¶ 4.)  However, even though defendants' counsel corresponded with plaintiff's counsel on that date and again on March 12, 2012, they made no mention of these issues.  (*See*

plagiarized Opposition constituted an affront to the Court – not to defendants.  The victim of the

sanctionable misconduct is the justice system itself and, as such, the Court finds that Attorney

Ovadia's fine should be made payable to the Court in order to remedy those wrongs.

### III.    Outstanding Item

On June 8, 2012, Attorney Ovadia sought leave to file to her motion to withdraw as

counsel of record for plaintiff and supporting declaration under seal.  (Docket No. 26.)  By Order

dated August 28, 2012, the Court identified an issue that had to be resolved before it could rule

on the pending motion seeking leave to file documents under seal, and it directed defendants to

submit certain documentation to the Court within ten days.  Due to problems transmitting the

August 28, 2012 Order, which was filed under seal, defendants did not receive the Order until

December 2012 and were unable to supply the Court with the requested information until January

9, 2013.  Thus, plaintiff's counsel's motion for leave to file documents under seal remained

outstanding.  Given the resolution of this motion, and the fact that the this case will be closed,

plaintiff's counsel's motion is deemed moot.

---

Pumariega Decl., Ex. B (Part 1 at 1; Part 2 at 1; Part 4 at 1).)  Defendants' counsel certainly had
the option of raising the issue with plaintiff's counsel, thereby affording plaintiff's counsel the
opportunity to withdraw the Opposition and request leave from the Court to amend the
opposition papers.  Instead, the first time defendants' counsel raised the issue was when they
filed the fully-briefed motion to dismiss and highlighted the plagiarism as part of the reply
papers.

*CONCLUSION*

For the reasons set forth above, defendants' motion to dismiss the Complaint is granted, and their motion for sanctions is granted in part and denied in part.  Attorney Ovadia is directed to submit a check in the amount of $1,500.00, made payable to the Clerk of the Court, on or before March 22, 2013.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
       February 21, 2013                           \_\_/s/_____
                                                   Denis R. Hurley
                                                   Unites States District Judge

23